UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
PHILADELPHIA DIVISION

**Sherice Sargent**, et al.,

Plaintiffs,

v.

**The School District of Philadelphia**, et al.,

Defendants.

Case No. 2:22-cv-01509-CFK

## MOTION FOR CLASS CERTIFICATION

The plaintiffs respectfully move to certify a class of parents and students under Rule 23. Certification is proper under Fed. R. Civ. P. 23(b)(1)(A), (b)(1)(B), and (b)(2). In the alternative, the class may be certified under Rule 23(b)(3). The class, if certified, will be represented by plaintiffs Sherice Sargent and Michele Sheridan— each individually and as next friend of their minor children. The proposed class consists of:

> all students and parents of students who: (1) applied for admission to a Philadelphia criteria-based school but were denied admission because of the school district's racially discriminatory admissions standards; or (2) will apply for admission to a criteria-based school in the future but face an increased risk of being denied admission because of the school district's decision to abandon merits-based admission standards and pursue racial balancing in the student body of its criteria-based schools. The class includes everyone who has ever fallen within this definition.

The common characteristics of these class members is that they are all parents of students, or students themselves, who have been or will be adversely affected by the Philadelphia school district's racially discriminatory admissions policies.

A party that moves for class certification must satisfy all of the requirements of Rule 23(a) and at least one of the subdivisions in Rule 23(b). Here, the plaintiffs seek to represent a class that meets the requirements of Rule 23(a) and also meets the requirements of each of the subsections of Rule 23(b). The plaintiffs urge the Court to certify the class on the basis of Rule 23(b)(1) and 23(b)(2) or, in the alternative, under Rule 23(b)(3).

## I.   THE CLASS MEETS THE REQUIREMENTS OF RULE 23(a)

Rule 23(a) sets out several prerequisites to a class action. The proposed class of parents and students meets each of the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation.

### A.   The Class Is So Numerous That Joinder Of All Members Is Impractical

The number of students and parents who object to the School District's race-based coverage on religious grounds easily exceeds the numerosity threshold. *See In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 426 (3d Cir. 2016) ("[N]umerosity is generally satisfied if there are more than 40 class members."). Any look at the numbers of students affected by this rule change makes it evident that there are substantial numbers of potential class members.[1]

---

1.   Note that the requirement of "ascertainability" (also called "identifiability" or "definiteness") is applied with far less rigor when certification is sought under Rule 23(b)(2). The Third Circuit holds that "ascertainability" is categorically inapplicable to (b)(2) classes. *See Shelton v. Bledsoe*, 775 F.3d 554, 563 (3rd Cir. 2015) ("[A]scertainability is not a requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief"); *see also Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016) ("The advisory committee's notes for Rule 23(b)(2) assure us that ascertainability is inappropriate in the (b)(2) context."); *Shook v. El Paso County*, 386 F.3d 963, 972 (10th Cir. 2004) ("[W]hile the lack of identifiability [of class members] is a factor that may defeat Rule 23(b)(3) class certification, such is not the case with respect to class certification under Rule 23(b)(2).").

First, consider the waitlist numbers for each of the named plaintiffs. Sherice Sargent's daughter was waitlisted for her preferred school, receiving waitlist number 187. Michele Sheridan's son was waitlisted for his preferred school, receiving waitlist number 530. This means that there are 530 students ahead of Michele Sheridan's son in the line to get into his preferred special enrollment school—the Academy of Palumbo. If even half of any one of these waitlist numbers could plausibly claim to have been harmed by the race-based admissions policy, the class easily meets numerosity.[2]

In the 2019–20 school year, Philadelphia had 89,658 students enrolled in public K-8 schools. Philadelphia's Student Population, Part 1, https://bit.ly/3EWcm5x (compiling data from School District of Philadelphia's 2019–2020 enrollment data, available at https://bit.ly/3MCTf2M). If just five percent of these students were plausibly eligible for admission to one of the special-enrollment schools on the old competitive admissions system, that makes some 4,482 students. If just ten percent of those with eligibility were members of zip codes that were disfavored on the basis of race, that's 448 students. And this is an absurdly low estimate—Philadelphia has 87 zip codes, of which only six receive preferential treatment in the school-selection process (and that on the basis of their racial composition).

Take another set of numbers. Again with unrealistically conservative estimates, it serves to illustrate how easily the class will exceed the rough numerosity threshold. In 2021–22, there were 15,839 eighth-grade students enrolled in the Philadelphia public schools. *See* School District of Philadelphia, Demographics, https://bit.ly/3KpirIP

---

2.   At this stage of the litigation, we don't know if any people from the zip codes receiving race-based preferences were denied admission. Such denials would be unrelated to the race-based preferences and would have to be subtracted from the number of people on the waitlists. But in no imaginable scenario do the small handful of preferred zip codes out of the entire Philadelphia area constitute half of the people on the waitlist. There are easily 40 class members based on even a single one of these waitlist numbers from a single school. And there are 22 special-enrollment schools.

(last accessed April 27, 2022). Again, if even five percent of these students were plausible candidates for special-enrollment high schools, that would make some 791 students. If just ten percent of these students were members of a racial group that was disfavored at the school of their choice, that's 79 students.

There are 22 special-enrollment schools in the School District. *See* Complaint, Ex. 1, ECF 1-1, at 4. A single one of these special enrollment schools—the Academy at Palumbo—had 1,118 students enrolled in 2021–22. *See* SY 2021–2022, School District of Philadelphia, https://bit.ly/3rTgAW4. Of these, 282 students were in the ninth grade. *Id*. If only ten percent of the number of potential students for a single class at this single school were members of a racial group that was disfavored at the school of their choice, that's 28 students. And that is just one of 22 special enrollment schools.

These data alone are enough to establish that the number of affected students far exceeds 40. And the class includes not only the present-day objecting students and their parents, but also *future* students and parents who will be disadvantaged by the School District's race-based admissions policies. It is inconceivable that this class would fail to meet the numerosity threshold of Rule 23(a)(1). Based on these data, one can confidently estimate that the class members number in the hundreds at the very least, likely in the thousands, even though it is difficult to come up with a more precise calculation.

### B.   There Are Questions Of Law Or Fact Common To The Members Of The Class

The plaintiffs seek to litigate at least three questions of law common to all class members: First, do the School District's efforts to pursue racial balancing in its criteria-based schools violate Title VI's prohibition on racial discrimination in any "program or activity" receiving federal funds? *See* 42 U.S.C. § 2000d ("No person in the United States shall, on the ground of race, color, or national origin, be excluded from

participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."). Second, do the School District's efforts to pursue racial balancing violate the Equal Protection Clause's prohibition on racial discrimination by state or local government entities? *See Johnson v. California*, 543 U.S. 499, 510–11 (2005); *Shaw v. Hunt*, 517 U.S. 899 (1996) ("Racial classifications are antithetical to the Fourteenth Amendment, whose central purpose was to eliminate racial discrimination emanating from official sources in the States."); *Palmore v. Sidoti*, 466 U.S. 429, 432 (1984) ("A core purpose of the Fourteenth Amendment was to do away with all governmentally imposed discrimination based on race."). Third, do the School District's efforts to pursue racial balancing violate the Pennsylvania Constitution's prohibitions on equal rights under the law (Article I, § 29) and the denial of civil rights (Article I, § 26)?

These questions affect all class members because each of them is subject to the School District's new selection criteria for access to special-enrollment schools. Each of them faces the prospect of applying to a school with the grades and attendance records that would have ensured a strong candidacy—and yet being turned away because of the School District's racial-balancing efforts. Each class member will "suffer the same injury" on account of the School District's policies, and that is all that needed to satisfy Rule 23(a)(2)'s commonality requirement. *See Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 348 (2011) (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977)); *see also Wal-Mart*, 564 U.S. at 360 ("[E]ven a single [common] question will do." (citation and internal quotation marks omitted)); *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56, 60 (3d Cir. 1994) ("The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."); *id.* at 60 ("Plaintiffs are challenging common conditions and practices under a unitary regime. All the children in

the class are subject to the risk that they will suffer from the same deprivations resulting from the DHS's alleged violations."). A ruling on the legality of the School District's policies "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. Minor factual variation in the experiences of individual class members do not undercut the commonality "if plaintiffs' claims arise from the same practice or course of conduct by defendant and are based on the same legal theory. . . . Actions requesting declaratory and injunctive relief to remedy conduct directed at the class 'clearly fit this mold.'" *Liberty Resources, Inc. v. City of Philadelphia*, No. CV 19-3846, 2020 WL 3816109, at *3 (E.D. Pa. July 7, 2020) (citing and quoting *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994); *see also In re Prudential Insurance Co. America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 310 (3d Cir. 1998) (same).

### C.   The Class Representatives' Claims Are Typical Of The Claims Of The Class

Sherice Sargent attests that the School District's racial-balancing efforts have prevented her daughter from attending the high school of her choice. *See* Declaration of Sherice Sargent ¶¶ 4–19 (attached as Exhibit 1). Similarly, Michele Sheridan's son was denied admission to the high school of his choice due to the School District's racial-balancing efforts. *See* Declaration of Michele Sheridan ¶¶ 4–12 (attached as Exhibit 2). Each of these plaintiffs, proposed as class representatives, has had their child prevented from attending the school of their choice by the racially motivated admissions policies of the School District. The legality of these racially discriminatory school admissions policies is the claim that they seek to litigate on behalf of the absent class members. The interests of the class representatives are aligned with those of the class, as each class member benefits from a ruling that prevents the school district from discriminating against them in school admissions on the basis of race. *See Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 63 (3d Cir. 1994) ("[D]ifferences among the

plaintiffs do not affect the central claim that [a government entity] violates a variety of the children's (putative class members') constitutional and statutory rights"); *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001) ("In considering the typicality issue, the district court must determine whether "the named plaintiff['s'] individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." (quoting *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir.1985)); *see also James v. City of Dallas,* 254 F.3d 551, 571 (5th Cir. 2001) ("[T]he test for typicality is not demanding. It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." (citations and quotation marks omitted)); *Wal-Mart*, 564 U.S. at 350 n.5 ("[T]he commonality and typicality requirements of Rule 23(a) tend to merge." (quoting *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 157–58 n.13 (1982)).

### D.   The Named Plaintiffs Will Fairly And Adequately Protect The Interests Of The Class

The named plaintiffs will fairly and adequately represent the interests of their fellow class members, and there are no conflicts of interest between them and the other members of this class. *See Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988) ("The inquiry that a court should make regarding the adequacy of representation requisite of Rule 23(a)(4) is to determine that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class."); *Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 185 (3d Cir. 2001) ("In analyzing this criteria, the court must determine whether the representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class.").

The class members consist of students and their parents who have suffered race-based discrimination in school admissions under the School District's policies. Every member of this class benefits from an injunction that prevents the School District from continuing to pursue racial balancing in school admissions. The named plaintiffs have the incentive to vigorously pursue this case as they are directly and personally affected by the District's racially discriminatory policies.

There is no conceivable conflict of interest that could arise from the named plaintiffs' efforts to enforce their legal rights to equal protection of the laws on a classwide basis. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."). The Equal Protection Clause of the Constitution, and similar provisions of federal law in Title VI and in Pennsylvania's constitution, protect *all* Americans from their state and local governments engaging in discrimination on the basis of race. A classwide injunction will serve only to enhance the freedom and autonomy of each of the class members. *See Sosna v. Iowa*, 419 U.S. 393, 403 (1975) (in a suit presenting a constitutional civil rights claim "where it is unlikely that segments of the class appellant represents would have interests conflicting with those she has sought to advance, and where the interests of that class have been competently urged at each level of the proceeding, we believe that the test of Rule 23(a) is met.")

The named plaintiffs are appropriate class representatives because they have each experienced personal injury due to the School District's policies. And indeed, "in most cases as long as [even] one of the representatives is adequate, the adequacy of representation requirement is met." *Grasty v. Amalgamated Clothing & Textile Workers Union, AFL-CIO, CLC*, 828 F.2d 123, 128 (3d Cir. 1987).

The plaintiffs' attorneys have extensive experience in constitutional and class-action litigation. The plaintiffs' attorneys have been involved in multiple numerous class

action cases. *See* Declaration of Jonathan F. Mitchell ¶¶ 3–8 (attached as Exhibit 3); Declaration of Walter S. Zimolong III ¶¶ 3–6 (attached as Exhibit 4); Declaration of Gene P. Hamilton III ¶¶ 3–5 (attached as Exhibit 5). They have vigorously pursued the interests of this class. *In re Prudential Insurance Co. America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998) (approving district court's consideration of class counsel's experience and vigorous representation). The named plaintiffs' attorneys are self-financing this litigation, but the legal issues are straightforward and the case will not be expensive to litigate. Plaintiffs' counsel easily meet the standard for providing adequate class representation.

## II.  THE CLASS SATISFIES RULE 23(b)(1)

Rule 23(b)(1) provides for class certification to avoid risks of prejudice to litigants. This can come about in two different ways. First, the party opposing class certification could be exposed to a risk of inconsistent obligations due to separate adjudications. *See* Fed. R. Civ. P. Rule 23(b)(1)(A). The School District here certainly faces this risk. Separate adjudications of each individual instance of racial discrimination creates the risk that one court holds that the District is behaving legally and within its rights, while another court holds that the District's policies violate federal and state law. "Rule 23(b)(1)(A) takes in cases where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax)." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (internal quotations and citations omitted). Here, the public schools of Philadelphia are obligated to treat all alike by following the commands of federal and state law mandating equal treatment regardless of race. It is appropriate for issues of racial discrimination to be adjudicated under Rule 23(b)(1)(A).

Second, having separate adjudications of individual class members creates a risk of impairing the rights of those who are not parties to the individual suit. *See* Fed. R.

Civ. P. 23(b)(1)(B). This is the flipside of the risks of inconsistent obligations faced by the School District. If the aggrieved plaintiffs and class members were to proceed individually with separate adjudications, there is a risk of the first adjudication prejudicing those to come along later—a court that held that the School District's policies were lawful would make it more difficult for a subsequent claimant to make out a case to the contrary. *See* 7AA Wright & Miller, Fed. Prac. & Proc. Civ. § 1772 (3d ed. April 2022 update) ("[I]t is quite common for suits brought under subdivision (b)(1) to meet both the test for clause (A) and for clause (B) of that provision. This is particularly true when some type of prohibitory or mandatory relief is being sought since a decree of this type easily could create potential conflicts for the opposing party if it were awarded or denied in individual actions.").

### III.   THE CLASS SATISFIES RULE 23(b)(2)

The criterion for class certification under Rule 23(b)(2) is that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Supreme Court has held that this requirement is satisfied "when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360; *see also id.* at 361–62 ("[T]he relief sought must perforce affect the entire class at once . . . ."). That is precisely what the plaintiffs in this case are requesting: A single injunction that stops the defendants from enforcing the School District's racially discriminatory policies. No one is seeking individualized relief for any class member or for any subset of the class. *Compare with M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 845–46 (5th Cir. 2012) (disapproving class certification under Rule 23(b)(2) when individualized relief was sought); *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 370

(7th Cir. 2012) (same). Here, the plaintiffs are requesting a simple, classwide injunction that halts the enforcement of the School District's racially discriminatory admissions policies.

In addition, the defendants are "act[ing] . . . on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). The School District applies its new, racially motivated admissions policies to all applicants to the District's special-admission high schools. This affects the class generally because every Philadelphia student who wants to attend a special-admission high school and whose race or ethnicity happens to be viewed as "overrepresented" at that school is harmed. The School District's admission policies violate federal and state law as applied to all class members, which makes "final injunctive relief or corresponding declaratory relief . . . appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also Wal–Mart*, 564 U.S. at 360 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.").

The complaint asks for damages, but only in the form that flows from the legal injury in this case. Because the injury is done to the class as a whole, these damages are merely incidental to the injunctive relief that plaintiffs seek for themselves and the class. *See Barabin v. Aramark Corp.*, No. 02-8057, 2003 WL 355417, at *2 (3d Cir. Jan. 24, 2003) ("Incidental damages are those that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." (internal quotation marks and citations omitted)); *Scanlan v. Am. Airlines Grp., Inc.*, No. CV 18-4040, 2021 WL 4704708, at *10 (E.D. Pa. Oct. 8, 2021), amended, No. CV 18-4040, 2022 WL 1028038 (E.D. Pa. Apr. 6, 2022) (explaining that "when 'the calculation of monetary relief will be mechanical, formulaic, a task not for a trier of fact but for a computer program, so that there is no need for notice and the concerns expressed in [the Supreme Court's] *Wal-Mart* opinion' then a district court can permit monetary damages in a (b)(2) class." (quoting *Johnson v. Meriter Health Servs.*

*Emp. Ret. Plan*, 702 F.3d 364, 372 (7th Cir. 2012)). "[W]hether damages are 'incidental' depends on: (1) whether such damages are of a kind to which class members would be automatically entitled; (2) whether such damages can be computed by 'objective standards' and not standards reliant upon the intangible, subjective differences of each class member's circumstances; and (3) whether such damages would require additional hearings to determine." *Barabin v. Aramark Corp.*, No. 02-8057, 2003 WL 355417, at *2 (3d Cir. Jan. 24, 2003) (internal quotation marks and citations omitted). Here the class members would be seeking nominal damages for the violation of their federal and state-law rights. They are not seeking individualized consequential damages. Because the nominal-damages calculation can be made on a class-wide basis, and each member would be "automatically entitled" to such relief, the relief would be calculated on an objective basis rather than on individualized factors. No additional hearings would be needed.

## IV.   In The Alternative, The Class Satisfies Rule 23(b)(3)

If the Court is unwilling to certify the proposed class under Rules 23(b)(1)(A), (b)(1)(B), or (b)(2), then it should in the alternative certify the class under Rule 23(b)(3).[3] Under Rule 23(b)(3), when class members seek damages, a class action is available where questions of law or fact common to the class predominate and the class action is superior to other forms of adjudication.

The plaintiffs have already shown that the proposed class satisfies the requirements of both Rule 23(b)(1) and (b)(2). But the plaintiffs believe that the proposed class satisfies the requirements of Rule 23(b)(3) as well. First, common questions of law and fact predominate. "[T]he focus of the predominance inquiry is on whether

---

3.   The plaintiffs ask for certification under Rule 23(b)(3) "in the alternative" because they do not wish to incur the need for notification and opt out unless this Court concludes that Rule 23(b)(3) is the *only* basis on which the proposed class can be certified. See Fed. R. Civ. 23(c)(2)(B).

the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011); *see also Reyes v. Netdeposit, LLC*, 802 F.3d 469, 489 (3d Cir. 2015) (same). As already noted, the issue in this case is straightforward: do the School District's efforts to achieve racial balancing in its criteria-based schools violate the U.S. Constitution (the Equal Protection Clause), federal statutes (Title VI), or the Pennsylvania Constitution? The conduct of the defendants is identical toward each of the class members. Each of these three legal issues is shared by the entire class because the entire class is subjected to discrimination on the basis of race, and the entire class is protected by the Equal Protection Clause, Title VI, and the Pennsylvania Constitution's equal-rights provisions. These issues predominate—indeed, they are the entirety of the claim in this case.

Second, the class action is superior to other forms of adjudication because it avoids duplicative litigation on the same issue. A whole city of parents and students faces an unpredictable landscape of racial discrimination to align schools with administrators' visions of what an appropriate racial balance looks like. It should not be necessary for the numerous affected parties to bring individual suits, with risks of inconsistent adjudications, expenses to all parties, and burdens on the judiciary.

Note that if the court certifies the class under either Rule 23(b)(1) or (b)(2), then even if the court *also* believes that the class could be certified under 23(b)(3), class notice is not necessary. *See* 7AA Wright & Miller, Fed. Prac. & Proc. Civ. § 1772 (3d ed. April 2022 update).

## CONCLUSION

The motion for class certification should be granted.

Respectfully submitted.

_/s/ Walter S. Zimolong III_

Jonathan F. Mitchell
Pennsylvania Bar No. 91505
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Walter S. Zimolong III
Pennsylvania Bar No. 89151
Zimolong, LLC
Post Office Box 552
Villanova, Pennsylvania 19085-0552
(215) 665-0842 (phone)
wally@zimolonglaw.com

Gene P. Hamilton
Virginia Bar No. 80434
Vice-President and General Counsel
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

* admitted *pro hac vice*

*Counsel for Plaintiffs and
the Proposed Classes*

Dated: May 10, 2022

## CERTIFICATE OF SERVICE

I certify that on May 10, 2022, I served this document through CM/ECF upon:

WILLIAM KENNEDY
Montgomery McCracken Walker & Rhoads LLP
1735 Market Street
Philadelphia, Pennsylvania 19103-7505
(215) 772-7291 (phone)
(215) 731-3689 (fax)
wkennedy@mmwr.com

*Counsel for Defendants*

       /s/ Walter S. Zimolong III
       WALTER S. ZIMOLONG III
       *Counsel for Plaintiffs and*
       *the Proposed Classes*