UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**Sherice Sargent**, individually, as next friend of her minor child, and on behalf of those similarly situated, **Fallon Girini**, individually, as next friend of her minor child, and on behalf of those similarly situated, **Michele Sheridan**, individually, as next friend of her minor child, and on behalf of those similarly situated, **Joshua Meyer**, individually, as next friend of his minor child, and on behalf of those similarly situated

                Plaintiffs,

v.

**The School District of Philadelphia**; **William R. Hite**, in his official capacity as Superintendent of the School District of Philadelphia; **Board of Education, the School District of Philadelphia**; **Joyce Wilkerson**, **Leticia Egea-Hinton**, **Julia Danzy**, **Mallory Fix Lopez**, **Maria Mccolgan**, **Lisa Salley**, **Reginald Streater**, and **Cecelia Thompson**, each in their official capacities as members of the Board of Education of the School District of Philadelphia; **Sabriya Jubilee**, in her official capacity as director of diversity, equity, and inclusion for the School District of Philadelphia; **Karyn Lynch**, in her official capacity as chief of student support services for the School District of Philadelphia,

                Defendants.

Case No. 2:22-cv-01509-CFK

# FIRST AMENDED COMPLAINT

"'[D]iscrimination on the basis of race is illegal, immoral, unconstitutional, inherently wrong, and destructive of democratic society.'" *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 521 (1989) (Scalia, J., concurring in the judgment) (quoting Alexander Bickel, *The Morality of Consent* 133 (1975). "[E]very time the government places citizens on racial registers and makes race relevant to the provision of burdens or benefits, it demeans us all." *Fisher v. Univ. of Tex. at Austin* (*Fisher I*), 570 U.S. 297, 316 (2013) (Thomas, J., concurring) (citation and internal quotation marks omitted). While discriminatory racial preferences might find favor in modern academia, they find no comfort in the Constitution. *See Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1,* 551 U.S. 701, 732 (2007) ("Racial balancing is not transformed from 'patently unconstitutional' to a compelling state interest simply by relabeling it 'racial diversity.'").

But this has not stopped the School District of Philadelphia from adopting a blatantly unconstitutional race-based system for admission to its criteria-based public schools. In 2021, in the name of "antiracism" and "equity," the school district announced that, starting with the 2022–23 school year, it was changing its selection process for criteria-based schools from a race-neutral process to a racially discriminatory process. The school district did so despite 62% of the students attending those schools identifying as black or Latino and no schools having a white majority.

Before 2021, admissions to these select schools was highly individualized with the principal of each school having the final say on admission. But the school district was concerned about the racial distribution this system generated, even though the schools were already quite diverse with no school having a white majority.  The school district believed some select schools, in particular a science and technology school, had an underrepresentation of non-black students (in other words "too black") and that non-black and non-Latino students were "overrepresented" in other schools (in other words "not black enough.") So it overhauled the admissions process to these

schools in a conscious and intentional effort to rebalance the racial makeup of the student body. It did so by moving from a highly individualized and criteria-based process to a gerrymandered lottery system where black and Latino students were given preferential treatment. While all students participate in the lottery, students who reside in certain "underrepresented zip codes" are given preference for admission over students who do not reside in those zip codes.

The plaintiffs are parents of students who have applied or will apply to the school district's criteria-based schools and who have been or will be harmed by the school district's discriminatory practices. They seek a preliminary and permanent injunction to restrain the school district from using a racial discriminatory system for admission to criteria-based schools.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Sherice Sargent is a resident of the city of Philadelphia and the mother of an eighth-grade student in the School District of Philadelphia.

2. Plaintiff Fallon Girini is a resident of the city of Philadelphia and the mother of an eighth-grade student in the School District of Philadelphia.

3. Plaintiff Michele Sheridan is a is a resident of the city of Philadelphia and the mother of an eighth-grade student in the School District of Philadelphia.

4. Plaintiff Joshua Meyer is a is a resident of the city of Philadelphia and the father of an eighth-grade student in the School District of Philadelphia.

5. Defendant the School District of Philadelphia is a political body organized under the laws of the Commonwealth of Pennsylvania and the Philadelphia Home Rule Charter.

6. Defendant William R. Hite is the superintendent of the School District of Philadelphia and is sued in his official capacity.

7. Defendant Board of Education of the School District of Philadelphia is a political body organized under the Philadelphia Home Rule Charter and is responsible for conducting the affairs of the School District of Philadelphia.

8. Defendant Julia Danzy is a member of the Board of Education of the School District of Philadelphia and is sued in her official capacity.

9. Defendant Leticia Egea-Hinton is a member of the Board of Education of the School District of Philadelphia and is sued in her official capacity.

10. Defendant Mallory Fix Lopez is a member of the Board of Education of the School District of Philadelphia and is sued in her official capacity

11. Defendant Maria McColgan is a member of the Board of Education of the School District of Philadelphia and is sued in her official capacity.

12. Defendant Lisa Salley is a member of the Board of Education of the School District of Philadelphia and is sued in her official capacity.

13. Defendant Reginald L. Streater is a member of the Board of Education of the School District of Philadelphia and is sued in his official capacity.

14. Defendant Cecelia Thompson is a member of the Board of Education of the School District of Philadelphia and is sued in her official capacity.

15. Defendant Joyce Wilkerson is a member of the Board of Education of the School District of Philadelphia and is sued in her official capacity.

16. Defendant Sabriya Jubilee is the school district's director of diversity, equity, and inclusion and is sued in her official capacity.

17. Defendant Karyn Lynch is the school district's chief of student support services and is sued in her official capacity.

18. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

19. Venue is proper because a substantial part of the events giving rise to the claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

## STATEMENT OF FACTS

20. The school district maintains a system of public high schools in the city of Philadelphia.

21. There are three types of high schools: (1) neighborhood high schools,[1] (2) citywide admissions high schools, and (3) special-admission or criteria-based high schools. *See* School District of Philadelphia, High School Directory Fall 2021 Admissions, at 4 (attached as Exhibit 1).

22. Neighborhood high schools are open to those to students living within certain defined geographical neighborhood boundaries. *Id*.

23. Citywide admissions high schools accept student from across the city. They do not have admission criteria. Admission is based on a partial lottery system. *Id*.

24. Special-admission high schools traditionally had admission criteria related to academic performance, standardized test scores, attendance, and behavior. *Id*.

25. The school district describes these special-admission schools as those "which offer a rigorous, enriched curriculum that may concentrate on a particular discipline or area of study, such as mathematics, natural sciences, engineering, humanities; social sciences, or fine and performing arts." https://www.philasd.org/studentplacement/faqs

26. According to the school district, these special-admission schools are criteria-based or "magnet" schools and "do not have an attendance boundary either and students must apply through the Selection Process." *Id*.

27. Through the 2021–2022 school year, that selection process was objective and individualized.

28. The schools had "competitive entrance requirements related to attendance, punctuality, behavior, grades and standardized test scores. These schools select and approve those students for admission who best meet its entrance criteria." *Id*.

---

1. The school district also sometimes refers to neighborhood schools as catchment schools.

29. But the school district decided to change these merit-based criteria starting with the 2022–2023 school year, claiming that it made these changes "in alignment with [its] commitment toward antiracism and equity, as outlined in the Board of Education's Goals and Guardrails." *See* School District of Philadelphia, High School Directory Fall 2022 Admissions, at 4 (attached as Exhibit 2).

30. In the spring of 2021, the school district's Board of Education approved a policy document entitled "Board of Education Goals & Guardrails" (attached as Exhibit 3).

31. The Goals & Guardrails document includes a section entitled "Addressing Racist Practices," which announces that "our students' potential will not be limited by practices that perpetuate systemic racism and hinder student achievement." Ex. 3, page 4.

32. The Goals & Guardrails document states:

> Among 8th grade students who are qualified to attend Special Admission High schools, the percentage who are Black/African American or Hispanic/Latinx will grow from 33.8% in August 2020 to at least 52.0% (making progress towards being proportional to population as a whole) by August 2026.

Ex. 3, page 4.

33. The Goals & Guardrails document also states:

> The percentage of suspensions received by Black/African American students will decrease from 72.6% in August 2020 to no more than 48.3% (proportional to population as a whole) by August 2026.

Ex. 3, page 4.

34. The board of education admits that its "Goals and Guardrails" are racially motivated, race based, and designed to achieve a racial composition at the city's elite high schools that mirrors the racial makeup of the overall population in the School District of Philadelphia:

> [The Goal's] initiative includes increasing representation of Black and Latino students at highly-ranked magnet schools as part of a broader effort to "dismantle racist practices."

Mallory Falk, *Philly centralizes admissions process for magnet schools to increase student diversity,* whyy.com, (Oct. 6, 2021), https://whyy.org/articles/philly-centralizes-admissions-process-for-magnet-schools-to-increase-student-diversity

35. In 2021, the school district decided to change the standards for admission to its criteria-based schools, starting with the 2022–2023 school year.

36. The school district changed the admissions process for its criteria-based schools by: (a) eliminating the standardized test as a criterion for admission; (b) eliminating letters of recommendation and interviews as criteria for admission; and (c) requiring applicants to sit for a 90-minute essay exam, which is administered and scored by a computer program called MI Write. Only students whose computerized essay score equals or exceeds 22 out of 30 will be eligible for admission to Masterman and Central, and only students with essay scores at 17 or above will be eligible for admission to Carver, Parkway, and Palumbo.

37. The school district further changed its admission practices by instructing criteria-based schools to admit students by lottery if they satisfied the minimum grade cut-offs (As and Bs) and minimum essay score cut-offs (17 or 22), rather than allowing principals to select the best qualified students from among the applicant pool, as had been done previously.

38. Finally, the school district changed its admission practices by requiring students residing in six specified zip codes—19121, 19132, 19133, 19134, 19135, and 19140—to receive preferences in the lotteries for admission to Masterman, Central, Carver, Parkway, and Palumbo. *See* Ex. 2, page 4 ("Zip code preference will be applied at select criteria-based schools for students who meet the minimum qualifications").

39. According to the 2020 census data, the racial makeup of zip code 19121 is: 72.2% black (non-Hispanic), 15.4% white (non-Hispanic), 6.5% Hispanic or Latino, and 3.5% Asian.

40. According to the 2020 census data, the racial makeup of zip code 19132 is: 91.9% black (non-Hispanic), 3.2% Hispanic or Latino, 2.5% white (non-Hispanic), and 1.15% Asian.

41. According to the 2020 census data, the racial makeup of zip code 19133 is: 57.7% Hispanic or Latino, 36.7% black (non-Hispanic), 3.6% white (non-Hispanic), and 3.5% Asian.

42. According to the 2020 census data, the racial makeup of zip code 19134 is: 51.3% Hispanic or Latino, 30.3% white (non-Hispanic), 13.4% black (non-Hispanic), and 1.6% Asian.

43. According to the 2020 census data, the racial makeup of zip code 19135 is: 44.7% white (non-Hispanic), 24.2% Hispanic or Latino, 20.9% black (non-Hispanic), and 5.7% Asian.

44. According to the 2020 census data, the racial makeup of zip code 19140 is: 50.1% black (non-Hispanic), 42.2% Hispanic or Latino, 4.3% white (non-Hispanic), and 1.7% Asian.

45. The school district has admitted that these changes to the admissions process were made "in alignment with our commitment toward antiracism and equity, as outlined in the Board of Education's Goals and Guardrails." Ex. 2.

46. At least one of the school district's reasons for changing the selection process at its criteria-based schools was to alter the racial makeup of Masterman, Central, Carver, Parkway, and Palumbo.

47. The school district has instituted its racially discriminatory selection standards even though Black and Latino students are already well represented among the student bodies of the criteria-based schools.

48. Defendant Superintendent William Hite has publicly stated said 62% of students who qualify for these schools are Black and Latino. Wakisha Bailer, *"What Do I Do?" Families Unhappy with Philadelphia School District's Lottery Process Ahead of Deadline*, Philadelphia.cbslocal.com (Feb. 11, 2022), available at: https://philadelphia.cbslocal.com/2022/02/11/philadelphia-school-lottery-district-parents-specialty-admission-policy-diversity

49. According to the school district, many special-admissions or criteria-based school already maintain a majority-minority enrollment:

| Ethnicity | Asian | Black/African American | Hispanic/Latino | Multi Racial | White |
|---|---|---|---|---|---|
| Academy at Palumbo | 34% | 37% | 10% | 3% | 15% |
| Carver High School of Engineering and Science | 13% | 63% | 9% | 6% | 8% |
| Central | 39% | 18% | 8% | 5% | 30% |
| Masterman | 27% | 15% | 6% | 10% | 43% |
| Parkway Center City Middle College | 7% | 70% | 17% | 4% | 2% |
| Philadelphia School District | 10% | 47% | 23% | 5% | 15% |

Table: DOMINIQUE DeMOE / Staff Artist • Source: School District of Philadelphia

*See* Kristen A. Graham, *Philly's magnet school admissions are being overhauled – in the name of equity,* The Philadelphia Inquirer, (Oct. 6, 2021), available at: https://www.inquirer.com/news/philadelphia-district-magnet-schools-criteria-admissions-changes-20211006.html; The School District of Philadelphia, School Profiles, https://schoolprofiles.philasd.org (last visited June 3, 2022).

50. No criteria-based school has a white majority. *Id*.

51. Indeed, at least two of the school district's criteria-based schools have a black enrollment that exceeds the average black enrollment in the school district as a whole. *Id*.

52. Sherice Sargent is black and the mother of a black female eighth-grade student.

53. Her daughter is enrolled at a science, engineering, and technical school.

54. She wanted to continue her studies at her current school, which is a criteria-based high school specializing in science and technology.

55. In fact, when she was admitted into her current school, a school-district official stated that if she maintained an A/B average she would be able to continue her education at her current school's high school.

56. Sargent's daughter is an A/B student and meets all of the criteria for admission into her school's high school.

57. But contrary to the school-district official's previous representations, she was not able to continue at her current school's high school.

58. She was unable to continue because of the racially discriminatory selection standards maintained and used by the school district. Sargent's daughter was waitlisted at her current school's high school (receiving waitlist number 187) and placed in an agricultural school that specializes in teaching students about farming and how to become farmers.

59. Fallon Girini is a mother of an eighth-grade student at Christopher Columbus Charter School.

60. Girini's son is white and lives in the 19148 zip code.

61. The 19148 zip code is not a preferred zip code.

62. Girini's son is a straight-A student with an exemplary attendance record.

63. He applied for admission to the Academy of Palumbo, a criteria-based school.

64. He was wait-listed and given number 185.

65. Under the previous admissions standards, Girini's son would have been admitted to the Academy of Palumbo.

66. Michele Sheridan is the mother of eighth grade student at Christopher Columbus Charter School.

67. Sheridan's son is non-white (bi-racial).

68. Sheridan's son applied for admission to the Academy at Palumbo, a criteria-based school.

69. He lives mere feet from the front door of the Academy at Palumbo.

70. He is an A and B student and meets all the requirements for admission into the school.

71. He scored 22.5 out of 25 on the school district's admission essay.

72. But because of the racially discriminatory selection standards maintained and used by the school district, Sheridan's son was denied admission to the Academy of Palumbo and is currently wait-listed at number 530.

73. Plaintiff Joshua Meyer is a resident of the city of Philadelphia and the father of a student in the School District of Philadelphia. His family is white.

74. Mr. Meyer's son is currently in eighth grade, and he is enrolled at the Julia R. Masterman Laboratory and Demonstration School.

75. Mr. Meyer's son wanted to continue his high-school studies at Masterman, a criteria-based high school that consistently ranks as the top high school not only in Philadelphia but in the entire state of Pennsylvania. He also would have been excited to attend Central High School, another school with a history of high achievement and a broad range of accelerated and exciting offerings.

76. Mr. Meyer's son is a stellar student, and has received only one quarter grade less than an A (one 5th grade quarter of a B in music). All of his final grades were As. He also scored over a 25 out of 30 on the school district's computer-scored writing

sample, which exceeds the minimum required score of 22 for admission to Masterman and Central (which was later dropped to 21.5).

77. Mr. Meyer's son would have very likely been admitted to Masterman, as well as Central High School, under the merit-based admission system that was used before the school district switched to the lottery system. Under the previous regime, the top 50% (approximately) of the eighth-grade class at Masterman would be admitted to the high school, and the strong grades that my son has earned place him well within the top 50% of his eighth-grade class. In addition, virtually all Masterman eighth graders would be admitted to Central High School under the previous merit-based admission system.

78. As a result of the school district's decision to replace its merit-based admissions system, Mr. Meyer's son did not get admitted to either Masterman or Central.

79. Mr. Meyer decided to enroll his son in a private school for the fall of 2022.

80. Either Masterman or Central would have been a better high school for Mr. Meyer's son under the previous admissions criteria, where students were accepted on the basis of merit and the institutions served as elite magnet schools for the city's most ambitious and hardest-working students.

81. But the new lottery-based admission system has so diluted the academic quality of Masterman and Central that Mr. Meyer may not even want his son to attend those schools over the private school where he is enrolled for the upcoming school year, even if his son had won admission under the new lottery-based system.

## CLASS-ACTION ALLEGATIONS

82. Sargent, Girini, Sheridan, and Meyer seek to represent a class of parents and students under Fed. R. Civ. P. 23(b)(1)(A), (b)(1)(B), (b)(2) and (b)(3). This class includes all students and parents of students who: (1) applied for admission to a criteria-based school but were denied admission because of the school district's racially

discriminatory admissions standards; or (2) will apply for admission to a criteria-based school in the future but face an increased risk of being denied admission because of the school district's racially discriminatory admissions standards. The class includes everyone who has ever fallen within this definition.

83. The number of persons in the class makes joinder of the individual class members impractical.

84. There are numerous questions of law and fact common to each member of the class. These include:

   a. Whether the school district maintains and uses a racially discriminatory standards for admission into its criteria-based schools;

   b. Whether the class members can recover compensatory damages from the school district; and

   c. Whether the school district's racially discriminatory admissions standards violate the United States and Pennsylvania Constitutions.

85. Sargent, Girini, Sheridan, and Meyer's claims are typical of other class members.

86. Sargent, Girini, Sheridan, and Meyer adequately represent the interests of their fellow class members, and they have no interests antagonistic to the class.

87. A class action can be maintained under Rule 23(b)(1)(A) because separate actions by class members could risk inconsistent adjudications on the underlying legal issues.

88. A class action can be maintained under Rule 23(b)(1)(B) because an adjudication determining the constitutionality of the school district's racially discriminatory admissions standards will, as a practical matter, be dispositive of the interests of all class members.

89. A class action can be maintained under Rule 23(b)(2) because the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

90. A class action can be maintained under Rule 23(b)(3) because the common questions of law and fact identified in the complaint predominate over any questions affecting only individual class members. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other things, all class members are subjected to the same violation of their constitutional rights, but the amount of money involved in each individual's claim would make it burdensome for class members to maintain separate actions.

## CAUSES OF ACTION

### Claim 1: Violation Of Title VI

91. Title VI of the Civil Rights Act of 1964 prohibits racial discrimination in any "program or activity" that receives federal funds. *See* 42 U.S.C. § 2000d ("No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.").

92. The school district is an entity receiving federal financial assistance.

93. The defendants are violating Title VI by discriminating against non-black and non-Latino students by establishing, maintaining, and using racially discriminatory standards for placement in the school district's criteria-based schools.

94. The plaintiffs assert this claim under 42 U.S.C. § 1983 and the implied right of action established by Title VI.

### Claim 2: Violation Of The Equal-Protection Clause

95. The Equal Protection Clause prohibits racial discrimination by state or local government entities. *See Johnson v. California*, 543 U.S. 499, 510–11 (2005); *Shaw v. Hunt*, 517 U.S. 899 (1996) ("Racial classifications are antithetical to the Fourteenth Amendment, whose central purpose was to eliminate racial discrimination emanating from official sources in the States."); *Palmore v. Sidoti*, 466 U.S. 429, 432 (1984) ("A core purpose of the Fourteenth Amendment was to do away with all governmentally imposed discrimination based on race.").

96. The defendants are violating the Equal Protection Clause by applying different admission standards for plaintiffs' children based on their race.

97. The defendants' use of zip-code preferences along with a lottery system also fails rational-basis review.

98. The plaintiffs assert this claim against the defendants under 42 U.S.C. § 1983.

### Claim 3: Violation of Pa. Const. Art. I, §§ 26, 29

99. Article I, § 26 of the Pennsylvania Constitution prohibits any political subdivision from deny any person a civil right. ("Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.")

100. Article I, § 29 of the Pennsylvania Constitution prohibits the abridgement of any right because of a person's race or ethnicity. ("Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the race or ethnicity of the individual.")

101. The defendants are violating the Pennsylvania Constitution by establishing, maintaining, and using a system of selection to the school district's criteria-based schools that discriminates on the basis of their race.

## DEMAND FOR RELIEF

102. The plaintiffs respectfully request that the court:

   a.  certify the class described in paragraph 82;

   b.  declare that the defendants are violating 42 U.S.C. § 1983, Title VI, the Equal Protection Clause, and article I, §§ 26 and 29 of the Pennsylvania Constitution by establishing, maintaining, and using racially discriminatory standards for selection and admission to the school district's criteria-based schools;

   c.  enter a preliminary and permanent injunction that restrains the defendants from denying admission to the school district's criteria-based schools on the basis of race or on the basis of residence in zip codes that were selected because of their racial composition;

   d.  enter a preliminary and permanent injunction that restrains the defendants from maintaining a system that gives preference to students for admission into the school district's criteria-based schools on the basis of their race or on the basis of their residence in zip codes that were selected because of their racial composition;

   e.  permanently enjoin the defendants from establishing, using, or maintaining racially discriminatory criteria for admission to the school district criteria-based schools;

   f.  award the plaintiffs and the class members nominal, compensatory, and punitive damages;

   g.  award costs and attorneys' fees under 42 U.S.C. § 1988; and

   h.  award all other relief that the Court deems just, proper, or equitable.

|  |  |
|---|---|
|  | Respectfully submitted. |
|  | /s/ Walter S. Zimolong |
| Jonathan F. Mitchell | Walter S. Zimolong |
| Pennsylvania Bar No. 91505 | Pennsylvania Bar No. 89151 |
| Mitchell Law PLLC | Zimolong, LLC |
| 111 Congress Avenue, Suite 400 | Post Office Box 552 |
| Austin, Texas 78701 | Villanova, Pennsylvania 19085-0552 |
| (512) 686-3940 (phone) | (215) 665-0842 (phone) |
| (512) 686-3941 (fax) | wally@zimolonglaw.com |
| jonathan@mitchell.law |  |
|  |  |
| Gene P. Hamilton* |  |
| Virginia Bar No. 80434 |  |
| Vice-President and General Counsel |  |
| America First Legal Foundation |  |
| 300 Independence Avenue SE |  |
| Washington, DC 20003 |  |
| (202) 964-3721 | * admitted *pro hac vice* |
| gene.hamilton@aflegal.org |  |
|  | *Counsel for the Plaintiffs* |
| Dated: June 3, 2022 | *and the Proposed Classes* |

## CERTIFICATE OF SERVICE

    I certify that on June 3, 2022, I served this document through CM/ECF upon:

WILLIAM KENNEDY
Montgomery McCracken Walker & Rhoads LLP
1735 Market Street
Philadelphia, Pennsylvania 19103-7505
(215) 772-7291 (phone)
(215) 731-3689 (fax)
wkennedy@mmwr.com

*Counsel for Defendants*

                                        /s/ Walter S. Zimolong III
                                        WALTER S. ZIMOLONG III
                                        *Counsel for Plaintiffs and*
                                        *the Proposed Classes*