**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHARICE SARGENT, et al., | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| THE SCHOOL DISTRICT OF | : | |
| PHILADELPHIA, et al., | : | |
| | : | |
| Defendants. | : | NO. 22-cv-01509 |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO
<u>DISMISS THE AMENDED COMPLAINT</u>**


Renee N. Smith (I.D. No. 65866)
William K. Kennedy (I.D. No. 86571)
MONTGOMERY MCCRACKEN WALKER &
RHOADS LLP
1735 Market Street, 21st Floor
Philadelphia, Pennsylvania 19103

# TABLE OF CONTENTS

**Page**

I.    THE AMENDED COMPLAINT DOES NOT ALLEGE FACTS SUPPORTING THE CLAIMS. ................................................................................................ 2

    A.    Stripped of Conclusory Allegations, the Amended Complaint Asserts  No Facts to Support the Claims. ................................................................... 3

    B.    The Amended Complaint Confirms That the Admissions Process  Was Race Neutral. ....................................................................................... 5

    C.    Standardized Test Scores Were Not Used In 2020-21 Or 2021-22. ...................... 6

    D.    An Essay Exam Was Used in 2021-22. ........................................................ 7

    E.    Qualified Students Were Admitted to Schools by Lottery, Rather Than Based on Principals' Subjective Determinations. .................................. 7

    F.    Qualified Students From Six Zip Codes Received Preference In The Lottery. ..................................................................................................... 8

II.    ARGUMENT ................................................................................................ 10

    A.    The Amended Complaint Should Be Dismissed Because the Admissions Process is Race Neutral and Rationally Related to Legitimate School District Objectives. ................................................... 10

        1.    The Admissions Process is Race-Neutral. ............................... 10

        2.    Plaintiffs Do Not Allege that the Admissions Process Had a Racially Discriminatory Purpose and a Racially Discriminatory Impact. ....................................................... 13

        3.    The 2022 High School Directory Shows That the New Admissions Process Is Rationally Related to Numerous Legitimate Governmental Interests. ......................................... 18

    B.    Plaintiffs' Claims Against the 11 Individual Defendants Should Be Dismissed Because the Amended Complaint Fails to Allege Any Facts Showing the Personal Involvement or Participation of Any Individual Defendant. ................................................................................................ 20

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

**Page(s)**

*Adams v. Steinmetz*,
  2019 WL 358522 (E.D. Pa. Jan. 28, 2019) (Kenney, J.) ......................................21

*Antonelli v. New Jersey*,
  419 F.3d 267 (3d Cir. 2005).........................................................................................2

*Ashcraft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................... *passim*

*Ashcroft v. Iqbal*,
  556 U.S. 602 (2009)...............................................................................13, 14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................4, 17

*Boston Parent Coalition for Academic Excellence Corp. v. School Committee of
  the City of Boston*,
  2021 WL 4489840 (D. Mass. Oct. 1, 2021), *appeal pending*, Nos, 21-1303 &
  21-1144 (1st Cir.)...............................................................................12, 19

*Boyapati v. Loudoun Cnty. Sch. Bd.*,
  No. 20-01075, 2021 WL 943112 (E.D. Va. Feb. 19, 2021) ...................................19

*Chandler v. Univ. of Pennsylvania*,
  927 F. Supp. 2d 175 (E.D. Pa. 2013) .....................................................12

*Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*,
  364 F. Supp. 3d 253 (S.D.N.Y.), *aff'd*, 788 Fed. App'x 85 (2d Cir. 2019)............20

*Com. v. Albert*,
  758 A.2d 1149 (Pa. 2000)..........................................................................2

*Doe ex rel. Doe v. Lower Merion School Dist.*,
  665 F.3d 524 (3d Cir. 2011)............................................................... *passim*

*Donatelli v. Mitchell*,
  2 F.3d 508 (3d Cir. 1993)..........................................................................18

*Elmore v. Cleary*,
  399 F.3d 279 (3d Cir. 2005).......................................................................2

*Fisher v. Univ. of Texas at Austin*,
    570 U.S. 297 (2013)...................................................................................16, 17

*Grutter v. Bollinger*,
    539 U.S. 306 (2003)................................................................................2, 12, 13

*Handy v. Palmiero*,
    2018 WL 4680265 (E.D. Pa. Sept. 28, 2018) ..............................................2

*Keenan v. City of Philadelphia*,
    983 F.2d 459 (3d Cir. 1992).........................................................................2

*MGJ v. Sch. Dist. of Philadelphia*,
    No. 17-318, 2017 WL 2277276 (E.D. Pa. May 25, 2017)........................20

*Outerbridge v. Oberlander*,
    No. 20-2783, 2021 WL 3271217 (E.D. Pa. July 30, 2021) ....................18

*Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*,
    998 F.2d 1192 (3d Cir. 1993).......................................................................8

*Personnel Adm'r of Massachusetts v. Feeney*,
    442 U.S. 256 (1979)....................................................................................13

*Purnell v. Radnor Township School Dist.*,
    2019 WL 1585113 (E.D. Pa. Apr. 12, 2019) (Kenney, J.) ....................4, 5

*Rode v. Dellarciprete*,
    845 F.2d 1195 (3d Cir. 1988)..................................................................20, 21

*Santiago v. Warminster Twp.*,
    629 F.3d 121 (3d Cir. 2010).....................................................................4, 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..................................................................................8, 19

*United States v. Bowers*,
    2022 WL 825437 (W.D. Pa. Mar. 18, 2022) ............................................12

*Victaulic Co. v. Tieman*,
    499 F.3d 227 (3d Cir. 2007).........................................................................8

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHARICE SARGENT, et al., | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| THE SCHOOL DISTRICT OF | : | |
| PHILADELPHIA, et al., | : | |
| | : | |
| Defendants. | : | NO. 22-cv-01509 |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO
DISMISS THE AMENDED COMPLAINT**

This Court should dismiss the Amended Complaint because the School District of

Philadelphia (the "School District") used a race-neutral high school admissions process that is

rationally related to the legitimate government interest of providing educational opportunities to

all qualified Philadelphia students.  The Amended Complaint itself demonstrates that the

admissions process was race neutral.

The Amended Complaint fails to allege *any facts* that would allow the Court to draw a

reasonable inference that the admissions process discriminated on the basis of race.  Instead, the

alleged facts show a race-neutral admissions process that neither was adopted with a racially

discriminatory purpose nor has a discriminatory impact, requiring this Court to apply "rational

basis" review to the School District's admissions process.

Because rational basis review is easily satisfied, all three counts in the Amended

Complaint, which are governed by the same analysis, should be dismissed.

Each of the eleven individual defendants named in the Amended Complaint should also be dismissed.  The Amended Complaint confirms that the School District—not any individual— adopted the admissions process, and Plaintiffs have not alleged that any individual defendant had personal involvement in the development, adoption, or implementation of the admissions process.

## I.      THE AMENDED COMPLAINT DOES NOT ALLEGE FACTS SUPPORTING THE CLAIMS.

The Amended Complaint asserts three claims.  Claims 1 and 2 are brought under 42 U.S.C. § 1983 for alleged violations of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and the Equal Protection Clause of the Fourteenth Amendment, respectively.  Claim 3 alleges violations of Article I, § 26 and Article I, § 29 of the Pennsylvania Constitution.  The basis of all three claims is alleged race discrimination.  To assert a race-based claim under the Equal Protection Clause, a plaintiff must allege:

    (1)  he is in a protected class;
    (2)  the defendant acted under the color of state law; and
    (3)  the defendant treated the plaintiff differently because of his
         race or acted with a racially discriminatory intent or purpose.

*See Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005); *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992); *Antonelli v. New Jersey*, 419 F.3d 267, 274 (3d Cir. 2005); *Handy v. Palmiero*, 2018 WL 4680265, *3 (E.D. Pa. Sept. 28, 2018) (quoting *Johnson v. Fuentes*, 704 F. App'x 61, 65 (3d Cir. 2017)).

The same legal standards apply to all three claims in the Amended Complaint.  *See Grutter v. Bollinger*, 539 U.S. 306, 343 (2003) (the prohibitions of the Equal Protection Clause and Title VI are co-extensive); *Doe ex rel. Doe v. Lower Merion School Dist.*, 665 F.3d 524, 557 (3d Cir. 2011) (same); *Com. v. Albert*, 758 A.2d 1149, 1151 (Pa. 2000) (Article I, § 26 of the

Pennsylvania Constitution is analyzed under the same standards the United States Supreme Court

uses in reviewing federal equal protection claims).[1]

The Amended Complaint *does not assert facts* that show (1) that the Plaintiffs are in

protected classes or (2) that the School District treated any Plaintiff differently because of race or

acted with any racially discriminatory intent or purpose.  To the contrary, the facts alleged in the

Amended Complaint show only that the School District utilized a more objective admissions

process than in prior years and that no aspect or step of the process considered a student's race.

A.     **Stripped of Conclusory Allegations, the Amended Complaint Asserts
        No Facts to Support the Claims.**

The conclusory allegations in the Amended Complaint are not entitled to the assumption

of truth.  The few facts Plaintiffs do allege directly contradict their conclusions and claims, and

fail to support any reasonable inference that the School District's admissions process is racially

discriminatory.  Indeed, the Amended Complaint alleges the implementation of a race-neutral

lottery for admission to criteria-based high schools, a "preference in the lotteries" for six zip

codes selected solely on the number of students enrolled from those zip codes, and inaccurate,

conclusory assertions about the "racial makeup" of those zip codes, which does not confirm or

even suggest racial considerations.  Based on the failure to allege facts supporting the claims of

racial discrimination, the Amended Complaint should be dismissed.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim that is plausible on its face.'" *Ashcraft v. Iqbal,* 556 U.S. 662,

---

[1] Claim 3 of the Amended Complaint asserts violations of both § 26 and § 29 of the Pennsylvania Constitution.  Section 29 was added to the Pennsylvania Constitution as of May 18, 2021 and has not yet been subject to any reported judicial construction.  There is, however, no basis for contending that this new provision—which expressly bars the denial or abridging of "[t]he equality of rights under the law" on the basis of race or ethnicity—would be construed differently than the more generally worded § 26, which does not mention race or ethnicity.

678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  In *Twombly*, the Court explained that there is "a line between the conclusory and the factual" and also a line "between the factually neutral and the factually suggestive.  Each must be crossed to enter the realm of plausible liability."  550 U.S. at 557 n.5.

The "plausibility" analysis requires a court to examine all facts alleged in a complaint, including facts that undercut the inference of liability and facts that suggest "an obvious alternative explanation" that demonstrates the insufficiency of the claim.  *See Iqbal*, 556 U.S. at 681-82 and *Twombly*, 550 U.S. at 567-69. *See also Santiago v. Warminster Twp.*, 629 F.3d 121, 133 (3d Cir. 2010) (finding that allegations that the police used excessive force on one occupant of a house but not on others undercut the plaintiff's claim that the police chief ordered officers to use excessive force on all occupants).

This Court has explained the analysis the Supreme Court and Third Circuit require under Rule 12(b)(6) as a three-step process:

- First, the court "must 'take note of the elements [the] plaintiff must plead to state a claim.'"

- Second, [the court] should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."

- Third, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Purnell v. Radnor Township School Dist.*, 2019 WL 1585113, at *3 (E.D. Pa. Apr. 12, 2019) (Kenney, J.) (citing *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (alterations in original).

In *Purnell*, this Court dismissed claims against individual defendants because the complaint alleged only conclusions, not facts, against them.

As in *Purnell*, the Amended Complaint includes almost no factual allegations – and certainly no factual allegations supporting Plaintiffs' claims. Eliminating the unsupported conclusions from the Amended Complaint leaves no allegation that plausibly gives rise to a right to relief. Therefore, the Amended Complaint should be dismissed.

### B.     The Amended Complaint Confirms That the Admissions Process Was Race Neutral.

The School District's criteria-based high schools are "[s]pecial-admission high schools [that] traditionally had admission criteria related to academic performance, standardized test scores, attendance, and behavior." Am. Compl. ¶ 24. "Before 2021, admission to these select schools was highly individualized with the principal of each school having the final say on admission."[2] *Id.*, third initial para.

The 2021-22 admissions process for criteria-based schools was described in the School District's High School Directory for Fall 2022 Admissions (the "2022 High School Directory"). Am. Compl., Ex. 2, at page 4. The 2022 High School Directory highlighted changes from the prior year's process:

> This past year, in alignment with our commitment toward antiracism and equity, as outlined in the Board of Education's Goals and Guardrails, the school selection process underwent an initial equity review during which feedback was collected from various stakeholders including parents and families. The purpose of this ongoing review is to help the District better understand where inequities exist within the process in an effort to make it unbiased and accessible to all families, especially our most marginalized. As a

---

[2] Plaintiffs acknowledge that, prior to the 2021-22 process, the admissions process was based upon the discretion and preferences of a single decision-maker—the high school principal—but make the contrary conclusion that the prior process "was objective and individualized." *Id.* ¶ 27. Plaintiffs' conclusion should be disregarded as a conclusion and as contradicted by the factual allegations in the Amended Complaint.

result of the initial review, the District will be implementing several important changes to this year's process including:

- School selection will move to a computerized lottery system to support greater access for students who meet the qualifications,

- Zip code preference will be applied at select criteria-based schools for students who meet the minimum qualifications,

- School selection and wait lists will be managed centrally,

- Letters of recommendation and interviews are no longer required for eligibility or admission,

- The online application will be available in 9 different languages.

In addition, last year it was determined that PSSA scores would not be used as [] criteria for admission in this year's process. In select schools, a district administered writing sample will be provided as an additional data point of eligibility. It is our hope that this year's changes will be a catalyst for long-term improvements to school selection, providing greater opportunity for all students to attend the school of their choice.

Am. Compl., Ex. 2, at page 4.  Although the 2022 High School Directory serves as the basis for Plaintiffs' allegations regarding the 2021-22 admissions process, the Amended Complaint includes several conclusory allegations regarding differences between the 2021-22 admissions process and the 2020-21.  To the extent those allegations are contradicted by the 2022 High School Directory or they are conclusions not based in fact, they should be disregarded.

**C.**     **Standardized Test Scores Were Not Used In 2020-21 Or 2021-22.**

The 2022 High School Directory confirms that standardized test ("PSSA") scores had not been used as criteria for admission in the 2020-21 process.  Am. Compl., Ex. 2, at page 4. Contrary to that statement, Plaintiffs allege that the 2021-22 admissions process "eliminated standardized test scores and letters of recommendation as criteria for admission."[3]  Am. Compl.

_____

[3] Plaintiffs do not allege that the School District's decision that letters of recommendation were "no longer required" was discriminatory or had a discriminatory impact.

¶ 36.  Because PSSA scores were not considered in either the 2020-21 or 2021-22 admissions

process, this Court should disregard allegations regarding the alleged "elimination" of

standardized test scores.

Even if this Court were to assume PSSA scores were "eliminated," it has no relation to

the allegations of discrimination in the Amended Complaint—the use of PSSA scores are

racially neutral.

> **D.**   **An Essay Exam Was Used in 2021-22.**

The 2021-22 admissions process required "applicants to sit for a 90-minute essay exam,

which [was] administered and scored by a computer program called MI Write."   Am. Compl. ¶¶

36.  Students were qualified for admission to Central and Masterman if their essay exam scores

were 22 or higher, and students were qualified for admission to Carver and Palumbo if their

essay exam scores were 17 or higher.  *Id.*  Plaintiffs describe the essay exam and required scores

but do not allege that the essay exam was discriminatory or had a discriminatory impact.

> **E.**   **Qualified Students Were Admitted to Schools by Lottery, Rather**
>      **Than Based on Principals' Subjective Determinations.**

Contrary to Plaintiffs' allegation that the 2021-22 admissions process "replaced" the

"merit-based admissions system" (Am. Compl ¶ 78), the 2021-22 admissions process applied

rigorous qualification criteria.  The School District admitted qualified students "by lottery if they

satisfied the minimum grade cut-offs (As and Bs) and minimum essay score cut-offs (17 or 22),

rather than allowing principals to select the best qualified students from among the applicant

pool, as had been done previously."  *Id*. ¶¶ 37.

This Court should disregard Plaintiffs' unsupported conclusion that the 2020-21 process

was merit-based but the 2021-22 process was not.  Plaintiffs do not allege that the qualifications

for admission were more or less rigorous or that, with the exception of adding an essay exam, the

qualifications for admission (including grades and attendance) changed between the 2020-21

process and the 2021-22 process.  They allege only that the 2021-22 process removed the

principals as decision-makers in favor of a lottery, in which each qualified student had an equal

opportunity for admission; a conclusory allegation, not credible as fact.

### F.  Qualified Students From Six Zip Codes Received Preference In The Lottery.

The only exception to the lottery system was that "students residing in six specified zip

codes – 19121, 19132, 19133, 19134, 19135, and 19140 – [] receive[d] preferences in the

lotteries for admission to Masterman, Central, Carver, Parkway, and Palumbo."  Am. Compl.

¶ 38.[4]  The School District's Office of Student Enrollment & Placement confirms on its web page

for "School Selection" that the School District's "goal was to identify zip codes which, in recent

years, have been underrepresented at Academy at Palumbo, Central, Engineering and Science

[Carver], and Masterman."[5]  The Office of Student Enrollment & Placement described the

methodology for identifying underrepresented zip codes and their conclusions, none of which

relate to students' races:

---

[4] The parties are separately submitting a set of Stipulated Facts.  In the Stipulated Facts, the parties agree that the zip code priority was applied only for 4 criteria-based schools (Masterman, Central, Carver, and Palumbo), not 5 schools.  On a motion to dismiss, the Court may consider "matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  This Court may take judicial notice of the parties' Stipulated Facts on this motion to dismiss because those facts are not disputed in this lawsuit.  *See* Federal Rule of Evidence 201(b).

[5] https://www.philasd.org/studentplacement/services/school-selection/#1644520789251-ecc5fe0c-a822.  This Court may take judicial notice of this information reported on the Office of Student Enrollment & Placement web page.  It is "indisputably authentic" and much more like the "published reports of administrative bodies" that the Third Circuit has said can be judicially noticed on a motion to dismiss, *see Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993)—in contrast to a private party's unauthenticated marketing material appearing on its website that the Third Circuit has said should not be judicially noticed on a motion to dismiss.  *See Victaulic Co. v. Tieman*, 499 F.3d 227, 236-37 (3d Cir. 2007).

> Our goal was to identify zip codes which, in recent years, have been underrepresented at Academy at Palumbo, Central, Engineering and Science, and Masterman. To do this, we looked at 9th grade enrollment for the last four years (2017-18 through 2020-21) and compared enrollment at these four schools with enrollment at all other District high schools. Each year, about 12% of 9th graders from across the city were enrolled in one of the four high schools – but that percentage varied greatly by students' home zip codes. The specific zip codes with the lowest enrollment rates have not been equitably represented at these four schools, and are being prioritized.

*See* n.5.

Despite the School District's explanation that the "preferred" zip codes were those with the lowest enrollment rates at four schools, Plaintiffs cite to 2020 census data regarding the "racial makeup" of each of the six zip codes.  Am. Comp.  ¶¶ 38-44.  Although the census data does not show any consistency or pattern to support Plaintiffs' conclusion and is not asserted in the context of census data for other zip codes, Plaintiffs summarily conclude that "the zip codes … were selected because of their racial composition[.]"  *Id*. ¶ 102.  Again, the summary conclusion, which is not supported by—and is contradicted by—the alleged facts, must be disregarded.

Furthermore, Plaintiffs allege that the School District implemented "racially discriminatory selection standards even though Black and Latino students are already well represented among the student bodies of the criteria-based schools" (*Id*. ¶ 46) and conclude that "one of the school district's reasons for changing the selection process at its criteria-based schools was to alter the racial makeup of" the schools (*Id*. ¶ 41).

The only alleged factual basis for these conclusions, however, is the School District's "Board of Education Goals & Guardrails" document, which describes the School District's goal of increasing the percentage of black and Hispanic students *qualified* to attend Special Admission High Schools by August 2026.  *Id*. ¶ 32 (Am. Compl., Ex. 3, p. 4) (emphasis added).

Furthermore, these allegations are undermined by the demographic data cited in the Amended Complaint. In two zip codes (19134 and 19135) purportedly included to promote the Black and Hispanic students at criteria-based schools, the percentage of white inhabitants (30.3% and 44/7%) dwarfs the presence of white students across the District: 14.5%. *Compare* Am. Compl. ¶¶ 42-43 *with id.* ¶ 49.

The descriptions of the 2021-22 admissions process in the Amended Complaint and the 2022 High School Directory confirm that the School District implemented a race neutral process. The 2021-22 process did not make any classification of student applicants based on race; it did not provide or withhold any benefit on the basis of race; and it did not provide any advantage, disadvantage, or preference to any student based on race.

## II.   ARGUMENT

### A.   The Amended Complaint Should Be Dismissed Because the Admissions Process is Race Neutral and Rationally Related to Legitimate School District Objectives.

The Amended Complaint confirms that the admissions process is race neutral. The admissions process, therefore, is subject to rational basis review, not strict scrutiny, unless Plaintiffs can show that the process was adopted for a racially discriminatory purpose and has (or will have) a racially discriminatory impact. The Amended Complaint does not support either of these two requirements. Under rational basis review, the Amended Complaint fails to allege facts to support Plaintiffs' claims and must be dismissed.

#### 1.   The Admissions Process is Race-Neutral.

Because no element of the School District's admissions process for criteria-based high schools involved consideration of a student's race, the process is subject to rational basis review.

The Third Circuit has held that a high school admissions process is subject to rational basis review and "passes constitutional muster" if the process "does not select students based on

racial classifications, it does not use race to assign benefits or burdens in the school assignment process, it does not apply the plan in a discriminatory manner, and it does not have a racially discriminatory purpose." *Doe ex rel. Doe v. Lower Merion School Dist.* 665 F.3d 524, 529 (3d Cir. 2011).

In the *Lower Merion* case, the Third Circuit ruled that a high school redistricting plan that assigned students to either of two high schools "based on the neighborhood in which they reside without using individual racial classifications" was race-neutral and properly subjected only to rational basis review.  665 F.3d at 540, 545-56.  This was so even though the trial court (Judge Baylson) found that the Lower Merion *school administration considered the racial composition of various neighborhoods* in deciding which plan to adopt, and specifically *chose a plan that required an area with a high concentration of African-American students to be redistricted* to one of the high schools.  *Id*. at 539.  The Third Circuit explained that the "consideration or awareness of race . . . is not in and of itself a racial classification" and that designing a policy "with racial factors in mind" does not constitute a racial classification if the policy is facially neutral and is administered in a race-neutral fashion.  *Id*. at 548 (quoting *Hayden v. Cnty, of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999)).

Unlike the process in *Lower Merion*, there is no evidence that the School District considered race in any aspect of the 2021-22 admissions process, including in its selection of six zip codes for preference in the lottery.  Indeed, the census data confirm that those zip codes do not include many of the Philadelphia zip codes with the highest concentration of any one race.[6]

---

[6] Plaintiffs have included census data for the six zip codes in ¶¶ 39-44 and ethnicity data for five criteria-based schools and the entire school district in ¶ 49 of the Amended Complaint.  Attached hereto as Exhibit A is the same census data for the 47 general residential zip codes in Philadelphia—sorted by combined percentages of Latino and Black residents, the two racial categories the Amended Complaint alleges the new admissions process is designed to give preferential

If the process in *Lower Merion*, which specifically identified and classified neighborhoods by racial composition, was subject to rational basis review, the School District's 2021-22 admissions process should be subject to rational basis review.

 *Lower* Merion does not stand alone.  In a recent case, the District of Massachusetts applied rational basis review to a school district's high school admissions process that provided an advantage to students from certain zip codes.  *Boston Parent Coalition for Academic Excellence Corp. v. School Committee of the City of Boston*, 2021 WL 4489840, at *10- *12, *15-*16 (D. Mass. Oct. 1, 2021), *appeal pending*, Nos, 21-1303 & 21-1144 (1st Cir.).  In *Boston Parent Coalition*, the Boston School Committee selected an interim admissions plan during the COVID-19 pandemic for three of Boston's most competitive public schools.  *Id.* at *10-12.  The admissions plan eliminated an admissions exam and used zip codes (starting with the zip code with the lowest median household income and progressing to the zip code with the highest) to allocate offers of admission to 80% of the available spots in each school.  *Id.*  The District of Massachusetts held that the admissions plan was race neutral and subject to rational basis review.  *Id.* at *15-16.

 Like the admissions plans addressed in the *Lower Merion School District* and *Boston Parent Coalition* cases, the School District's admissions process is, on its face, racially neutral.  Contrary to Plaintiffs' reliance on one case—*Grutter v. Bollinger*, 539 U.S. 306 (2003) —the Third Circuit confirmed in *Lower Merion* that the strict scrutiny analysis the Supreme Court

---

treatment.  *See* Am. Compl., third initial para. ("a gerrymandered lottery system where black and Latino students were given preferential treatment.").  Courts may take judicial notice of census data.  *See, e.g., United States v. Bowers*, 2022 WL 825437, at *3 n.6 (W.D. Pa. Mar. 18, 2022); *Chandler v. Univ. of Pennsylvania*, 927 F. Supp. 2d 175, 177 n.2 (E.D. Pa. 2013).

applied in *Grutter v. Bollinger* does not apply to the School District's race-neutral admissions process.  *See Lower Merion,* 665 F.3d at 545-46, 548.

2.    **Plaintiffs Do Not Allege that the Admissions Process Had a Racially Discriminatory Purpose and a Racially Discriminatory Impact.**

The Amended Complaint's repeated allegations that the new admissions process is "racially discriminatory" are no more than the "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that the Supreme Court has said "do not suffice." *Iqbal*, 556 U.S. at 678.  And its allegations that the defendants acted "in a conscious and intentional effort to rebalance the racial makeup of the student body" and "to alter the racial makeup of Masterman, Central, Carver, Parkway, and Palumbo" are precisely the types of conclusory allegations of intent that the Supreme Court ruled in *Iqbal* are not entitled, by themselves, to any assumption of truth.  *Id*. at 680-81; *see also id*. at 686-87 (rejecting the argument that Rule 9 of the Federal Rules of Civil Procedure allows intent to be pled in a conclusory fashion).

A race-neutral plan must be reviewed under the rational basis standard unless the plan (1) has a racially discriminatory effect *and* (2) was motivated by a racially discriminatory purpose. *Lower Merion School Dist.*. 665 F.3d at 549 (citing cases).  A "discriminatory purpose" means "more than intent as volition or intent as awareness of consequences." *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979).  "It implies that the decisionmaker … selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of' its adverse effects upon an identifiable group." *Id.*

As to the first requirement of a racially discriminatory purpose, the Amended Complaint alleges conclusions but no facts.  In *Ashcroft v. Iqbal*, 556 U.S. 602 (2009), the Supreme Court required the dismissal of racial discrimination claims based on the plaintiff's failure to plead

sufficient facts to state a claim that officials acted with a racially discriminatory purpose. *Id.* at 680-84. The Court disregarded plaintiff's conclusory allegations about what the two defendants allegedly "knew" or "agreed to" and that they were the "architect" of the allegedly discriminatory policy and that they were "instrumental" in carrying out the policy. *Id.* at 680. The Court determined that the complaint was deficient because the facts it alleged merely recited conclusory allegations regarding the elements of constitutional claims and were insufficient to plausibly establish liability. *Id.* at 680-681.

As to the second requirement, the Amended Complaint has no allegations at all regarding discriminatory effect, and it does not allege *facts* that show a racially discriminatory effect. There is no allegation that the admissions process treats similarly situated applicants differently based on race: for example, that a qualified white student living in one of the six zip codes gets a benefit or an advantage that a qualified Black student in the same zip code does not get. *See Lower Merion School Dist.*, 665 F.3d at 550-51 (noting the absence of evidence of a racially discriminatory impact).

The Amended Complaint is replete with conclusions that, in the words of *Iqbal*, "are not entitled to the assumption of truth":

- "this has not stopped the School District of Philadelphia from adopting a blatantly unconstitutional race-based system for admission to its criteria-based public schools." (Am. Compl., second initial unnumbered paragraph)

- " … changing its selection process for criteria-based schools from a race-neutral process to a racially discriminatory process." (*id.*)

- "it overhauled the admissions process to these schools in a conscious and intentional effort to rebalance the racial makeup of the student body." (*id.*, third initial unnumbered paragraph)

- "moving from a highly individualized and criteria-based process to a gerrymandered lottery system where black and Latino students were given preferential treatment." (*id.*)

-14-

- "At least one of the school district's reasons for changing the selection process at its criteria-based schools was to alter the racial makeup of Masterman, Central, Carver, Parkway, and Palumbo." (*id*. ¶ 46)

- " … because of the racially discriminatory selection standards maintained and used by the school district …." (*id*. ¶ 72)

- "The defendants are violating Title VI by discriminating against non-black and non-Latino students by establishing, maintaining, and using racially discriminatory standards for placement in the school district's criteria-based schools."  (*id*. ¶ 93)

- "The defendants are violating the Equal Protection Clause by applying different admission standards for plaintiffs' children based on their race." (*id*. ¶ 96)

- "The defendants are violating the Pennsylvania Constitution by establishing, maintaining, and using a system of selection to the school district's criteria-based schools that discriminates on the basis of their race." (*id*. ¶ 101).

Stripped of the Amended Complaint's bald allegations and legal conclusions, only the following factual allegations remain:

- the various elements of the new admissions process in the 2022 High School Directory (Am. Compl., Ex. 2, at page 4), which contradicts many of the allegations in the Amended Complaint ¶¶ 36-38;

- the "Goals and Guardrails" document (Ex. 3 to the Am. Compl.), ¶¶ 29-33;[7]

_____

[7] The allegation in ¶ 34, that the School District purportedly has "admit[ted]" that its "Goals and Guardrails" are racially motivated, should be completely disregarded because that allegation is based on, and quotes from, a whyy.org news article.  The article, a copy of which is attached hereto as Exhibit B, shows on its face that Plaintiffs are quoting the words of the article's author and not the statements of anyone affiliated with the School District.

Similarly, the School District's statement that the 2021-22 admissions process was reviewed "in alignment with our commitment toward antiracism and equity, as outlined in the Board of Education's <u>Goals and Guardrails</u>," shows only that the admissions process was consistent with the goals of antiracism and equity.  That statement contradicts Plaintiffs' allegation that the process was racially discriminatory or inequitable.  The Third Circuit has said that this type of statement "should not be mistaken for racially discriminatory intent or for proof of an equal protection violation."  *Lower Merion School Dist.*, 665 F.3d at 548 (citing *Pryor v. National Collegiate*

-15-

- the ethnicity data Plaintiffs provide in ¶ 49 for five criteria-based schools and for the entire school district, which Plaintiffs allege shows that "many special-admissions or criteria-based schools already maintain a majority-minority enrollment"; and

- the 2020 census data for the six zip codes recited in ¶¶ 39-44.

None of these allegations show—or even suggest—that the admissions process had a discriminatory purpose or effect. In fact, Plaintiffs provide the prior year's demographic data (Am. Compl. ¶ 49) and the 2020 census data for the six zip codes (*id*. ¶¶ 39-44) but no allegation regarding a racially discriminatory purpose and no allegation regarding any discriminatory impact the admissions process had on demographic data for the criteria-based high schools.

Indeed, if the claimed racially discriminatory purpose is to "rebalance" the schools where a racial percentage exceeds the district-wide percentage, *see* Am. Compl., third initial para., ¶ 46, the selection of a six-zip-code method that will admit any qualified Black applicant from one of the zip codes to Carver and any qualified white applicant from one of the zip codes to Masterman will not accomplish the alleged purpose.[8] Further, Plaintiffs have pointed to no racial quotas or targets, and no evidence that the admissions process was intended to achieve a certain percentage of students from particular races. They have offered no expert testimony, no statistical analysis, and no evidence that the School District attempted to forecast how racial demographics in the criteria-based schools would be impacted by the new process. Racial balancing is simply not present here. *See Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311

---

*Athletic Ass'n*, 288 F.3d 548, 562 (3d Cir. 2002) ("A mere awareness of the consequences of an otherwise neutral policy will not suffice.")).

[8] The fact that the Amended Complaint alleges two conclusory and conflicting racial purposes—giving preferential treatment to Black and Latino applicants but also "rebalance[ing]" the racial makeup of five schools, two of which (Carver and Parkway) have Black percentage enrollment that exceeds the district-wide Black percentage enrollment—further undercuts the plausibility of Plaintiffs' allegations.

(2013) ("A university is not permitted to define diversity as 'some specified percentage of a particular group merely because of its race or ethnic origin.'").

Further contradicting Plaintiff's conclusions and claims, the census data shows that the six zip codes have varying racial makeups and that no racial group makes up a majority of all six zip codes.  In fact, the parties have stipulated to the census data for these six zip codes, and the census data for the other residential zip codes in Philadelphia confirms that these six zip codes are not the zip codes with the highest percentage of any race within Philadelphia.  *See* Exhibit A. Indeed, when the city's residential zip codes are sorted to show where the six zip codes stand in the ranking of combined percentages of Black (non-Hispanic) and Hispanic or Latino residents, the selection of those six zip codes does not even appear consistent with a racially discriminatory purpose.  *Id*.

As in *Twombly*, *Iqbal*, and *Santiago*, there are other facts alleged here—the existing "majority-minority enrollment" of many criteria-based schools and the census data for the six zip codes—that undercut Plaintiffs' allegation that the School District had a racially discriminatory purpose.  Plaintiffs' allegations of discriminatory intent simply do not fit the demographic data of the six zip codes the School District selected for a preference; a more plausible alternate explanation for the selection of the six zip codes is that the School District was attempting to accomplish precisely what it set forth in multiple statements—greater enrollment of students from historically underrepresented areas of the city of Philadelphia, without regard to the race of any applicant or the racial makeup of any area.

Because the Amended Complaint falls short of showing even the possibility of a racially discriminatory purpose, there is no basis to review the School District's new admissions process under strict scrutiny.

3.      **The 2022 High School Directory Shows That the New Admissions Process Is Rationally Related to Numerous Legitimate Governmental Interests.**

Rational basis review is highly deferential.  *Lower Merion School Dist.*, 665 F.3d at 556; *see also Outerbridge v. Oberlander*, No. 20-2783, 2021 WL 3271217, at *17 (E.D. Pa. July 30, 2021) ("Rational-basis review confers a presumption of validity on legislation which the challenger must rebut and negate every conceivable justification for the classification in order to prove that the classification is wholly irrational." (internal quotation marks omitted)).  The School District's admissions process will satisfy rational basis review "if there is *any* reasonably conceivable state of facts that could provide a rational basis" for the admissions plan's classifications or elements.  *Donatelli v. Mitchell*, 2 F.3d 508, 513 (3d Cir. 1993) (quoting *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993)) (emphasis added) (internal quotation marks omitted).

The School District's description of the new admissions process for criteria-based schools—in a document Plaintiffs attach as Exhibit 2 to the Amended Complaint—explains that the new process is designed to make admissions "unbiased and accessible to all families, especially our most marginalized."  Am. Compl., Ex. 2, at page 4.  The new process makes the application available in 9 languages and eliminates the need for letters of recommendation that some applicants can more readily obtain than others. These process changes make the possibility of admission more accessible to all students.  The new process further eliminates principal discretion on admissions and replaces it with a computerized lottery that randomly selects students amongst the qualified applicants.  The lottery process is rationally related to the goal of *removing subjectivity from the selection process* and giving each *qualified* applicant an equal opportunity for admission.  And the preference provided to qualified applicants from six under-represented zip codes in the city is rationally related to the legitimate goal of making enrollment

-18-

at the city's most competitive high schools more equitably accessible to qualified applicants throughout Philadelphia. *See Boyapati v. Loudoun Cnty. Sch. Bd.*, No. 20-01075, 2021 WL 943112, at *10 (E.D. Va. Feb. 19, 2021) ("Defendant's classifications are based on achieving socio-economic and geographic diversity, which are permissible governmental interests, particularly given the deference given to legislating bodies in making these policy decisions.").

For these reasons, it is apparent on the face of the Amended Complaint that the new admissions process does not involve unlawful racial discrimination, satisfies rational basis review and, therefore, fails to state any claim upon which relief can be granted.

### 4. Even if Strict Scrutiny Applies, the Facts Alleged in the Amended Complaint Show That the School District's Admissions Process is <u>Narrowly Tailored to Advance Compelling Government Interests.</u>

The School District's admissions process for criteria-based schools is subject to rational basis review. Even if, however, Plaintiffs had alleged sufficient facts to require the application of strict scrutiny, the Amended Complaint fails to allege facts to support a conclusion that the admissions process would not survive strict scrutiny. Removing sources of potential bias in the admissions process, increasing accessibility to opportunities for educational excellence, increasing geographic diversity, and indeed even boosting racial and ethnic diversity in highly competitive academic high schools are not only legitimate government interests but compelling government interests. *See, e.g., Parents Involved*, 551 U.S. at 788-89 (Kennedy, J., concurring in part and concurring in the judgment); *Boston Parent Coalition*, 2021 WL 4489840, at *15 ("geographic and socioeconomic diversity are appropriate, validated educational goals in their own right").

The School District's choice of several race-neutral procedures for its admissions process—an online application available in 9 languages, a computerized lottery, and the use of zip codes—shows that the means the School District used were narrowly tailored to advance its

compelling interests. *See Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 284 (S.D.N.Y.) ("The changes to the Discovery program are exactly the sort of alternative, race-neutral means to increase racial diversity that the Court has repeatedly suggested governments may use in lieu of express racial classifications"), *aff'd*, 788 Fed. App'x 85 (2d Cir. 2019). Thus, even if strict scrutiny is the appropriate standard of review, Plaintiffs fail to allege sufficient facts to support a conclusion that the School District's admissions process would not survive strict scrutiny. The Court should therefore dismiss the Amended Complaint.

### B. Plaintiffs' Claims Against the 11 Individual Defendants Should Be Dismissed Because the Amended Complaint Fails to Allege Any Facts Showing the Personal Involvement or Participation of Any Individual Defendant.

The Amended Complaint asserts the same three claims against 11 individual defendants—eight members of the Board of Education and three School District employees, including the former superintendent—that it alleges against the School District. There are, however, no facts alleged to show what involvement or participation the 11 individual defendants had in the development, adoption or implementation of the School District's new admissions process for criteria-based schools. This deficiency is fatal to the claims against the individual defendants.[9]

An individual defendant cannot be held liable for any claimed violation of constitutional or statutory rights under 42 U.S.C. § 1983 unless there is proof that he or she had "personal involvement" in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

---

[9] Independently, this Court should dismiss the individual defendants because claims against them in their official capacity are duplicative of claims against the School District. *See MGJ v. Sch. Dist. of Philadelphia*, No. 17-318, 2017 WL 2277276, at *6 (E.D. Pa. May 25, 2017) ("Because official-capacity suits are an alternative way to plead actions against entities for which an officer is an agent, we dismiss these official capacity claims as duplicative of her § 1983 municipal liability claim against the District." (brackets and internal quotation marks omitted)).

"Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."  *Id.*; *see also Adams v. Steinmetz*, 2019 WL 358522, at *3 (E.D. Pa. Jan. 28, 2019) (Kenney, J.) (granting judgment on the pleadings to a defendant when the complaint failed to allege "any facts that would allow the Court to draw any reasonable inference that [he] is liable for the misconduct alleged by Plaintiff").

Here, the Amended Complaint contains no factual allegations concerning what involvement or participation any of the 11 individual defendants had in connection with the new admissions process.  It therefore fails to state a claim against any of them.

III.    **CONCLUSION**

For all of the foregoing reasons, the Court should dismiss the Amended Complaint for failure to state any claim upon which relief can be granted.

Dated: June 29, 2022                    Respectfully submitted,


                                        By: /s/ *William K. Kennedy*
                                        Renee N. Smith (I.D. No. 65866)
                                        William K. Kennedy (I.D. No. 86571)
                                        MONTGOMERY MCCRACKEN
                                            WALKER & RHOADS LLP
                                        1735 Market Street, 21st Floor
                                        Philadelphia, PA  19103
                                        rsmith@mmwr.com
                                        wkennedy@mmwr.com

                                        *Attorneys for Defendants*