IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHARICE SARGENT, et al., | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | NO. 22-cv-01509 |
| | : | |
| v. | : | |
| | : | |
| THE SCHOOL DISTRICT OF | : | |
| PHILADELPHIA, et al., | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Renee N. Smith (I.D. No. 65866)
William K. Kennedy (I.D. No. 86571)
MONTGOMERY MCCRACKEN WALKER &
RHOADS LLP
1735 Market Street, 21st Floor
Philadelphia, Pennsylvania 19103

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY .................................. 2

III.    ARGUMENT ....................................................................................................... 4

        A.    Plaintiffs Cannot Show A Reasonable Probability Of Eventual Success. ............. 5

               1.    The School District's Admissions Process is Subject to Rational
                     Basis Review. ............................................................................................... 5

               2.    Even if Strict Scrutiny Applies, a Preliminary Injunction is Still
                     Not Warranted. ............................................................................................. 8

        B.    The School District And Its Students Will Suffer Irreparable Harm That
           Far Outweighs Any Alleged Harm To Plaintiffs. ................................................. 10

        C.    The Remaining Factors Do Not Cut In Plaintiffs' Favor. ..................................... 13

IV.    CONCLUSION .................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Cases**

**Page(s)**

*Allentown Women's Ctr., Inc. v. Sulpizio*,
    403 F. Supp. 3d 461 (E.D. Pa. 2019) (Kenney, J.) .........................................................4, 5, 13

*Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Bos.*,
    996 F.3d 37 (1st Cir. 2021)...................................................................................................11, 13

*Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*,
    364 F. Supp. 3d 253 (S.D.N.Y. 2019)................................................................................6, 9, 11

*Coal. for TJ v. Fairfax Cnty. Sch. Bd.*,
    No. 22-1280, 2022 WL 986994 (4th Cir. Mar. 31, 2022)...................................................11, 13

*Doe ex rel. Doe v. Lower Merion Sch. Dist.*,
    665 F.3d 524 (3d Cir. 2011).................................................................................................6, 8, 10

*Grutter v. Bollinger*,
    539 U.S. 306 (2003)..................................................................................................................9

*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*,
    551 U.S. 701 (2007)..................................................................................................................9

*Philadelphia Vietnam Veterans Mem'l Soc'y v. Kenney*,
    509 F. Supp. 3d 318 (E.D. Pa. 2020) .......................................................................................12

*Shea v. Mountain View Sch. Dist.*,
    No. 14-01189, 2014 WL 3590006 (M.D. Pa. July 21, 2014) ...................................................13

*Simon v. Nicholson Inj. L. PA*,
    No. 19-1312, 2020 WL 11303531 (M.D. Fla. June 22, 2020)...................................................9

*Spurlock v. Fox*,
    716 F.3d 383 (6th Cir. 2013) ....................................................................................................6

I.       **INTRODUCTION**

Plaintiffs are not entitled to a preliminary injunction.  They cannot establish a likelihood of success on the merits of their claims, and the harm to the School District of Philadelphia (the "School District"), its students, their families, and School District teachers, staff, and administrators if this Court grants Plaintiffs' request for an injunction far outweighs any alleged harm to Plaintiffs.

The 2021-22 admissions process is subject to the highly deferential rational basis standard, which affords the process a heavy presumption of validity. The Amended Complaint and evidence in this case confirm that the School District used a race neutral process for admission to criteria-based high schools in 2021-22.  Race was not considered at any step of the admissions process, and no student was provided any advantage or disadvantage based on race.  Plaintiffs have not alleged or established any racially discriminatory impact or purpose related to the admissions process.  Under rational basis review, because the admission process was rationally related to the School District's goal of creating a more objective and equitable admission process, Plaintiff's motion must be denied.

Plaintiffs have not established that, under rational basis review, they are likely to succeed on the merits of their race discrimination claims.  Plaintiffs cannot produce any evidence to support their argument that strict scrutiny should apply.  They cannot show that the admission process was adopted for a racially discriminatory purpose and has a racially discriminatory impact. Furthermore, they have failed to offer any legal support for their argument that the admission process violated the law if strict scrutiny were applicable.

Because Plaintiffs cannot show the required reasonable probability of eventual success, Plaintiffs' Motion should be denied.

Even if Plaintiffs were able to establish a likelihood of success on the merits, the injunction

must be denied.  The harm to the School District, its students, their families, and the School

Districts teachers, staff, and administrators if an injunction were entered far outweighs any alleged

harm to Plaintiffs.  Plaintiffs' requested preliminary injunction would require the School District

to "undo" the admissions process for a school year beginning on August 29, 2022 – two months

from today.  The School District would be required to revoke admissions for all students planning

to attend criteria-based high schools, "redo" the entire process well before the end of August, and

revise transportation schedules and routes and teacher and staff assignments, all during the

summer, when schools are closed and many School District employees are unavailable.  The

proposed injunction would cause irreparable harm to the School District, students, and the school

community, outweighing any harm to the Plaintiffs should their Motion be denied.  Finally,

Plaintiffs admit that the 2020-21 admissions process included interviews, and the admission

decisions were at the principals' discretion.  Plaintiffs have not established that their children met

the qualification criteria for admission under the prior year's process, and Plaintiffs cannot

establish that, if the School District were able to use the 2020-21 process to admit students for the

upcoming school year, Plaintiffs' children would be admitted to their preferred schools.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

The Amended Complaint relates to the admissions process for four of the School District's

criteria-based high schools— Central High School ("Central"), Julia R. Masterman High School

("Masterman"), Academy at Palumbo ("Palumbo") and Carver High School of Engineering and

---

[1] The parties are conferring to complete a Joint Stipulation of Facts that will serve as the evidentiary record for the preliminary injunction hearing on July 19.  The facts recited here represent what Defendants expect will be incorporated into the Stipulation.

Science ("Carver").  In 2020-21, the School District's admissions process for criteria-based high schools identified qualified applicants based on students' attendance records and grades.  Because 2020 Pennsylvania System of School Assessment ("PSSA") testing was cancelled in March 2020 due to the COVID-19 pandemic, students' prior year (seventh grade) PSSA scores were not available and were not considered for admission to criteria-based high schools, as they had been before.[2]

In 2021, as it had in prior years, the School District reviewed and revised the school selection process for qualified students applying to criteria-based high schools for the 2022-2023 school year. Like the 2020-21 process, the 2021-22 admissions process identified qualified applicants based on students' attendance records and grades.  Because the pandemic continued through 2021, many students did not participate in Spring 2021 PSSA testing.  Therefore, like the 2020-21 process, the 2021-22 admissions process did not include consideration of students' seventh grade PSSA scores.

Unlike the 2020-21 admissions process, which gave school principals the discretion to admit qualified students, the 2021-22 admissions process used a lottery system that provided each qualified student with an equal opportunity for admission to a criteria-based high school.  The only exception to the lottery was a lottery preference for qualified students in the six zip codes with the

---

[2] The Pennsylvania Department of Education issued the following statement related to 2020 PSSA testing:

> The spring 2020 PSSA was cancelled in March 2020 due to the Covid-19 pandemic. No test materials were delivered to the Local Education Agencies (LEAs) for test administration; therefore, no tests were administered and there are no results to analyze for the 2020 PSSA.

https://www.education.pa.gov/K-12/Assessment%20and%20Accountability/PSSA/Pages/2020PSSATechnicalReport.aspx.

lowest percentage of students attending four criteria-based high schools over the previous four years.  The 2021-22 admissions process identified 19121, 19132, 19133, 19134, 19135, and 19140 as those zip codes.

Neither the 2020-21 admissions process nor the 2021-22 admissions process used any racial classifications.  In the 2021-22 process, the lottery system was completely random and, therefore, did not consider race.  The zip codes identified for preference were selected based on their enrollment numbers and without consideration of their racial composition, and qualified students were admitted to schools without regard to their race or any characteristic other than the qualification criteria.  No student received any advantage or disadvantage based on race.

Approximately 1,926 students have received offers of admission to Carver, Central, Masterman, and Palumbo.  (*See* Decl. of Karyn Lynch ("Lynch Decl."), attached as Exhibit A, at ¶ 6).  Students were notified of their admission on or around January 28, 2022, and have been relying on enrollment decisions since February 2022.  (*See id.* at ¶¶ 5, 10).  The 2022-2023 school year is set to begin on August 29, 2022.  (*See id.* at ¶ 7).

Plaintiffs, four parents whose children were allegedly not admitted to their preferred criteria-based high schools, have alleged that the current admissions process violates the prohibition on racial discrimination contained in Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, and various provisions of the Pennsylvania Constitution.  (*See* Am. Compl., ECF No. 31).

## III.   ARGUMENT

Plaintiffs have not established that they are entitled to a preliminary injunction.  "A preliminary injunction is an extraordinary remedy never awarded as of right." *Allentown Women's*

*Ctr., Inc. v. Sulpizio*, 403 F. Supp. 3d 461, 466 (E.D. Pa. 2019) (Kenney, J.) (internal quotation marks omitted).  "Awarding preliminary relief, therefore, is only appropriate upon a clear showing that the plaintiff is entitled to such relief."  *Id.* (internal quotation marks omitted).

A party seeking a preliminary injunction "must show as a prerequisite (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted."  *Id.* (brackets and internal quotation marks omitted). The District Court should also "take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest."  *Id.* (internal quotation marks omitted).

"The Third Circuit has held that the first two factors act as 'gateway factors,' and that a court must first determine whether the movant has met these two gateway factors before considering the remaining two factors—balance of harms, and public interest."  *Id.* (internal quotation marks omitted).

          **A.**      **<u>Plaintiffs Cannot Show A Reasonable Probability Of Eventual Success</u>**.

In order to show "a reasonable probability of eventual success in the litigation, [a plaintiff] must demonstrate that it can win on the merits."  *Sulpizio*, 403 F. Supp. 3d at 466 (internal quotation marks omitted).  Plaintiffs have not produced any evidence to meet this first "gateway factor."

          1.      **<u>The School District's Admissions Process is Subject to Rational Basis Review.</u>**

Because the process is race neutral, and Plaintiffs have failed to show both that it was adopted with a discriminatory purpose and that it has a racially discriminatory impact, rational basis review applies and this Court should defer in favor of the School District.  Plaintiffs have not submitted any evidence of a discriminatory purpose or impact, and there is none.  The 2021-22

admissions process did not consider race at any step.  Plaintiffs essentially argue that they have

been prejudiced by the School District's decision to move from a subjective, discretionary process

(the principal makes the admission decisions) to a completely objective, race-blind process (a

lottery, in which each qualified student has an equal opportunity for admission).

Although Plaintiffs do not rely on federal court decisions involving challenges to high

school admission processes, those cases frequently address processes that do involve some

consideration of race.  They are therefore distinguishable from the Amended Complaint.  Even in

those cases, however, courts have found that the processes were subject to rational basis review.

Time and again, courts have made clear that strict scrutiny is not triggered simply because

public officials consider the racial impact of their decisions.  *See Spurlock v. Fox*, 716 F.3d 383,

394 (6th Cir. 2013) ("Racial classification requires more than the *consideration* of racial data.  If

consideration of racial data were alone sufficient to trigger strict scrutiny, then legislators and other

policymakers would be required to blind themselves to the demographic realities of their

jurisdictions and the potential demographic consequences of their decisions." (emphasis in

original)); *Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 548 (3d Cir. 2011) ("The

consideration or awareness of race while developing or selecting a policy, however, is not in and

of itself a racial classification. Thus, a decisionmaker's awareness or consideration of race is not

racial classification. Designing a policy 'with racial factors in mind' does not constitute a racial

classification if the policy is facially neutral and is administered in a race-neutral fashion.");

*Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 278 (S.D.N.Y.

2019) (discussing statements "lauding how the program changes will increase Black and Latino

enrollment at the specialized schools" and rejecting that strict scrutiny is triggered because "a

facially neutral policy seeking to improve racial diversity necessarily carries with it a discriminatory intent.").

(i)      ***Plaintiffs Have Not Established A Discriminatory Impact***.

Plaintiffs argue that strict scrutiny should apply without even addressing the impact of the 2021-22 admissions process.  Rational basis review applies unless Plaintiffs can establish that the process had a racially discriminatory purpose *and a racially discriminatory impact*.  In fact, there is no evidence to support any argument that the admissions process had a racially discriminatory impact.  Because there is no serious attempt to make that showing, and no evidence has been submitted to support that showing, rational basis review must be applied.

(ii)     ***Plaintiffs Have Not Established A Discriminatory Purpose.***

Plaintiffs do not even attempt to grapple with the line between considerations of race (allowed) and racially discriminatory purposes (not allowed).  Taking their best shot at establishing discriminatory purpose, Plaintiffs focus on statements made during a December 15, 2021 City Council meeting "on the school district's plans to change the admissions process for its criteria-based schools." (Pls.' PI Mot., ECF No. 32, at 6).  Plaintiffs focus on isolated statements made by Dr. Sabriya Jubilee, Chief of Equity, Office of Diversity, Equity, and Inclusion, and Karyn Lynch, Chief of Student Support Services.  (*See id.* at 8–9).  With respect to Dr. Jubilee, Plaintiffs quote her as initially describing the School District's response to the murders of Breonna Taylor, Ahmaud Aubery, George Floyd, and others.  (*See id.* at 8).  In relevant part, the quoted testimony describes the School District as committing to "becoming an anti-racist equitable organization," and proceeds to define anti-racism as something beyond skin color that reaches "the destruction of a system and the dismantling [of the] institutionalization of norms."  (*Id.*).  When referencing "the school selection process," Dr. Jubilee talked about the demographic of the School District in terms

of "the impact of opportunity, access and power." (*Id.*). As to Ms. Lynch, her quoted testimony describes the School District as undertaking a reexamination of its processes, including its admissions processes, "to ensure equity." (*Id.* at 9). As part of this overall focus on equity, Ms. Lynch recognized that "racial dynamics" were at play. (*Id.*).

These statements do not trigger strict scrutiny. The statements do not at all suggest that the changes to the admissions process were motivated by a *racially discriminatory* purpose. Even assuming that these statements represented the official voice of the School District, Dr. Jubilee expressly stated that the School District's commitment to anti-racism was anchored in principles of equity, and that equity transcended traditional considerations of race, such as skin color. Ms. Lynch's statements were consistent - equity was the driving force behind any changes to the process and is a rational basis supporting the 2021-22 admissions process. The concept of race was discussed in response to specific questions from City Council members, but race was never identified as a driving force behind the 2021-22 admissions process. Based on the Third Circuit's decision in *Lower Merion,* and other cases cited above, the mere mention of race does not bring with it strict scrutiny review. To the contrary, Plaintiffs must establish that the process had a racially *discriminatory* purpose. Plaintiffs have not produced any evidence that the process discriminated against any student based on race.

Because rational basis review applies, Plaintiffs have not met their burden, and the motion for preliminary injunction must be denied.

2. **Even if Strict Scrutiny Applies, a Preliminary Injunction is Still Not Warranted.**

Having no success under rational basis review, Plaintiffs turn to strict scrutiny. Assume that it applies. That is only half the battle for Plaintiffs. They still must show a reasonable

-8-

probability of eventual success in arguing that the current admissions process fails that review. They have not done so.

Plaintiffs rely on one case – *Grutter v. Bollinger*, 539 U.S. 306 (2003) – as the only support for their argument that the School District's admissions process fails strict scrutiny.  (*See* Pls.' PI Mot. at 16–17).  *Grutter*, however, concerned higher education and has no relevance to this case about high school admissions.  *See Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 725 (2007) ("The Court in *Grutter* expressly articulated key limitations on its holding— defining a specific type of broad-based diversity and noting the unique context of higher education—but these limitations were largely disregarded by the lower courts in extending *Grutter* to uphold race-based assignments in elementary and secondary schools. The present cases are not governed by *Grutter*.").  So even if strict scrutiny applies, Plaintiffs have failed to carry their preliminary injunction burden because, with *Grutter* distinguished, they have offered exactly zero legal support for the notion that the School District's current admissions process fails strict scrutiny.[3]  *See Simon v. Nicholson Inj. L. PA*, No. 19-1312, 2020 WL 11303531, at *3 (M.D. Fla. June 22, 2020) (denying a motion for a preliminary injunction in part because "Plaintiffs cite no legal authority and do not provide any substantive analysis.").

This raises a larger issue that plagues Plaintiffs' Motion.  Plaintiffs have utterly failed to discuss, let alone cite, the cases that actually control.  Those cases, one of which is from the Third Circuit, have been discussed in Defendants' Motion to Dismiss and some are mentioned above.  In

---

[3] Not to mention that Plaintiffs ignore cases holding that achieving racial diversity in lower education is likely a compelling governmental interest. *See Christa McAuliffe Intermediate Sch. PTO, Inc.*, 364 F. Supp. 3d at 282 (S.D.N.Y. 2019) ("Therefore, in *Parents Involved*, five Justices agreed that achieving racially diverse classrooms in elementary and secondary schools is a compelling government interest, and the remainder agreed that whether it is so is an open question." (footnote omitted)).

a case of this magnitude, with a request for emergency relief that would deeply affect the lives of

thousands of students, parents, teachers, administrators, and others, this omission is remarkable.

If a movant's burden when seeking preliminary injunctive relief is taken seriously, this alone

should warrant a denial of Plaintiffs' Motion.  It is extraordinarily difficult to imagine a court in

this Circuit awarding emergency relief in a case such as this when the movant's opening brief fails

to even cite the *Lower Merion Sch. Dist.* case.

### B. The School District And Its Students Will Suffer Irreparable Harm That Far Outweighs Any Alleged Harm To Plaintiffs.

No matter if Plaintiffs can satisfy the first preliminary injunction factor; they still must

contend with three more.  And here, each one of the remaining factors counsels against granting

Plaintiffs' request.  As with the first gateway factor, this Court can deny Plaintiffs' Motion solely

by considering the second gateway factor—irreparable harm.

According to Plaintiffs, the latest possible point in time that the public became aware of

changes to the School District's admissions process was during the City Council meeting on

December 15, 2021.  Plaintiffs filed their Motion for a Preliminary Injunction on June 3, 2022.  By

their delay, Plaintiffs have made it impossible for the School District to effectuate their desired

relief before the start of the upcoming school year.[4]  Courts considering emergency challenges

under similar circumstances have placed great weight on these timing and administrative concerns,

leading invariably to rulings in favor of school districts.

---

[4] It is no answer that the preliminary injunction request is made on behalf of a few students and their families, instead of a certified class—the implication being that the School District would have to change its admissions process with respect to only these individuals.  Because the criteria-based high schools have set enrollment numbers, altering admissions numbers for one school impacts them all (and perhaps high schools in other categories as well).  So even if Plaintiffs framed their request for relief in narrow terms, the granting of that relief would operate much like a grant on behalf of the entire class.

-10-

Three decisions are instructive.  In *Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Bos.*, 996 F.3d 37, 41 (1st Cir. 2021), the First Circuit denied a request for an injunction "preventing the implementation of the 2021-2022 admissions plan pending resolution of [an] appeal."  In reaching this conclusion, the court began by noting that "[t]his court has previously withheld injunctive relief that would have altered election procedures where a plaintiff filed suit less than three months before ballots were to be cast." *Id.* at 50.  The court then noted that "[t]hese principles as applied in election cases have force here, too." *Id.*  The court concluded that "[e]njoining defendants from making Exam School admissions decisions based on the Plan at this juncture would unsettle important expectations and the plans of thousands of families awaiting those decisions." *Id.*

In *Coal. for TJ v. Fairfax Cnty. Sch. Bd.*, No. 22-1280, 2022 WL 986994, at *1 (4th Cir. Mar. 31, 2022), the Fourth Circuit granted the School Board's motion for a stay pending appeal, allowing the Board to "proceed with its use of the challenged admissions plan."  Judge Heytens filed a concurring opinion where he found that the Board had shown irreparable harm in part because "requiring the Board to design a new admissions policy and then solicit and review applications under a new process, all on a highly compressed timetable … would irreparably damage its credibility and reputation in the community and irreparably harm TJ's ability to compete for students, many of whom apply to other selective schools with late spring enrollment deadlines." *Id.* at *5 (Heytens, J., concurring).

Then, in *Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 276 (S.D.N.Y. 2019), the court denied a motion for a preliminary injunction regarding the admissions process for specialized public high schools in New York City in part because "[s]chool administrators, teachers, students, and parents have all been proceeding for the last eight months

-11-

under the assumption that the new changes will be in effect for the upcoming admissions cycle," and "Plaintiffs' filing date has left the [Department of Education] with only two months to accommodate the possibility that Plaintiffs' motion will be granted."

Those cases decide this case. As fully explained in the Declaration of Ms. Lynch, granting Plaintiffs' request would create absolute chaos before the start of the upcoming school year. To start, the School District would be required to revoke admission for 8,770 students who have been relying on enrollment decisions since February 2022. (*See* Lynch Decl. at ¶ 10). The School District would then have to complete an admissions process that previously took about five months (and included data analysis, interviews, and secondary analysis for special education applicants) in just over one month, giving accepted students almost no time to make an informed decision. (*See id.* at ¶ 9). Not only this, but the process would have to be completed during a period of time where most teachers and staff are unavailable. (*See id.* at ¶ 12). Further, the School District relies on final admissions numbers for purposes of determining staffing assignments, class sizes, class schedules, and more. (*See id.* at ¶ 11). Reconstructing the admissions process will disrupt these assignments across the District. Finally, there is stress and anxiety for students and families, particularly for the nearly 2,000 qualified students who were admitted to these four schools. Upending their reliance interests at this late date would create economic and non-economic costs that cannot even begin to be quantified. (*See id.* at ¶ 14).

Plaintiffs have no response to this. Rather, they implicitly fall back on the idea that any showing of constitutional harm merits automatic emergency relief. (*See* Pls.' PI Mot. at 18–19). The problem for Plaintiffs is that the law says otherwise. *See Philadelphia Vietnam Veterans Mem'l Soc'y v. Kenney*, 509 F. Supp. 3d 318, 327 (E.D. Pa. 2020) ("Plaintiff's effort to meet this requirement is limited to its conclusory suggestion that a violation of a constitutional right is *per*

*se* irreparable harm. The Third Circuit has rejected this oft-repeated notion"); *Shea v. Mountain View Sch. Dist.*, No. 14-01189, 2014 WL 3590006, at \*5 (M.D. Pa. July 21, 2014) ("Nor is constitutional harm . . . necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction" (brackets and internal quotation marks omitted)).

### C.   The Remaining Factors Do Not Cut In Plaintiffs' Favor.

Because Plaintiffs cannot satisfy either of the first two gateway factors, this Court need not consider the balance of harms or the public interest.  *See Sulpizio*, 403 F. Supp. 3d at 471 ("Unless *both* a reasonable probability of eventual success and irreparable harm are demonstrated, preliminary injunctive relief is not to be granted." (emphasis in original) (internal quotation marks omitted)).  Even so, these remaining factors do not help Plaintiffs.

Plaintiffs' arguments here merely repeat their arguments on irreparable harm, namely that constitutional harm automatically requires preliminary injunctive relief.  (*See* Pls.' PI Mot. at 19–20).  As shown above, that is not the law.  In any event, and for much the same reasons that they cannot show irreparable harm, Plaintiffs cannot show that either the balance of harms or the public interest cuts in their favor.  *See Bos. Parent Coal. for Acad. Excellence Corp.*, 996 F.3d at 50–51 ("The public interest is best served by permitting defendants to finalize and communicate admissions decisions based on the Plan, not by entering plaintiff's proposed injunction and throwing the Exam School admissions process into chaos."); *Coal. for TJ*, 2022 WL 986994, at \*6 (Heytens, J., concurring) (". . . I think the public interest favors a stay given the timing and logistical constraints associated with scrapping the current admissions policy and creating a new one so close to the end of the current admissions cycle.").

-13-

## IV.    CONCLUSION

For the foregoing reasons, as well as the reasons stated in Defendants' Motion to Dismiss,

Defendants respectfully request that this Court deny Plaintiffs' Motion for a Preliminary

Injunction.[5]

---

[5] Defendants address two issues with Plaintiffs' proposed order.  (*See* Proposed Order, ECF No.
33).  First, the proposed order does not comply with Federal Rule of Civil Procedure 65(d)'s
command that an order granting an injunction must "describe in reasonable detail--and not by
referring to the complaint or other document--the act or acts restrained or required."  Fed. R. Civ.
P. 65(d)(1)(C).   The proposed order requires the School District to return to a prior version of
the admissions process.  But Plaintiffs do not explain why, if this Court were to rule that the
current process is invalid, the School District could not adopt a different process going forward
that does not resemble any prior version.  The proposed order thus places the School District into
a straitjacket that the law does not require (at least as Plaintiffs have argued their Motion).
Further, the proposed order uses vague and ambiguous phrases that would preclude the School
District from taking corrective action consistent with constitutional standards.  For example, the
order prohibits the School District from "using race" in its admissions process.  (Proposed Order
at ¶ 2).  But, as Defendants have shown, the government can "use race" in a variety of ways
without offending federal and state constitutions.

Second, the proposed order violates Rule 65(c)'s requirement for security.  Without any
discussion of legal authority, Plaintiffs merely assume that no bond is required.  (*See id.* at ¶ 4).
But that is the exception, not the rule.  And Plaintiffs have offered nothing that would allow this
Court to conclude "that the instant case represents a 'rare exception' to the rule and will not
require Plaintiffs to post a bond in this case, given their financial position, and the fact that
Defendants have failed to allege any true harm they would sustain as a result of the injunction."
*Gilliam v. United States Dep't of Agric.*, 486 F. Supp. 3d 856, 882 (E.D. Pa. 2020).  Plaintiffs
have not discussed their financial situations and have done nothing to cast doubt upon the
obvious costs that would accompany the reconducting of an entire admissions process within a
compressed timeframe.  Consequently, if this Court grants a preliminary injunction, it should
require Plaintiffs to post adequate security, as Rule 65(c) contemplates.

-14-

Dated:  June 29, 2022                                              Respectfully submitted,


                                                                  By: /s/ *William K. Kennedy*
                                                                  Renee N. Smith (I.D. No. 65866)
                                                                  William K. Kennedy (I.D. No. 86571)
                                                                  MONTGOMERY MCCRACKEN WALKER &
                                                                  RHOADS LLP
                                                                  1735 Market Street, 21st Floor
                                                                  Philadelphia, Pennsylvania 19103
                                                                  rsmith@mmwr.com
                                                                  wkennedy@mmwr.com


                                                                  *Attorneys for Defendants*