UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
PHILADELPHIA DIVISION

**Sherice Sargent**, et al.,

Plaintiffs,

v.

**The School District of Philadelphia**, et al.,

Defendants.

Case No. 2:22-cv-01509-CFK

## RESPONSE TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

The federal rules of civil procedure establish a regime of notice pleading. Not code pleading, where complaints must recite and establish each element of a cause of action. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) ("[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination"). Not fact pleading, where complaints must anticipate and describe the factual details that they expect to uncover in discovery. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require detailed factual allegations" (citation and internal quotation marks omitted)). Notice pleading. Even after *Iqbal* and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Third Circuit has made clear that a complaint needs only to "provide fair notice of 'what the . . . claim is and the grounds upon which it rests.' " *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *see also id.* ("Rule 8 imposes 'minimal burdens on the plaintiff at the pleading stage.'" (citation omitted)). The amended complaint easily satisfies the requirements of notice pleading, and it pleads far more facts than needed to survive dismissal under *Twombly* and *Iqbal*.

## I. The Complaint Alleges That The School District Acted With A Racially Discriminatory Motive, And It Cites The Goals & Guardrails Document As Proof

The plaintiffs need only to allege and not prove a racially discriminatory motive at the motion-to-dismiss stage. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Yet the plaintiffs have done far more than what is needed to plead a claim on which relief may be granted.

The amended complaint specifically alleges that the school district changed its admissions policies in "a conscious and intentional effort to rebalance the racial makeup of the student body." Amended Compl., ECF No. 31 at 3. This factual allegation regarding the defendants' motives *must* be assumed true at this stage of the proceedings. *See Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921, 1927 (2019) ("Because this case comes to us on a motion to dismiss, we accept the allegations in the complaint as true." (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). But the complaint contains more than mere allegations; it also cites and quotes the Board of Education's "Goals & Guardrails" document as proof that the school district had decided to impose a 52.0% quota for black and Hispanic students in the criteria-based schools. *See* Amended Compl., ECF No. 31 at ¶¶ 30–34. Paragraph 32 of the amended complaint quotes from the Goals & Guardrails document:

> Among 8th grade students who are qualified to attend Special Admission High schools, the percentage who are Black/African American or Hispanic/Latinx will grow from 33.8% in August 2020 to at least 52.0% (making progress towards being proportional to population as a whole) by August 2026.

*Id*. at ¶ 32. Paragraph 33 of the amended complaint quotes further from that document:

> The percentage of suspensions received by Black/African American students will decrease from 72.6% in August 2020 to no more than 48.3% (proportional to population as a whole) by August 2026.

*Id.* at ¶ 33. This clearly and unequivocally demonstrates that the school district sought to enforce a quota for black and Hispanic students, and that the school district's eventual goal is establish proportional representation in the city's criteria-based schools.

We are therefore at a loss to understand how the school district can assert that the plaintiffs failed to "assert facts" showing that the school "acted with any racially discriminatory intent or purpose." Mot. to Dismiss, ECF No. 36-1 at 3; *see also id.* at 13–17. The allegations of racially discriminatory intent and purpose appear at the outset of the complaint, when the plaintiffs assert that the school district was motivated by a desire "to rebalance the racial makeup of the student body,"[1] and they are supported with concrete evidence from the Goals & Guardrails document. The claim that we have failed to allege facts to support of the accusations of racial motive should be dismissed out of hand.[2]

## II. The School District's Admissions Policies Are Facially Neutral But Were Adopted With A Racially Discriminatory Purpose, Which Subjects Them To Strict Scrutiny

The school district tries to defend its policy by pointing out that the admissions criteria are race-neutral on their face. *See* Mot. to Dismiss, ECF No. 36-1 at 10–13. Indeed they are, but a facially neutral admissions policy that is *motivated* by racially discriminatory goals is as unconstitutional as an explicit racial classification. *See Guinn v. United States*, 238 U.S. 347 (1915) (holding that Oklahoma's facially neutral "grandfather clause" violated the Fifteenth Amendment because it was enacted with racially discriminatory intent); *Personnel Administrator of Massachusetts v. Feeney*, 442

1. Amended Compl., ECF No. 31 at 3.
2. The school district eventually gets around to addressing the Goals & Guardrails document in a single sentence on page 9 of its brief, and it tries to downplay the significance of this document by claiming that it refers only to the percentage of students who are "*qualified* to attend Special Admission High schools." Mot. to Dismiss, ECF No. 36-1 at 9. This is wordplay. The school district *decides* who will be "qualified" to attend, and it has gerrymandered the admissions process so that that definition of "qualified" will ensure the racial outcomes that it wants.

U.S. 256, 272 (1979) ("A racial classification, regardless of purported motivation, is presumptively invalid and can be upheld only upon an extraordinary justification. *This rule applies as well to a classification that is ostensibly neutral but is an obvious pretext for racial discrimination*." (emphasis added)). And the school district cannot escape a discriminatory-purpose allegation when its own documents announce a racial quota for black and Hispanic students at its criteria-based schools and declare that racially proportional representation is the ultimate goal. There is nothing race-neutral about the school district's *motivations* for adopting this lottery-with-zip-code-preferences, and the Goals & Guardrails document shows that the school district changed its admissions policies for the purpose of altering the racial composition of its criteria-based schools—and with a desire to bend the demographics of those schools toward the overall racial makeup of the city.

The school district claims that strict scrutiny can apply only when a plaintiff alleges *both* a racially discriminatory purpose *and* a discriminatory effect—and that racially discriminatory purpose alone is insufficient to move a case out of rational-basis review and into strict scrutiny. *See* Mot. to Dismiss, ECF No. 36-1 at 10 ("The admissions process . . . is subject to rational basis review, not strict scrutiny, unless Plaintiffs can show that the process was adopted for a racially discriminatory purpose and has (or will have) a racially discriminatory impact."). But that is simply untrue. The courts have repeatedly held that a facially neutral law or policy that was enacted for a racially discriminatory purpose will *always* be subject to strict scrutiny—regardless of the actual effects of the law. *See, e.g.*, *Miller v. Johnson*, 515 U.S. 900, 913 (1995) ("[S]tatutes are subject to strict scrutiny under the Equal Protection Clause not just when they contain express racial classifications, *but also when, though race neutral on their face, they are motivated by a racial purpose or object*." (emphasis added)); *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265–66 (1977) ("When there is a proof that a discriminatory purpose has been a motivating

factor in the decision, [rational-basis review] is no longer justified."); *see also Boston Parent Coalition for Academic Excellence Corp. v. School Committee of City of Boston*, 996 F.3d 37, 45 (1st Cir. 2021) ("Absent a showing of discriminatory purpose, we review an equal protection challenge to race-neutral selection criteria for a rational basis only."); *Christa McAuliffe Intermediate School PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 276–77 (S.D.N.Y. 2019) ("If a court concludes that the government used a racial classification or was motivated by racial discrimination, then the court must review the government action under strict scrutiny. Absent either conditions, the government action is subject to rational basis review." (citation omitted)). The school district cites no case in which any court has ever applied rational-basis review to a law or policy enacted with a racially discriminatory purpose—or that did so on the ground that the admittedly discriminatory purpose was not supplemented with proof of discriminatory effects.[3]

In all events, the plaintiffs *have* alleged that the school district's new admissions policies will have the effect of altering the racial makeup of the city's criteria schools. *See* Amended Compl., ECF No. 31, at ¶ 34 (alleging that the "Goals and Guardrails" document is "designed to achieve a racial composition at the city's elite high schools that mirrors the racial makeup of the overall population in the School District of Philadelphia."). A plaintiff does not need proof at the motion-to-dismiss stage, and it is

3. The school district relies on language in *Doe ex rel. Doe v. Lower Merion School District*, 665 F.3d 524, 549 (3d Cir. 2011), which indicates that strict scrutiny will apply when a facially neutral policy has both a racially discriminatory purpose and a discriminatory effect. *See* Defs.' Mot. to Dismiss, ECF No. 36-1, at 13 (citing *Doe*, 665 F.3d at 549). But *Doe* never says or suggests this is the *only* circumstance in which strict scrutiny will apply to a law or policy enacted with a racially discriminatory purpose. *See Doe*, 665 F.3d at 549 ("To establish government action *within the third alternative*, a plaintiff is 'required to prove that the actions of . . . officials (1) had a discriminatory effect and (2) were motivated by a discriminatory purpose.'" (emphasis added) (citation omitted)).

not only "plausible" but nearly certain that the school district's drastic change in admissions policies, and its move away from a merits-based admission process to a lottery with zip code preferences, will achieve the desired outcome of reducing the numbers of "overrepresented" racial groups, such as Asian-Americans and whites at Masterman and Central, and blacks at Carver. And there is nothing in the complaint that concedes that the new admission policies will leave the racial makeup of the city's criteria schools unchanged.

Finally, the plaintiffs are *not* contending that the defendants violated the Constitution or Title VI by "considering" the racial impact of their decision, as the defendants suggest in their brief. *See* Mot. to Dismiss, ECF No. 36-1 at 11 ("[T]he 'consideration or awareness of race . . . is not in and of itself a racial classification'" (quoting *Doe ex rel. Doe v. Lower Merion School District*, 665 F.3d 524, 548 (3d Cir. 2011)). The courts have made clear that public officials may consider the racial impact of their decisions, but they may *not* choose a policy *because of* the racial effects that it will have. The acid test for discriminatory purpose is set forth in *Feeney*:

> Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker, in this case a state legislature, selected or reaffirmed a particular course of action *at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group*.

*Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 272 (1979) (emphasis added) (citations and footnotes omitted). A school district, for example, might decide to abolish all consideration of academic merit and admit students entirely by lottery or geographic proximity—and it might do with the full knowledge that a policy change of this sort this will adversely affect Asian-Americans. The mere fact that a school district knew of these effects and considered those effects will not trigger strict

scrutiny. But a school district *will* trigger strict scrutiny if it adopts such a policy *because of* the effects that would fall upon an identifiable racial group. *See id.* As the Third Circuit has explained:

> The term "discriminatory purpose" implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, the action's beneficial or adverse effects upon an identifiable group. Racially discriminatory purpose means that the decisionmaker adopted the challenged action *at least partially because* the action would benefit or burden an identifiable group. Even conscious awareness on the part of the [decisionmaker] that the [policy] will have a racially disparate impact does not invalidate an otherwise valid law, *so long as that awareness played no causal role in the adoption of the policy.*

*Doe ex rel. Doe v. Lower Merion School District*, 665 F.3d 524, 551–52 (3d Cir. 2011) (emphasis added) (citations and some internal quotation marks omitted); *id.* at 548 ("Racially discriminatory purpose means that the decisionmaker adopted the challenged action *at least partially because the action would benefit or burden an identifiable group.*" (emphasis added)).

Here, the plaintiffs have not only alleged but attached *evidence* that the school district changed its admission policies because it wanted to implement a 52.0% quota for black and Hispanic students in the city's criteria-based schools and move toward its announced goal of proportional racial representation. *See* Amended Compl., ECF No. 31, at ¶¶ 30–34; *see also* Goals & Guardrails Document, ECF No. 31-3. The school district adopted these changes "because of," not "in spite of," the racial effects that they would have; indeed, racial balancing was the *raison d'être* of the school district's decision to overhaul its admissions policies in this manner. That is what distinguishes this case from lawsuits in which the plaintiffs failed to prove that the school district adopted a policy *because of* a desire to impose racial quotas and attain racial balancing. *See, e.g.*, *Doe ex rel. Doe v. Lower Merion School District*, 665 F.3d 524, 529 (3d Cir. 2011) ("[T]he school assignment plan neither classifies on the basis of race

*nor has a discriminatory purpose*." (emphasis added)); *Boston Parent Coalition for Academic Excellence Corp. v. School Committee of City of Boston*, 996 F.3d 37, 45 (1st Cir. 2021) ("*Absent a showing of discriminatory purpose*, we review an equal protection challenge to race-neutral selection criteria for a rational basis only." (emphasis added)); *Coalition for TJ v. Fairfax County School Board*, 2022 WL 986994, *4 (4th Cir.) (Heytens, J., concurring) ("The race neutral policy challenged here includes no racial quotas or targets."); *Christa McAuliffe Intermediate School PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 280 (S.D.N.Y. 2019) ("[T]he Court concludes that Plaintiffs are *not* likely to show that Defendants *had discriminatory intentions* in amending the Discovery program." (emphasis added)).

## III. If Strict Scrutiny Applies, The Complaint Cannot Be Dismissed At The Motion-To-Dismiss Stage

Because strict scrutiny applies, the burden shifts to the school district to demonstrate that its new admissions criteria are "narrowly tailored" to advance a "compelling state interest." *See Fisher v. University of Texas at Austin*, 570 U.S. 297, 310 (2013) ("Strict scrutiny is a searching examination, and it is the government that bears the burden to prove that the reasons for any [racial] classification [are] clearly identified and unquestionably legitimate" (citations and internal quotation marks omitted)). The school district claims that it can satisfy strict scrutiny, but this is not an issue that the Court can resolve on a motion to dismiss. The plaintiffs must have an opportunity to take discovery and test the defendants' evidence, as the defendants bear the burden of proof on this issue and must support their arguments with evidence and not mere assertions. And the plaintiffs are not required to plead around defenses by alleging the absence of a "compelling interest" or "narrow tailoring." *See Gomez v. Toledo*, 446 U.S. 635, 641 (1980).

## IV. Even If Rational-Basis Review Applied, The Plaintiffs Have Sufficiently Alleged The Absence Of A Rational Basis

Even if rational-basis review applied (and it doesn't), the plaintiffs have *still* alleged sufficient facts to survive a motion to dismiss. The goal of pursuing racial balancing or racially proportional representation at the city's magnet schools is not a legitimate state interest, and the school district does not argue to the contrary. *See Grutter v. Bollinger*, 539 U.S. 306 (2003) ("[O]utright racial balancing . . . is patently unconstitutional."). Neither is the goal of favoring the residents of the preferred six zip codes at the expense of everyone else.

The school district suggests that its new admissions policies are rationally related to goals of "removing subjectivity from the selection process,"[4] but a introducing an unexplained zip-code preference is far more arbitrary than any human error that might have occurred in the previous regime where principals selected the most qualified students from the lot of applicants. Nor is the new regime rationally related to the purported goal of making admissions "more equitably accessible to qualified applicants throughout Philadelphia,"[5] as arbitrary zip-code preferences are antithetical to the notion of equitable accessibility.

## V. The Individual Defendants Are Properly Named Because They Will Be Responsible For Implementing Prospective Relief From This Court

The amended complaint explains the role of each of the named defendants and how they contributed to the implementation of the challenged admissions policies. The Board of Education approved the "Goals & Guardrails" that announces the racial quotas and the school district's pursuit of proportional racial representation, so it is entirely appropriate to include the individual board members as named defendants to restrain them from implementing the policies expressed in that document. Sabriya

4. *See* Mot. to Dismiss, ECF No. 36-1 at 18.
5. *See* Mot. to Dismiss, ECF No. 36-1 at 19.

Jubilee and Karyn Lynch testified at the hearing held by the City Council of Philadelphia, Committee on Education, where they explained their roles in developing and implementing the new admissions regime. *See* Mot. for Prelim. Inj., ECF No. 32 at 8–9; Transcript of Hearing, ECF No. 32-6. And although the complaint does not elaborate on Jubilee's and Lynch's precise role, a complaint is not required to provide that level of factual detail. *See Iqbal*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces does not require detailed factual allegations" (citation and internal quotation marks omitted)). The rule is notice pleading, and Jubilee and Lynch are certainly on notice for what they have been sued for. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("[P]etitioner's complaint easily satisfies the requirements of Rule 8(a) because it gives respondent fair notice of the basis for petitioner's claims."). Finally, the claims against the individual defendants are not "duplicative" of the claims against the school district because individuals and entities may assert different defenses under 42 U.S.C. § 1983,[6] and prospective injunctive relief is more effective when directed at individual defendants who can be jailed for contempt if they defy the court's orders.

6. *See, e.g.*, *Owen v. City of Independence*, 445 U.S. 622 (1980) (municipalities cannot claim qualified immunity under 42 U.S.C. § 1983 even though individual defendants can); *Monell v. Department of Social Services*, 436 U.S. 658 (1978) (municipal defendants cannot be held liable under 42 U.S.C. § 1983 in the absence of an unlawful or unconstitutional "policy," while no such constraint exists for claims asserted against individual defendants).

## CONCLUSION

The motion to dismiss should be denied.

Respectfully submitted.

/s/ Jonathan F. Mitchell

JONATHAN F. MITCHELL
Pennsylvania Bar No. 91505
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

WALTER S. ZIMOLONG III
Pennsylvania Bar No. 89151
Zimolong, LLC
Post Office Box 552
Villanova, Pennsylvania 19085-0552
(215) 665-0842 (phone)
wally@zimolonglaw.com

GENE P. HAMILTON*
Virginia Bar No. 80434
Vice-President and General Counsel
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

* admitted *pro hac vice*

Dated: July 13, 2022

*Counsel for Plaintiffs and the Proposed Classes*

## CERTIFICATE OF SERVICE

I certify that on July 13, 2022, I served this document through CM/ECF upon:

William Kennedy
Montgomery McCracken Walker & Rhoads LLP
1735 Market Street
Philadelphia, Pennsylvania 19103-7505
(215) 772-7291 (phone)
(215) 731-3689 (fax)
wkennedy@mmwr.com

*Counsel for Defendants*

/s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Plaintiffs and the Proposed Classes*