**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHERICE SARGENT, et al.,** | : | **CIVIL ACTION** |
| *Plaintiffs*, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **THE SCHOOL DISTRICT OF** | : | |
| **PHILADELPHIA, et al.,** | : | |
| *Defendants.* | : | **NO.  22-cv-1509** |
| | : | |

**<u>MEMORANDUM</u>**

**KENNEY, J.**                                                              **August 8, 2022**

## I.    INTRODUCTION

Plaintiffs[1] allege that in 2021, Defendant[2] the School District of Philadelphia (the "School District") adopted a "blatantly unconstitutional race-based system for admission to its criteria-based public schools."[3] ECF No. 31 at 2. According to Plaintiffs, the changes to the

---

[1] Plaintiffs are identified in the First Amended Complaint (ECF No. 31) as Sherice Sargent, individually, as next friend of her minor child, and on behalf of those similarly situated, Fallon Girini, individually, as next friend of her minor child, and on behalf of those similarly situated, Michele Sheridan, individually, as next friend of her minor child, and on behalf of those similarly situated, and Joshua Meyer individually, as next friend of his minor child, and on behalf of those similarly situated. ECF No. 31 at 1.

[2] The additional Defendants are identified in the First Amended Complaint (ECF No. 31) as William R. Hite, in his official capacity as Superintendent of the School District of Philadelphia; Board of Education, the School District of Philadelphia; Joyce Wilkerson, Leticia Egea-Hinton, Julia Danzy, Mallory Fix Lopez, Maria Mccolgan, Lisa Salley, Reginald Streater, and Cecelia Thompson, each in their official capacities as members of the Board of Education of the School District of Philadelphia; Sabriya Jubilee, in her official capacity as director of diversity, equity, and inclusion for the School District of Philadelphia; and Karyn Lynch, in her official capacity as chief of student support services for the School District of Philadelphia. ECF No. 31 at 1

[3] Additional explanation as to the specific claims brought by Plaintiffs is provided in greater detail below. *See infra* Section II.A at 4.

admissions process were enacted "for the illegal and unconstitutional purpose of achieving racial balancing at the city's elite [criteria-based] schools[.]" ECF No. 32 at 1. Presently before the Court is Plaintiffs' Motion for a Preliminary Injunction (ECF No. 32), asking this Court to "enjoin the [D]efendants from implementing their changes to the selection standards for the city's [criteria-based] schools." ECF No. 32 at 1. In large part, Plaintiffs' request for a preliminary injunction hinges on their interpretation of a single sentence from a Philadelphia School District Board of Education policy document, which Plaintiffs aver is "as close to a smoking gun as can be imagined." ECF No. 41 at 1; *see also* ECF No. 44 Ex. 5. Plaintiffs claim that the language in this policy document, "announces a [racial] *quota*" system as a "first step on the road to an enforced proportional-representation regime, in which school officials will consciously and continuously stamp out deviations that arise between the racial composition of the city's criteria-based schools and the racial makeup of the city's population." ECF No. 41 at 1–2 (emphasis in original).

Yet, this Court finds that Plaintiffs' so-called "smoking gun" is, at this stage, merely smoke, as the plain language of the policy statement does not provide what Plaintiffs claim that it does, and Plaintiffs' interpretation of its meaning is, as of yet, unsupported by the record. Rather than announcing a racial quota system for admission to certain schools, the policy statement plainly articulates that, as an "[i]ndicator" of whether or not the School District is succeeding in its efforts to protect student-potential from practices that "perpetuate systemic racism," it will look to whether the number of "Black/African American" and "Hispanic/Latinx" students who are achieving the rigorous qualifications required to attend the School District's criteria-based schools is increasing. ECF No. 44 Ex. 5 at 4. The remainder of the stipulated facts and evidence do not support the conclusion that any changes to the admissions process for the criteria-based

schools were made with racially discriminatory intent. Accordingly, and for the reasons set forth in greater detail below, this Court finds that Plaintiffs have failed to show a reasonable probability of eventual success on the merits, which is a necessary steppingstone on the path toward a preliminary injunction. Because Plaintiffs have failed to meet this burden, the Court will DENY Plaintiffs' Motion for a Preliminary Injunction (ECF No. 32).

## II.   BACKGROUND

### A.  Procedural History

On April 19, 2022, Plaintiffs[4] filed their initial Complaint in the United States District Court for the Eastern District of Pennsylvania. ECF No. 1. In the request for relief section of their Complaint, Plaintiffs stated that they were seeking a preliminary injunction. *See* ECF No. 1 ¶ 77. On May 10, 2022, Plaintiffs filed a Motion to Certify Class. ECF No. 22. On May 12, 2022, the Court denied Plaintiffs' Motion to Certify Class, without prejudice, to be resubmitted for consideration after the close of pleadings and after a ruling had been made on the demand for a preliminary injunction. ECF No. 23.

Also on May 12, 2022, the Court issued an Order scheduling a Pre-Preliminary Injunction Hearing and requiring that the parties meet and confer and draft a Proposed Scheduling Order to "determine a proposed schedule for the remainder of the pleadings and the preliminary injunction briefings, discovery, and hearing." ECF No. 24 at 1. The Court's Order (ECF No. 24) specifically provided that "[t]he [preliminary injunction] discovery schedule should take into account the taking of any depositions…," and also stated that "the parties should

---

[4] Plaintiffs in the initial Complaint were identified as follows, Sherice Sargent, individually, as next friend of her minor child, and on behalf of those similarly situated, Fallon Girini, individually, as next friend of her minor child, and on behalf of those similarly situated, and Michele Sheridan, individually, as next friend of her minor child, and on behalf of those similarly situated. ECF No. 1.

make every effort to stipulate to facts and to only take depositions on outstanding factual issues that require credibility determinations." ECF No. 24 at 2.

On May 19, 2022, the parties submitted a Joint Proposed Scheduling Order. ECF No. 25. Rather than electing to conduct pre-preliminary injunction discovery, including depositions, the parties chose to stipulate to a set of pertinent facts. *See* ECF No. 25; *see also* ECF No. 44. Specifically, in the Joint Proposed Scheduling Order, the parties stated that they "intend[ed] to stipulate to the facts relevant to the [P]laintiffs' motion for preliminary injunction, and [that] they expect[ed] their stipulation to obviate any need for discovery before the preliminary-injunction hearing." ECF No. 25 at 1.

On June 2, 2022, Plaintiffs filed their First Amended Complaint asserting three claims of race-based discrimination. ECF No. 31 at 1. Specifically, Plaintiffs alleged, pursuant to 42 U.S.C. § 1983, violations of both Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d (Count I) and the Equal Protection Clause of the Fourteenth Amendment (Count II). Plaintiffs also alleged violations of Article I, § 26 and Article I, § 29 of the Pennsylvania Constitution (Count III).

Also on June 3, 2022, Plaintiffs filed their Motion for a Preliminary Injunction. ECF No. 32. On June 12, 2022, Plaintiffs filed a Proposed Order in relation to their Motion for a Preliminary Injunction. ECF No. 33. The Proposed Order outlines proposed relief including, enjoining Defendants from "implementing the changes that the School District of Philadelphia adopted in 2021 governing the admission of students to the city's criteria-based or magnet schools" and ordering Defendants "to return to the admissions policies that existed before the [D]efendants changed those policies in 2021," as well as enjoining Defendants "from using race to determine the admission of students to the city's criteria-based or magnet schools" and "from

changing the admissions policies to the city's criteria-based or magnet schools if those changes are made for the purpose of altering the racial makeup of those schools." ECF No. 33 at 1–2.

On June 29, 2022, Defendants filed a Response in Opposition to Plaintiffs' Motion for a Preliminary Injunction. ECF No. 37. Plaintiffs then filed a Reply on July 13, 2022. ECF No. 41. In their Reply, Plaintiffs argued that the Court has discretion as to the scope of relief and that the Court could choose to enjoin Defendants from implementing the changes to the Admissions Policy for the 2022–2023 school year or order that just the named Plaintiffs be admitted to their preferred schools. ECF No. 41 at 11.

On July 21, 2022, the parties submitted Stipulated Facts containing a set of 9 (nine) exhibits as follows: Ex. (1) High School Directory, Fall 2021 Admissions; Ex. (2) High School Directory, Fall 2022 Admissions; Ex. (3) School District's Current web page, describing in FAQ form, the 2021–22 high school admissions process; Ex. (4) School District's web page describing, in FAQ form, the 2020–21 high school admission process; Ex. (5) Board of Education Goals & Guardrails (the "Goals & Guardrails"); Ex. (6) School District's Research Brief: Enrollment, 9th Grade Student Enrollment in District High Schools by Home Zip Code, 2017–18 to 2020–21; Ex. (7) 2020 census data for each general residential zip code in Philadelphia; Ex. (8) Transcript of December 14, 2021 hearing—City of Philadelphia, Committee on Education; and Ex. (9) Copies of the "school profiles" web pages for Masterman, Central, Carver and Palumbo.  ECF No. 44 Exhibits 1–9.

On July 27, 2022, a Preliminary Injunction Hearing was held before this Court.

### B. Findings of Fact

The Court adopts and incorporates herein the Stipulated Facts (ECF No. 44, including Exhibits 1–9) as set forth by the parties for purposes of ruling on Plaintiffs' Motion for a Preliminary Injunction (ECF No. 32). ECF No. 44.

## III. STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC,* 774 F.3d 192, 197 (3d Cir. 2014) (quoting *Winter* v. *Natural Res. Def Council, Inc.,* 555 U.S. 7, 24 (2008)). Accordingly, granting preliminary injunctive relief is only appropriate "upon a clear showing that the plaintiff is entitled to such relief." *Winter,* 555 U.S. at 22; *see also Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129–130 (2d ed. 1995) ("a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion"). As the Third Circuit has long instructed, "upon application for a preliminary injunction to doubt is to deny." *Madison Square Garden Corp. v. Braddock*, 90 F.2d 924, 927 (3d Cir. 1937); *see also Talbert v. Corr. Dental Assocs.*, No. CV 18-5112, 2019 WL 6460499, at *2 (E.D. Pa. Nov. 29, 2019) (quoting *Madison Square Garden Corp.,* 90 F.2d at 927) ("Our Court of Appeals instructs, 'upon an application for a preliminary injunction to doubt is to deny.'"); *see also Stephan Zouras LLP v. Marrone*, No. 3:20-CV-2357, 2021 WL 5154159, at *5 (M.D. Pa. June 9, 2021), *report and recommendation adopted sub nom. Stephen Zouras, LLP v. Marrone*, No. CV 3:20-2357, 2022 WL 107186 (M.D. Pa. Jan. 11, 2022) (same).

To meet this lofty burden, the Third Circuit requires that a moving party show "(1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably

injured ... if relief is not granted…" *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir.

2017), *as amended* (June 26, 2017). If those two factors are met, district courts "should

[additionally] take into account, when they are relevant, (3) the possibility of harm to other

interested persons from the grant or denial of the injunction, and (4) the public interest." *Id.*

The Third Circuit has made clear that the first two factors, that is "a reasonable probability of

eventual success in the litigation," and whether the moving party "will be irreparably injured ... if

relief is not granted…," are "the most critical factors" and are to be treated as "gateway factors."

*Id.* at 176, 179.  In other words, "a movant for preliminary equitable relief **must meet** the

threshold for the first two…," and only "[i]f these gateway factors are met," should "a court then

consider[] the remaining two factors and determine[] in its sound discretion if all four factors,

taken together, balance in favor of granting the requested preliminary relief." *Id.* at 179–180.

## IV.    DISCUSSION

### A.  Plaintiffs Have Failed to Establish a Reasonable Probability of Eventual Success in the Litigation.

#### 1.  Legal Standard

To establish a reasonable probability of eventual success in the litigation, a moving party

"must demonstrate that it can win on the merits (which requires a showing significantly better

than negligible but not necessarily more likely than not)[.]" *Reilly*, 858 at 179.

In the present case, Plaintiffs' Amended Complaint asserts three counts of racial

discrimination against Defendants. Specifically, Plaintiffs allege, pursuant to 42 U.S.C. § 1983,

violations of both Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d (Count I) and the

Equal Protection Clause of the Fourteenth Amendment (Count II). Plaintiffs also allege

violations of Article I, § 26 and Article I, § 29 of the Pennsylvania Constitution (Count III). The

Court finds that all three of these claims are analyzed pursuant to the standards the United States

Supreme Court uses in reviewing federal equal protection claims. *See Grutter v. Bollinger*, 539

U.S. 306, 343 (2003) (the prohibitions of the Equal Protection Clause and Title VI are co-

extensive); *see also Regents of Univ. of California v. Bakke*, 438 U.S. 265, 287, 98 S.Ct. 2733

(1978) (opinion of Powell, J.) ("Title VI must be held to proscribe only those racial

classifications that would violate the Equal Protection Clause"); *Doe ex rel. Doe v. Lower

Merion School Dist.*, 665 F.3d 524, 557 (3d Cir. 2011) ("*Lower Merion*") (explaining same);

*Com. v. Albert*, 758 A.2d 1149, 1151 (Pa. 2000) (Article I, § 26 of the Pennsylvania Constitution

is analyzed under the same standards that the United States Supreme Court uses in reviewing

federal equal protection claims).[5]

      The Equal Protection Clause of the Fourteenth Amendment provides that no State shall

"deny to any person within its jurisdiction equal protection of the laws." U.S. Const. amend. XIV

§ 1. When considering claims of racial discrimination, "[p]roof of racially discriminatory intent

or purpose is required to show a violation of the Equal Protection Clause." *Lower Merion*, 665

F.3d at 543 (citing *Antonelli v. New Jersey*, 419 F.3d 267, 274 (3d Cir. 2005) (quoting *City of

Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194, 123 S.Ct. 1389, 155 L.Ed.2d

349 (2003)) (internal citations and quotation marks omitted in *Antonelli*).

---

[5] The Court notes that Section 29 of the Pennsylvania Constitution (added May 18, 2021) has not
yet been subject to any reported judicial construction, and that the Court finds no basis to find
that Section 29—which expressly bars the denial or abridging of "[t]he equality of rights under
the law" on the basis of "race or ethnicity"—would be construed differently than the more
generally worded Section 26, which does not mention race or ethnicity. Accordingly, the Court
finds it appropriate, here, to also analyze Section 29 under the federal equal protection standards.
*Compare* Pa. Const. art I, § 26 ("[n]o discrimination by Commonwealth and its political
subdivisions") *with* Pa. Const. art I, § 29 ("[p]rohibition against denial or abridgment of equality
of rights because of race and ethnicity").

The Supreme Court has recognized three circumstances that show intentional race-based discrimination. First intentional racial discrimination can be shown when "a law or policy explicitly classifies citizens on the basis of race." *Lower Merion*, 665 F.3d at 543 (citing *Hunt v. Cromartie*, 526 U.S. 541, 119 S.Ct. 1545 (1999)). Second, intentional race-based discrimination can also be shown when a "facially neutral law or policy is applied differently on the basis of race." *Id.* (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064 (1886)). Lastly, when "a facially neutral law or policy that is applied evenhandedly is motivated by discriminatory intent and has a racially discriminatory impact" it can demonstrate intentional race-based discrimination. *Id.* (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 97 S.Ct. 555 (1977)).

When considering Equal Protection challenges, courts "apply strict scrutiny to actions with racially discriminatory purposes," meaning that the action is either an explicit racial classification imposed by government, it is a policy or law being applied differently on the basis of race, or it is a policy or law for which a plaintiff establishes a discriminatory race-based purpose. *Id.* (citing *Grutter*, 539 U.S. at 327, 123 S.Ct. 2325; *Yick Wo*, 118 U.S. 356, 6 S.Ct. 1064; *Pryor v. Nat'l Collegiate Athletic Ass'n,* 288 F.3d 548, 562 (3d Cir. 2002)). "[A]bsent a racially discriminatory purpose, explicit or inferable, on the part of the [decisionmaker], the statutory distinction is subject only to rational basis review." *Id.* at 544.

Whether a law or policy has a racially discriminatory purpose, is a "'sensitive inquiry' into the available 'circumstantial and direct evidence of intent." *Id.* at 552 (citing *Arlington Heights*, 429 U.S. at 266–68, 97 S.Ct. 555). Courts should consider, "(1) whether the official action has a racially disproportionate impact; (2) the historical background of the decision; and

(3) the legislative or administrative history of the decision." *Id.* (citing *Arlington Heights*, 429 U.S. at 266–68, 97 S.Ct. 555).

### 2. Analysis

For the reasons set forth below, this Court finds that Plaintiffs have failed to show reasonable probability of eventual success on the merits. Specifically, this Court finds that (a) Plaintiffs have failed to show that there is a reasonable probability that the changes to the 2021–2022 admissions process for the School District's criteria-based schools were motivated by a racially discriminatory purpose, and thus, this Court cannot conclude that there is a reasonable probability such policy changes would be evaluated under strict scrutiny; (b) Plaintiffs have failed to show that there is a reasonable probability that the changes to the admissions process for the criteria-based schools would fail under a rational basis review; and finally (c) even if these policy changes were subject to strict scrutiny review, Plaintiffs have failed to show a reasonable probability of eventual success on the merits because they have not shown any evidence that the changes to the admissions policy have had a racially discriminatory impact.

### a. Plaintiffs Have Failed to Show That There Is a Reasonable Probability That the Changes to the Admissions Policy Will be Subject to Strict Scrutiny.

Plaintiffs argue that they have shown that they have a reasonable probability of proving that the changes to the admissions policy for the 2021–2022 admissions process to the School District's criteria-based schools were motivated by a racially discriminatory purpose, and thus, there is a reasonable probability that the relevant standard of review will be strict scrutiny. According to Plaintiffs, they have, therefore, shown a reasonable probability of eventual success on the merits because strict scrutiny is a difficult hurdle to overcome, and Defendants will not be able to show that the changes were narrowly tailored to a compelling state interest. *See* ECF No.

32 at 16; *see also Grutter*, 539 U.S. at 326. Based on the current record, however, this Court cannot find that there is a reasonable probability Plaintiffs will successfully prove that the changes to the admissions policy for the 2021–2022 admissions process were implemented for a racially discriminatory purpose or that they have had a racially discriminatory impact, and thus, Plaintiffs have failed to show that there is a reasonable probability that such policy changes will be subject to strict scrutiny review.

As set forth in the Stipulated Facts, it is undisputed that the School District made changes to the 2021–2022 admissions process for criteria-based schools. ECF No. 44 ¶ 24. Specifically, "[t]he School District changed its admission[s] process for all criteria-based schools by admitting qualified students to these schools by lottery." ECF No. 44 ¶ 24.  Additionally, "[t]he 2021-22 admission process provided qualified students residing in six specified zip codes—19121, 19132, 19133, 19134, 19135, and 19140—with preference in the lottery for admission to" Julia R. Masterman High School ("Masterman"), Central High School ("Central"), George Washington Carver High School of Engineering and Science ("Carver") and Academy at Palumbo ("Palumbo"). ECF No. 44 ¶ 25; *see also* ECF No. 44 Ex. 2 at 4 ("[z]ip code preference will be applied at select criteria-based schools for students who meet minimum qualifications"). Under the zip code preference policy, "[i]f a student was qualified to attend [Palumbo, Carver, Central or Masterman] applied for admission, and resided in one of those six specified zip codes, the student would automatically receive admission to that school." ECF No. 44 ¶ 25. Palumbo, Carver, Central and Masterman each have their own set of requirements that determine whether or not a student is qualified for admission (i.e., able to participate in the lottery for a spot at that school). *See* ECF No. 44. Ex. 2 at 19, 25, 26, 49 (providing the fall 2022 admissions requirements at Palumbo, Carver, Central and Masterman, respectively).

11

In the spring of 2021, the School District of Philadelphia Board of Education approved a "Goals & Guardrails" policy document. The Goals & Guardrails document includes a general vision statement and lays out a series of "Goals" and "Guardrails" consistent with that vision. ECF No. 44 Ex. 5. In the final section of the Goals & Guardrails, entitled "Addressing Racist Practices," the document includes "Guardrail 4," which provides that "[o]ur students' potential will not be limited by practices that perpetuate systemic racism and hinder student achievement." ECF No. 44 Ex. 5 at 4. Under the Guardrail 4 section heading, the document lists two "[i]ndicators" (Indicator 4.1 and Indicator 4.2). Relevant here, "Indicator 4.1" provides,

> Among 8th grade students who are *qualified* to attend Special Admission High schools [sic], the percentage who are Black/African American or Hispanic/Latinx will grow from 33.8% in August 2020 to at least 52.0% (making progress toward being proportional to population as a whole) by August 2026.

ECF No. 44 Ex. 5 at 4 (emphasis added).

Plaintiffs allege that the language in Indicator 4.1 followed by changes to the 2021–2022 admissions process for the School District's criteria-based schools, demonstrates that such changes were instituted for a racially discriminatory purpose. Plaintiffs state that, "[t]he [S]chool [D]istrict is not even attempting to hide its racial motivations and it proudly proclaims that it 'will' increase [B]lack and Hispanic enrollment to its announced quota of 'at least 52.0%.'" ECF No. 32 at 15. Plaintiffs claim that within Indicator 4.1 the School District "announces that this will be only the *first* step in a five-year march toward racially proportional representation in the city's [criteria-based] schools." ECF No. 32 at 15 (emphasis in original).

This Court finds, however, that Plaintiffs' characterization of Indicator 4.1 is contrary to its plain language and unsupported by the current record. *See* ECF No. 44 Ex. 5 at 4. By its plain language, Indicator 4.1 does not address, at all, increasing the number of Black/African American or Hispanic/Latinx students who are *admitted to* or who *attend* the School District's

criteria-based schools, rather Indicator 4.1 addresses increasing the number of Black/African American or Hispanic/Latinx students who are *qualified* to attend such schools. *Id.* Specifically, the Goals & Guardrails document provides that as an "[i]ndicator" of whether or not the School District is achieving Guardrail 4, that is ensuring that student-potential is "not be[ing] limited by practices that perpetuate systemic racism and hinder student achievement," the School District will look to whether the number of Black/African American and Hispanic/Latinx students who are able to meet the rigorous requirements necessary to qualify for admission to the School District's criteria-based schools is increasing and "making progress toward being proportional to [the demographics of the] population as a whole." *Id.* As Plaintiffs' counsel agreed at the Preliminary Injunction Hearing, "[t]here's absolutely nothing wrong with a school district saying that we want to improve academic performance among any particular group, racial or non-racial." ECF No. 47 Tr. 29:15–18.

Plaintiffs contend that because the School District also controls the qualifications for admissions to the criteria-based schools, one can infer from the language of Indicator 4.1 that the changes to the 2021–2022 admissions process were made for a racially discriminatory purpose. *See* ECF No. 47 Tr. 25: 1–4 ("the [C]ity…will define the scope of qualified applicants according to these racial goals they put forth in the [G]oals and [G]uardrails document). Yet, the Court finds this jump in logic too attenuated to support such inference and unsupported by the record. Plaintiffs have not identified any changes made by the School District to the *qualifications* required for admittance to Palumbo, Carver, Masterman or Central, (or any of the School District's criteria-based schools) that would benefit any one race of students over another. To

qualify for a spot in the admissions lottery, students are all held to the same race-neutral standards.[6]

Plaintiffs also argue that statements made by two School District employees, Defendant Sabriya Jubilee, the School District's Chief of Equity, Office of Diversity, Equity, and Inclusion ("Dr. Jubilee") and Defendant Karyn Lynch, the School District's Chief of Student Support Services ("Ms. Lynch"), at a December 15, 2021 Council of the City of Philadelphia Committee on Education Public Hearing (the "Public Hearing"), support the conclusion that the changes to the admissions policy were instituted for a racially discriminatory purpose.

During the Public Hearing, Dr. Jubilee discussed the School District's commitment to "becoming an anti-racist equitable organization by uprooting policies, deconstructing processes and eradicating practices that create systems of privilege and power for one group over the other." ECF No. 44 Ex. 8 Tr. 84:19–24. Dr. Jubilee spoke generally about "dismantling institutionalization of norms" and specified that "[t]he upending of privilege" she was highlighting was "not simply in reference to a configuration of numbers or an assessment of differences in skin color or features." ECF No. 44 Ex. 8 Tr. 84:25–85:10. In direct reference to the "school selection process" Dr. Jubilee stated that "we have the opportunity to redesign a process that from inception to current practice has only truly benefited a small group of stakeholders, many of whom do not reflect the majority demographic of our School District or

---

[6] The Court notes that a review of the relevant admission qualifications for Palumbo, Carver, Central, and Masterman from the fall of 2021 to the fall of 2022 indicates that, at least to some extent, the qualifications have become more rigorous. For example, to qualify for fall 2022 admission at Palumbo, Carver, Central, or Masterman, students were required to have earned exclusively A's and B's, whereas to qualify for fall 2021 admission to any of these schools, students were permitted a possible exception of one C. *Compare* ECF No. 44 Ex. 2 at 19, 25, 26, 49 (providing Palumbo, Carver, Central and Masterman fall 2022 admissions requirements, respectively) *with* ECF No. 44 Ex. 1 at 19, 24, 25, 48, (providing Palumbo, Carver, Central and Masterman fall 2021 admissions requirements, respectively).

City." ECF No. 44 Ex. 8 Tr. 85:11–21. Likewise, Ms. Lynch explained with respect to the

previous admissions process for criteria-based schools that "[w]e've known for year[s] that this

process is inequitable and in some cases not even equal." ECF No. 44 Ex. 8 Tr. 102:23–25.

Upon review of the transcript of the Public Hearing, (*see* ECF No. 44 Ex. 8), and in

particular, the statements emphasized by Plaintiffs' counsel at the Preliminary Injunction

Hearing (*see e.g.*, ECF No. 47 Tr. 48:5–49:18), the Court finds that none of the statements made

by Dr. Jubilee or Ms. Lynch demonstrate that the changes to the admissions policy were

instituted for a racially *discriminatory* purpose. The Third Circuit has made clear that "[t]he

consideration or awareness of race while developing or selecting a policy…is not in and of itself

a racial classification." *Lower Merion*, 665 F.3d at 548. Further, the Third Circuit has

specifically provided that "[d]esigning a policy 'with racial factors in mind' does not constitute a

racial classification if the policy is facially neutral and is administered in a race-neutral fashion."

*Id*.

Consideration of whether prior practices allowed for racial bias to exist in the admissions

process and a desire to safeguard against the potential for race-based-discrimination by moving

to an objective system for selecting which students are admitted to the schools they are qualified

to attend does not constitute a racially *discriminatory* motive. It constitutes the opposite. *See*

*Lower Merion*, 665 F.3d at 548 ("the mere awareness or consideration of race should not be

mistaken for racially discriminatory intent or for proof of an equal protection violation"); *id.*

("[r]acially discriminatory purpose means that the decisionmaker adopted the challenged action

at least partially because the action would benefit or burden an identifiable group").

Additionally, the 2020 Census data providing the racial demographics for each zip code

located within the School District, also does not support Plaintiffs' contention that the zip code

preference policy was motivated by a racially discriminatory purpose. As Defense counsel pointed out at the Preliminary Injunction Hearing, the six zip codes at issue "are not the {quote} 'blackest' zip codes, they are not the {quote} 'whitest' zip codes." ECF No. 47 Tr. 14:18–19; *see also* ECF No. 44 Ex. 7. Moreover, the criteria-based schools that the zip code preference policy applies to are racially diverse in distinct ways, (e.g., Palumbo in 2020–2021 was 36% Asian, 34% Black/African American, 15% white, 11% Hispanic/Latino, and 4% other, whereas Carver was 14% Asian, 61% Black/African, 8% white, 11% Hispanic/Latino and 6% other). *See* ECF No. 44 ¶ 28 (providing the racial demographics for Palumbo, Carver, Central, Masterman and the Philadelphia School District for the 2020–2021 school year). This data-supported-reality logically cuts against Plaintiffs' assertion that the zip code preference policy was instituted to move the student populations of Palumbo, Carver, Central, and Masterman toward the ultimate goal of having the population at each of these schools mirror the racial demographic breakdown of the City of Philadelphia as whole. To actually achieve that alleged goal through zip code preference, it appears, given the data, that each of the schools would need a school-specific admissions policy preferencing different zip codes with distinct racial demographics targeted to that school's unique racial breakdown.

There is no dispute that the changes to the 2021–2022 admissions process to the School District's criteria-based schools are facially neutral or that the admissions process is being administered in a race neutral fashion, and there is, likewise, no dispute that, presently, there is no evidence before the Court that the changes to the admissions process are resulting in a racially discriminatory impact. There is, thus, no indication from the record that Plaintiffs will be able to prove the changes to the admissions policy for the 2021–2022 admissions process for the School District's criteria-based schools were instituted for a racially discriminatory purpose or with

racially discriminatory intent. Accordingly, there is no evidence on which this Court could find that there is a reasonable probability that the changes to admissions policies to the criteria-based schools will be reviewed under strict scrutiny. *Lower Merion*, 665 F.3d at 548 ("The Court has never held that strict scrutiny should be applied to a school plan in which race is not a factor merely because the decisionmakers were aware of or considered race when adopting the policy. When there is no racial classification in the plan, strict scrutiny is only applied if plaintiffs show discriminatory intent."); *see also Boston's Child. First v. City of Bos.*, 62 F. Supp. 2d 247, 260 (D. Mass. 1999), *aff'd sub nom. Anderson ex rel. Dowd v. City of Bos.*, 375 F.3d 71 (1st Cir. 2004) (concluding that based on the record available at the time of the court's preliminary injunction decision it could not determine whether "either side [was] likely to succeed on the merits").

**b. Plaintiffs Have Failed to Show a Reasonable Probability of Success on the Merits Because They Have Failed to Show That the Changes to the 2021–2022 Admissions Process for Criteria-Based Schools Would Not Be Able to Withstand Rational Basis Review.**

Plaintiffs have failed to show a reasonable probability of success on the merits because they have failed to show that the changes to the admissions policy fail rational basis review. For a policy to be found constitutional under a rational basis review, "the challenged classification must be upheld if it is 'rationally related to a legitimate state interest.'" *Lower Merion*, 665 F.3d at 556 (citing *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513 (1976) (per curiam)). Under this deferential standard and based on the current record, the Court finds that Defendants would almost certainly be able to prove that the changes to the admissions policy

were rationally related to a legitimate government interest, and Plaintiffs have not provided any evidence that allows this Court to find otherwise.

The evidence before the Court shows that the six zip codes given preference in the lottery selection system for admission to Carver, Central, Masterman and Palumbo (that is, 19121, 19132, 19133, 19134, 19135, and 19140) are the six zip codes that for the last four years have had the lowest "[p]ercent of [f]irst-[t]ime 9th [g]raders" who "[e]nrolled at Carver, Central, Masterman and Palumbo."[7]  ECF No. 44. Ex. 6 at 10–11. Based on this data, the Court finds that there are a variety of legitimate state interests that are rationally related to the policy decision to give qualified students in these six zip codes preference in the lottery selection system to Carver, Central, Masterman, and Palumbo, including, *inter alia*, the goal of ensuring that all *qualified* students, regardless of where they are located geographically within the City of Philadelphia, have equal access to the School District's elite criteria-based schools.

---

[7] Specifically, Table 4 in the School District's Research Brief addressing 9th Grade Enrollment in District High School by Home Zip Code, 2017–18 to 2020–21 (ECF No. 44 Ex. 6) provides the total number of first-time 9th graders enrolled in any School District school by zip code from 2017–2018 to 2020–21, as well as the total number of 9th graders enrolled at Carver, Central, Masterman and Palumbo by zip code from 2017–2018 to 2021–21. ECF No. 44 Ex. 6 at 10–11. Based on this information, Table 4 also calculates the percent of first-time 9th graders from each zip code that enrolled at Carver, Central, Masterman, and Palumbo. ECF No. 44 Ex. 6 at 10–11. Table 4 clearly shows that the six zip codes given preference, 19121, 19132, 19133, 19134, 19135, and 19140 have had the six lowest percentages of 9th grade students enrolled at Carver, Central, Masterman and Palumbo from 2017–2018 to 2020-21. *Id.*

**c. Even If the Changes to the 2021–2022 Admissions Process for Criteria-Based Schools Were Subject to Strict Scrutiny, Plaintiffs Have Failed to Show a Reasonable Probability of Success on the Merits as They Have Failed to Show Any Racially Discriminatory Impact.**

Even if Plaintiffs had been able to establish that there is a reasonable probability that the changes to the admissions policy will be subject to strict scrutiny, Plaintiffs would still not be entitled to a preliminary injunction based on the current record because Plaintiffs have failed to show the changes to the admissions policy resulted in a racially discriminatory impact. The Third Circuit has made clear, that even if a law is enacted for a racially discriminatory purpose, if it is a facially neutral law and it is being applied in a race-neutral manner, it will only result in a constitutional violation, if it results in a racially discriminatory impact. *Lower Merion*, 665 F.3d at 549 (quoting *Palmer v. Thompson*, 403 U.S. 217, 224, 91 S.Ct. 1940, 29 L.Ed.2d 438 (1971)) ("no case in [the Supreme] Court has held that a legislative act may violate equal protection solely because of the motivations of the men who voted for it").

In the present case, where the parties stipulated to the fact that the "School District does not have complete data regarding the race of each student who accepted an offer to attend Palumbo, Carver, Masterman, or Central in the 2022–2023 school year" and that the School District will not have the "demographic information for the complete incoming class until after August 29, 2022," the Court is unable to conclude that Plaintiffs have a reasonable probability of success on the merits for purposes of granting a preliminary injunction.

**B. Because Plaintiffs Have Failed to Show a Reasonable Probability of Eventual Success on the Merits, Plaintiffs Cannot Succeed on Their Motion for a Preliminary Injunction.**

While the Third Circuit adopts a balancing approach to the grant of preliminary injunctions, the actual balancing of factors only comes into play once the moving party has successfully met the two critical gateway factors—that is (1) a reasonable probability of eventual success in the litigation, and (2) the possibility that the moving party will be irreparably injured in the event the preliminary injunction is not granted. *Reilly*, 858 F.3d at 176; *id.* at 179 ("[i]f these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief").

Here, while the Court does not rule out the possibility that further discovery will change the status quo, as of right now, there is not enough evidence on the record for the Court to reasonably conclude that the changes to the 2021–2022 admissions process for the School District's criteria-based schools were made for any racially discriminatory purpose. Additionally, the parties have stipulated to the fact that the evidence is not yet available as to whether the changes in admissions policies have resulted in a racially discriminatory impact. Therefore, Plaintiffs have not shown that there is a reasonable probability that the changes to admissions policy will be reviewed under strict scrutiny. Under rational basis review, as the record stands now, Plaintiffs chances of success on the merits are de minimis as Defendants have plainly set forth enough evidence to survive such a deferential standard of review.

Plaintiffs have, therefore, failed to establish a reasonable probability of eventual success on the merits—one of the threshold requirements necessary to secure a preliminary injunction.

Accordingly, this Court need not consider the remaining factors. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989) ("a failure to show a likelihood of success *or* a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction.") (emphasis added); *see also Talbert v. Corr. Dental Assocs.*, No. CV 18-5112, 2019 WL 6460499, at *3 (E.D. Pa. Nov. 29, 2019) (citing *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir. 1989)) (citing *Morton v. Beyer*, 822 F.2d 364, 367 (3d Cir. 1987)) (providing that to succeed on a motion for a preliminary injunction a moving party "must demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted") (emphasis in original).

## V.     CONCLUSION

For the reasons provided above, this Court will DENY Plaintiffs' Motion for a Preliminary Injunction (ECF No. 32). An appropriate Order follows.

BY THE COURT:

/s/ *Chad F. Kenney*

**CHAD F. KENNEY, JUDGE**