IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHARICE SARGENT, et al., | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | NO. 22-cv-01509 |
| | : | |
| v. | : | |
| | : | |
| THE SCHOOL DISTRICT OF | : | |
| PHILADELPHIA, et al., | : | |
| | : | |
| Defendants. | : | |

## ORDER

**AND NOW**, this _____ day of _____, 2024, upon consideration of Defendants'

Motion for Summary Judgment, and Plaintiffs' response thereto, it is hereby **ORDERED** as

follows:

1.      Defendants' Motion for Summary Judgment is **GRANTED** and judgment is

**ENTERED** against Plaintiffs and in favor of Defendants on all claims in Plaintiffs' First

Amended Complaint (ECF No. 31).

2.      The Clerk of Court is **DIRECTED** to close this matter.


BY THE COURT:


_____

CHAD F. KENNEY, JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHARICE SARGENT, et al., | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | NO. 22-cv-01509 |
| | : | |
| v. | : | |
| | : | |
| THE SCHOOL DISTRICT OF | : | |
| PHILADELPHIA, et al., | : | |
| | : | |
| Defendants. | : | |

## **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants move, under Rule 56 of the Federal Rules of Civil Procedure, for summary

judgment on all claims in Plaintiffs' First Amended Complaint (ECF No. 31).  In support of this

Motion, Defendants rely on the accompanying brief, and all stipulated and non-stipulated facts

set forth in respective Statements of Facts.

Dated: June 6, 2024                              Respectfully submitted,

By: /s/ *William K. Kennedy*
William K. Kennedy (I.D. No. 86571)
Montgomery McCracken Walker &
Rhoads LLP
1735 Market Street, 21st Floor
Philadelphia, Pennsylvania 19103
wkennedy@mmwr.com

Renee N. Smith (I.D. No. 65866)
Jackson Lewis P.C.
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102
renee.smith@jacksonlewis.com

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHARICE SARGENT, et al.,       :     CIVIL ACTION
                                 :
             Plaintiffs,      :     NO. 22-cv-01509
                                 :
             v.              :
                                 :
THE SCHOOL DISTRICT OF       :
PHILADELPHIA, et al.,         :
                                 :
            Defendants.    :

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

ON THE BRIEF:

William K. Kennedy (I.D. No. 86571)
MONTGOMERY MCCRACKEN WALKER & RHOADS LLP
1735 Market Street, 21st Floor
Philadelphia, Pennsylvania 19103

Renee N. Smith (I.D. No. 65866)
Jackson Lewis P.C.
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102
renee.smith@jacksonlewis.com

**<u>TABLE OF CONTENTS</u>**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................3

    A.   Factual Background...........................................................................................3

          i.   *The parties have stipulated to the following facts*...................................3

          ii.   *The following facts are not stipulated, but Defendants claim are undisputed*.......5

    B.   Procedural Background .....................................................................................7

ARGUMENT .........................................................................................................................8

    A.  Summary Judgment Standard............................................................................8

    B.  The Third Circuit's Decision in Lower Merion ................................................9

    C.  The Court's Preliminary Injunction Ruling.....................................................11

    D.  Subsequent Legal Developments at the Court of Appeals and the Supreme Court ........14

NEITHER THE LAW NOR THE FACTS SUPPORT PLAINTIFFS' CLAIMS........................19

CONCLUSION.....................................................................................................................22

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Boston Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. for City of Boston*,
   89 F.4th 46 (1st Cir. 2023)..................................................................................2, 17, 18, 19, 21

*Coal. for TJ v. Fairfax County Sch. Bd.*,
   68 F.4th 864 (4th Cir. 2023) ..............................................................................2, 15, 16, 17, 19

*Doe ex rel. Doe v. Lower Merion Sch. Dist.*,
   665 F.3d 524 (3d Cir. 2011)...........................................................................2, 9, 10, 12, 16, 19

*Meyer v. Delaware Valley Lift Truck, Inc.*,
   392 F. Supp. 3d 483 (E.D. Pa. 2019) ...........................................................................................19

*Sargent v. Sch. Dist. of Philadelphia*,
   No. 22-1509, 2022 WL 3155408 (E.D. Pa. Aug. 8, 2022) ...........................1, 7, 11, 12, 13, 14, 21

*Sec. & Exch. Comm'n v. Cammarata*,
   No. 21-4845, 2023 WL 5644689 (E.D. Pa. Aug. 31, 2023) (Kenney, J.)...................................8, 9

*SodexoMAGIC, LLC v. Drexel Univ.*,
   24 F.4th 183 (3d Cir. 2022) ............................................................................................................9

*Spurlock v. Fox*,
   716 F.3d 383 (6th Cir. 2013) ........................................................................................................10

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
   600 U.S. 181 (2023)........................................................................................................14, 15, 18

**Statutes**

Civil Rights Act of 1964 Title VI, 42 U.S.C. § 2000d .........................................................................7

**Other Authorities**

Fed. R. Civ. P. 56(a) .............................................................................................................................8

Pennsylvania Constitution Article I, § 26 and Article I, § 29..............................................................7

## I.      INTRODUCTION

Defendants are entitled to summary judgment for the same reasons that this Court denied Plaintiff's Motion for Preliminary Injunction - because Plaintiffs have not produced evidence of discriminatory motive or discriminatory impact, the facially neutral admissions process is subject to and passes rational basis review. *See Sargent v. Sch. Dist. of Philadelphia*, No. 22-1509, 2022 WL 3155408 (E.D. Pa. Aug. 8, 2022). This Court held that Plaintiffs failed to meet their burden regarding racially discriminatory purpose, racially discriminatory impact, or rational basis review.[1] Since the August 2022 order and opinion, Plaintiffs have not produced or identified (a) any evidence of a racially discriminatory motivation for the changes; or (b) any evidence, through an expert or otherwise, to establish discriminatory impact. Instead, discovery has confirmed that:

---

[1] In its opinion confirming the denial of Plaintiffs' Motion for Preliminary Injunction, this Court wrote:

> Specifically, this Court finds that (a) Plaintiffs have failed to show that there is a reasonable probability that the changes to the 2021–2022 admissions process for the School District's criteria-based schools were motivated by a racially discriminatory purpose, and thus, this Court cannot conclude that there is a reasonable probability such policy changes would be evaluated under strict scrutiny; (b) Plaintiffs have failed to show that there is a reasonable probability that the changes to the admissions process for the criteria-based schools would fail under a rational basis review; and finally (c) even if these policy changes were subject to strict scrutiny review, Plaintiffs have failed to show a reasonable probability of eventual success on the merits because they have not shown any evidence that the changes to the admissions policy have had a racially discriminatory impact.

*Id.* at *5.

- the Philadelphia School District (the "School District") acted with a rational basis when designing and implementing the changes to the 2022 Admissions Process;

- the 2022 Admissions Process used objective, measurable criteria and a centrally managed lottery for admission of qualified students;

- the changes were intended to create a more equitable process that increased access for all qualified students; and

- those changes did not have a racially discriminatory impact.

Since this Court's ruling, claims similar to Plaintiffs' claims have been rejected at every level of the federal judiciary. This Court's August 2022 decision and the Third Circuit's *Lower Merion* decision are not outliers. Since 2023, other Courts of Appeals have decided, consistent with this Court's preliminary injunction ruling, that a facially neutral process will be subject to rational basis review unless plaintiffs produce evidence of both discriminatory intent *and* discriminatory impact. *See Boston Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. for City of Boston*, 89 F.4th 46 (1st Cir. 2023); *Coal. for TJ v. Fairfax County Sch. Bd.*, 68 F.4th 864 (4th Cir. 2023). The United States Supreme Court left these rulings in place when it denied certiorari in *Fairfax County*. *See Coal. for TJ v. Fairfax County Sch. Bd.*, No. 23-170, 2024 WL 674659 (U.S. Feb. 20, 2024).

## II.   BACKGROUND

### A.   Factual Background

#### 1.   *The parties have stipulated to the following facts.*

The School District's public high schools fall into one of three categories: (1) neighborhood high schools, also known as "catchment" schools; (2) citywide admission high

schools[2]; and (3) criteria-based high schools.[3]  (Statement of Stipulated Facts ("SSF") at ¶ 13). Plaintiffs' case concerns the admission process for four criteria-based high schools - Academy at Palumbo ("Palumbo"), George Washington Carver High School of Engineering and Science ("Carver"), Central High School ("Central"), and Julia R. Masterman High School ("Masterman").

Criteria-based high schools do not have an attendance boundary, and students must apply for admission.  The School District has described criteria-based high schools as those "which offer a rigorous, enriched curriculum that may concentrate on a particular discipline or area of study, such as mathematics, natural sciences, engineering, humanities; social sciences, or fine and performing arts."  (*Id.* at ¶ 16).  With respect to the four criteria-based high schools at issue here, the admissions process focused on student core course grades, attendance, and additional requirements.  (*Id.* at ¶ 19).  While students who wished to attend Masterman also had to complete Algebra 1 by the end of 8th grade and meet a foreign language requirement, students who wished to attend Carver, Central, and Palumbo were required to submit a writing sample. (*Id.*).

The admissions process implemented in 2020-2021 (for enrollment in the 2021-2022 school year) (the "**2021 Admissions Process**"), included certain changes from prior years.  First, the School District used a centralized application process – student applications were submitted to the School District, then delivered to each criteria-based school for determination of

---

[2] Citywide schools admit students by lottery without respect to geographic boundaries, and without academic criteria.  (SSF at ¶ 13).

[3] Criteria-based high schools were previously referred to as special admission high schools.

qualifications and admission offers.[4]  Second, PSSA scores were not considered, because the Spring 2020 PSSA was canceled due to the COVID-19 pandemic.  (*Id.* at ¶ 21).

As in in prior years, the School District reviewed and revised the 2021-2022 admissions process (for enrollment in the 2022-2023 school year) (the "**2022 Admissions Process**").  (*Id.* at ¶ 22).  As in the prior year, PSSA scores were not considered, and the application process was centralized.  (*Id.* at ¶¶ 22–23).  If students met the qualifications for a criteria-based school, they were entered into a lottery for admission to each school they applied to.  (*Id.* at ¶ 24).

Applicants to Palumbo, Carver, Central, and Masterman had to complete a "district administered writing sample," which was administered and scored by a computer program called MI Write.[5]  (*Id.* at ¶¶ 22–23).  The School District also implemented a zip code preference within the lottery for these four criteria-based high schools. If a student residing in zip code 19121, 19132, 19133, 19134, 19135, or 19140 *met the criteria for admission and applied* to one of those schools, the student would receive an offer of admission to that school.  (*Id.* at ¶ 25).  The six zip codes were selected because they had the lowest percentage of students enrolled at Masterman, Central, Carver, and Palumbo between 2017 and 2021.  (*Id.* at ¶ 26).

Plaintiffs are parents of students who participated in the 2022 Admissions Process and did not get into their preferred criteria-based schools.  Each student, however, received an offer of admission to at least one criteria-based school through the lottery process.  Plaintiff Sargent's daughter was waitlisted at her top pick, Carver, and was admitted to three criteria-based high

---

[4] In prior years, the School District employed a decentralized process that allowed each school to receive applications and establish an admission review team to determine which students met their admission criteria.  (*Id.* at ¶ 17).

[5] If they met all other eligibility criteria, students whose computerized essay score equaled or exceeded 22 out of 30 were qualified for admission to Central or Masterman, and students with essay scores at 17 or above were qualified for admission to Palumbo or Carver.  (*Id.* at ¶ 23).

schools through the School Selection lottery: Walter B. Saul High School ("Saul"), Lankenau Environmental Science Magnet High School, and Science Leadership Academy at Beeber. (*Id.* at ¶¶ 35–36). Her daughter initially accepted the offer to attend Saul, but ultimately elected to attend Little Flower High School for Girls. (*Id.* at ¶ 37). Plaintiff Sheridan's son was waitlisted at Palumbo and admitted to Franklin Learning Center, a criteria-based admission high school. (*Id.* at ¶ 43). He elected to attend String Theory Charter School for ninth and tenth grades. (*Id.* at ¶ 44). He plans to attend Ephrata High School in Lancaster County beginning in the Fall of 2024. (*Id.*). Plaintiff Meyer's son was waitlisted at Masterman, his top choice, and admitted to Palumbo and Carver. (*Id.* at ¶ 46). His son declined both offers and enrolled at Springside Chestnut Hill Academy, a private, preparatory high school for 9th grade. (*Id.* at ¶ 48). None of Plaintiffs' children applied to transfer to a School District criteria-based school for tenth or eleventh grade. (*Id.* at ¶ 49).

> 2. *The following facts are not stipulated, but Defendants claim are undisputed.*

Karyn Lynch, Chief of Student Support Services (which includes the Office of Student Placement) had primary responsibility for the high school admissions process, including reviewing and making changes to the process in any given year. (Defendants' Statement of Facts "DSF" at ¶ 1, 3). Ms. Lynch reported directly to Dr. Hite, who approved changes to the process, including the changes to the 2022 Admissions Process. (DSF at ¶ 2).

Prior to the 2021 Admissions Process, applications for admission to criteria-based schools were sent directly to the schools. In the 2021 Admissions Process, the School District centralized the submission of applications, so all applications for admission to criteria-based schools were submitted to the School District. (DSF at ¶ 8).

The School District had been using a lottery for admission to city-wide high schools for several years.  (DSF at ¶ 12).  Prior to the 2020 pandemic, Ms. Lynch and her team had acquired a new computerized lottery program, but implementation of that program for criteria-based schools was delayed.  (DSF at ¶ 13).  For the 2021-22 admissions process, the School District announced that it would implement a computerized lottery for admission of qualified students to all criteria-based schools.  (SSF at ¶ 24).  For admission to Palumbo, Carver, Central, and Masterman, the School District also implemented a zip code preference.  (DSF at ¶ 17).  The School District did not consider the racial make-up of the zip codes or whether the zip code preference could or would impact the racial demographics of the schools.  (DSF at ¶ 21).

Pursuant to Board of Education Policy 206, the Superintendent and School District Administration have authority and responsibility for the high school admissions process.  (DSF at ¶ 29).  The School Board was not involved in implementing changes to the admissions process in 2021-22.  (DSF at ¶ 26).  Contrary to Plaintiffs' allegations and arguments, the changes to the admissions process were not intended to address any matter identified in the Goals and Guardrails, including Guardrail 4 or Indicator 4.1. (DSF at ¶ 27).  Instead, Guardrail 4 and Indicator 4.1 are used by the Board of Education to monitor the School District's performance in improving academic outcomes for students – specifically, students in kindergarten through 8th grade. (DSF at ¶ 27).

After the beginning of the 2022-2023 school year, the School District analyzed, among other things, the impact of the admissions changes on enrollment data at Palumbo, Carver, Central, and Masterman.  (DSF at ¶ 30).  The analysis shows that there were minimal – if any – changes in the demographics at each school, and no patterns emerged that could be attributed to the changes to the admissions process:

> … [C]hanges in enrollment at each of the four schools were not consistent, especially from 2021-22 to 2022-23. For example, students identifying as Asian were overrepresented in all four years at both Masterman and Palumbo; but the degree of overrepresentation decreased at Palumbo while increasing at Masterman. Similarly, the degree to which students identifying as Hispanic/Latinx were underrepresented declined at Central while increasing at Masterman. Further, the enrollment pattern at Carver remained essentially unchanged.

(*Id.* (cleaned up)).  In other words, within a specific racial/ethnic group, enrollment patterns varied by school and were not uniform in terms of increasing or decreasing representation. This is unsurprising, as District witnesses noted, because factors such as student choice, focus of academic programs, and geography greatly impact student enrollment decisions.  (DSF at ¶ 23).

## B.    Procedural Background

On June 3, 2022, Plaintiffs filed their First Amended Complaint where they asserted three claims of racial discrimination.  (*See* ECF No. 31).  "Specifically, Plaintiffs alleged, pursuant to 42 U.S.C. § 1983, violations of both Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d (Count I) and the Equal Protection Clause of the Fourteenth Amendment (Count II). Plaintiffs also alleged violations of Article I, § 26 and Article I, § 29 of the Pennsylvania Constitution (Count III)."  *Sargent*, 2022 WL 3155408, at *2.  On the same date, they also filed their Motion for Preliminary Injunction.  (*See* ECF No. 32).  Plaintiffs' claims are based on their allegations that the 2021-22 admissions process was "blatantly unconstitutional" – "Plaintiffs allege that in 2021, Defendant the School District of Philadelphia . . . adopted a blatantly unconstitutional race-based system for admission to its criteria-based public schools."  *Sargent*, 2022 WL 3155408, at *1 (cleaned up).

On June 29, 2022, Defendants filed a Motion to Dismiss and their response to Plaintiffs' preliminary injunction motion.  (*See* ECF Nos. 36, 37).  On July 13, Plaintiffs filed their reply in support of their preliminary injunction motion and their response to Defendants' Motion to

Dismiss.  (*See* ECF Nos. 41, 42).  Two days later, this Court denied the Motion to Dismiss.  (*See* ECF No. 43).

On July 21, 2022, the parties filed stipulated facts to serve as the factual record for the preliminary injunction hearing.  (*See* ECF No. 44).  The parties attached nine exhibits to the Stipulated Facts.  (*See id.*).  This Court held the preliminary injunction hearing on July 27.  On August 8, this Court denied Plaintiffs' Motion for Preliminary Injunction.  (*See* ECF No. 51).

On August 11, 2022, Plaintiffs appealed the preliminary injunction ruling to the Third Circuit.  (*See* ECF No. 52).  On October 19, this Court stayed trial proceedings in light of the appeal.  (*See* ECF No. 58).  After the appeal had been fully briefed but before any oral argument, the appeal was dismissed at Plaintiffs' request on May 12, 2023.  (*See* ECF No. 59).

Discovery consisted primarily of fact witness depositions and document exchange.  Ms. Lynch and Dr. Hite, among others, were deposed.  Defendants took the depositions of the three parent-Plaintiffs, Ms. Sargent, Ms. Sheridan, and Mr. Meyer.  Defendants produced over seventeen thousand pages of documents, including emails, text messages, and Board of Education documents.  No experts were identified.

## III.   ARGUMENT

### A.   Summary Judgment Standard

"A district court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a)."  *Sec. & Exch. Comm'n v. Cammarata*, No. 21-4845, 2023 WL 5644689, at *7 (E.D. Pa. Aug. 31, 2023) (Kenney, J.) (cleaned up).[6]  "When determining the existence of a

---

[6] "A fact is material if it might affect the outcome of the suit under the governing law."  *Id.* (cleaned up). "There is a genuine issue of material fact if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* (cleaned up).  "But if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case, and on which it will bear the burden

genuine issue of material fact, a court must examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Cammarata*, 2023 WL 5644689, at \*8 (cleaned up).  But "the non-movant must show more than the mere existence of a scintilla of evidence for elements on which the non-movant bears the burden of production." *Id.* at \*7 (cleaned up).  "The non-movant opposing a motion for summary judgment may not rely merely upon bare assertions, conclusory allegations or suspicions." *Id.* (cleaned up).  "Moreover, arguments made in briefs are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Id.* (cleaned up).

### B.      The Third Circuit's Decision in *Lower Merion*.

For more than a decade before this Court's preliminary injunction ruling, the Third Circuit's *Lower Merion* decision set the standard for reviewing a facially neutral high school admissions process.  *Lower Merion* confirmed that courts should apply rational basis review (and not strict scrutiny) unless a plaintiff proves "that the actions of . . . officials (1) had a discriminatory effect and (2) were motivated by a discriminatory purpose." *Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 549 (3d Cir. 2011) (cleaned up).

"To establish discriminatory impact in a racial discrimination case, [plaintiffs] must show that similarly situated individuals of a different race were treated differently." *Id.* at 550.  A "racially discriminatory purpose means that the decisionmaker adopted the challenged action at least partially because the action would benefit or burden an identifiable group." *Id.* at 552.  "Thus, the mere awareness or consideration of race should not be mistaken for racially discriminatory intent or for proof of an equal protection violation." *Id.* at 548.  In other words,

---

of proof at trial, then summary judgment is appropriate for the moving party." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (cleaned up).

strict scrutiny is not triggered simply because public officials consider the racial impact of their decisions.  *See Spurlock v. Fox*, 716 F.3d 383, 399 (6th Cir. 2013) ("The Supreme Court, as previously discussed, has acknowledged that demographic data is used in a variety of legislative and policymaking contexts, and it has made clear that the use of such data, without more, does not offend the Constitution.").

If strict scrutiny does not apply, the default rational basis test does.  Under that highly deferential standard of review, the challenged conduct must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  *Lower Merion*, 665 F.3d at 556 (cleaned up).

In *Lower Merion*, the Third Circuit ruled that a high school redistricting plan that assigned students to either of two high schools "based on the neighborhood in which they reside without using individual racial classifications" was race-neutral and properly subjected only to rational basis review.  *Lower Merion Sch. Dist.*, 665 F.3d at 540, 545-56.  This policy was considered race neutral  even though the trial court (Judge Baylson) found that the Lower Merion *school administration considered the racial composition of various neighborhoods* in deciding which plan to adopt, and specifically *chose a plan that required an area with a high concentration of African-American students to be redistricted* to one of the high schools.  *Id*. at 539.  The Third Circuit explained that the "consideration or awareness of race . . . is not in and of itself a racial classification" and that designing a policy "with racial factors in mind" does not constitute a racial classification if the policy is facially neutral and is administered in a race-neutral fashion.  *Id*. at 548 (quoting *Hayden v. Cnty, of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999)).

### C.  <u>This Court's Preliminary Injunction Ruling.</u>

This Court has already applied *Lower Merion*, the binding authority within this Circuit, to deny Plaintiffs' Motion for Preliminary Injunction, concluding that "there is no evidence on

which this Court could find that there is a reasonable probability that the changes to admissions policies to the criteria-based schools will be reviewed under strict scrutiny." *See Sargent*, 2022 WL 3155408, at *8.  This Court's reasoning in its prior ruling denying Plaintiffs' Motion for Preliminary Injunction remains central to the issues presented now on the Defendant's Motion for  Summary Judgment.  Significantly, after discovery, Plaintiffs have not produced or elicited any evidence to support their claims. The School District's witnesses consistently testified that the changes in the 2022 Admissions Process were not intended to change the demographics of the four schools at issue (DSF at ¶ 22); there is no evidence in the thousands of pages of documents that the School District provided that shows an <u>intent</u> to manipulate the racial demographics of these four schools; and, there is no evidence of any racially discriminatory impact of the changes.

Seeking to show that Defendants engaged in racial balancing in implementing the admissions changes, Plaintiffs focused on "their interpretation of a single sentence from a Philadelphia School District Board of Education policy document, which Plaintiffs aver is as close to a smoking gun as can be imagined," and argued that "the language in this policy document, announces a racial *quota* system as a first step on the road to an enforced proportional-representation regime, in which school officials will consciously and continuously stamp out deviations that arise between the racial composition of the city's criteria-based schools and the racial makeup of the city's population." *Id.* at *1 (cleaned up).  This Court rejected Plaintiffs' interpretation, concluding "that Plaintiffs' so-called smoking gun is, at this stage, merely smoke, as the plain language of the policy statement does not provide what Plaintiffs claim that it does, and Plaintiffs' interpretation of its meaning is, as of yet, unsupported by the record." *Id.* (cleaned up).

This Court's determination is supported by the testimony of all witnesses who emphasized that Guardrail 4 and Indicator 4.1 were intended to hold the School District accountable for advancing student academic progress – specifically setting a goal for advancement of students between kindergarten and 8th grade. (DSF at ¶ 27).  The Guardrail and Indicator were not intended to impact the criteria for admission to criteria-based schools or the demographics of the criteria-based schools.

This Court first confirmed that, "when a facially neutral law or policy that is applied evenhandedly is *motivated by discriminatory intent and has a racially discriminatory impact* it can demonstrate intentional race-based discrimination." *Id.* (cleaned up).  Only if a plaintiff makes that showing will a court apply strict scrutiny to review the conduct at issue.  *See id.* at *5. Otherwise, consistent with *Lower Merion*, rational basis review will apply.  *See id.*

This Court ruled that Plaintiffs likely could not justify strict scrutiny and that Defendants' conduct would likely only be reviewed under rational basis.  *See id.*  In this Court's own words: "Based on the current record, however, this Court cannot find that there is a reasonable probability Plaintiffs will successfully prove that the changes to the admissions policy for the 2021–2022 admissions process were implemented for a racially discriminatory purpose or that they have had a racially discriminatory impact, and thus, Plaintiffs have failed to show that there is a reasonable probability that such policy changes will be subject to strict scrutiny review."  *Id.*

Focusing on the Goals & Guardrails policy document, Plaintiffs argued that "the language in Indicator 4.1 [which centered on specific demographics of 8th grade students being qualified to attend the criteria-based high schools] followed by changes to the 2021–2022 admissions process for the School District's criteria-based schools, demonstrates that such changes were instituted for a racially discriminatory purpose."  *Id.* at *6.  This Court rejected this

-12-

argument, observing that "by its plain language, Indicator 4.1 does not address, at all, increasing the number of Black/African American or Hispanic/Latinx students who are *admitted to* or who *attend* the School District's criteria-based schools, rather Indicator 4.1 addresses increasing the number of Black/African American or Hispanic/Latinx students who are *qualified* to attend such schools." *Id.* (cleaned up).  This Court further noted that "Plaintiffs have not identified any changes made by the School District to the *qualifications* required for admittance to Palumbo, Carver, Masterman or Central, (or any of the School District's criteria-based schools) that would benefit any one race of students over another." *Id.* at *7.  This Court also rejected Plaintiffs' reliance on "statements made by two School District employees, Defendant Sabriya Jubilee, the School District's Chief of Equity, Office of Diversity, Equity, and Inclusion ("Dr. Jubilee") and Defendant Karyn Lynch, the School District's Chief of Student Support Services ("Ms. Lynch"), at a December 15, 2021 Council of the City of Philadelphia Committee on Education Public Hearing." *Id.*  Having rejected these arguments and noting that there was no dispute that the admissions changes were facially race neutral, this Court concluded that strict scrutiny was unlikely to apply because there was no evidence of "a racially discriminatory purpose or . . . racially discriminatory intent." *Id.* at *8.

With Plaintiffs' failure to show that strict scrutiny applied, this Court ruled that Plaintiffs would likely not be able to show that Defendants' conduct failed under rational basis review. *See id.* at *9.  Specifically, this Court stated that "under this deferential standard and based on the current record, the Court finds that Defendants would almost certainly be able to prove that the changes to the admissions policy were rationally related to a legitimate government interest, and Plaintiffs have not provided any evidence that allows this Court to find otherwise." *Id.* (cleaned up).  This Court went on to observe that "there are a variety of legitimate state interests that are

-13-

rationally related to the policy decision to give qualified students in [identified] six zip codes preference in the lottery selection system to Carver, Central, Masterman, and Palumbo, including, *inter alia*, the goal of ensuring that all *qualified* students, regardless of where they are located geographically within the City of Philadelphia, have equal access to the School District's elite criteria-based schools."  *Id.*[7]

       This Court left open the possibility of a different result should Plaintiffs be able to develop additional facts during discovery.  *See id.* at *10.  Discovery, however, has only confirmed the lack of evidence of discriminatory intent or impact and reinforced the soundness of rejecting Plaintiffs' challenges.  In deciding Plaintiffs' Motion for Preliminary Injunction, therefore, this Court effectively decided Defendants' Motion for Summary Judgment.

       **D.**    **Subsequent Legal Developments at the Courts of Appeals and the Supreme Court.**

       Defendants' summary judgment analysis could theoretically stop here.  But since this Court's preliminary injunction ruling, the legal terrain has only changed more in Defendants' favor.  Not only have the Courts of Appeals decided similar admissions cases against plaintiffs, but the Supreme Court has allowed those decisions to stand after its affirmative action ruling in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023).[8]  There is now no doubt that Plaintiffs' claims should be dismissed.

---

[7] This Court also stated that "even if Plaintiffs had been able to establish that there is a reasonable probability that the changes to the admissions policy will be subject to strict scrutiny, Plaintiffs would still not be entitled to a preliminary injunction based on the current record because Plaintiffs have failed to show the changes to the admissions policy resulted in a racially discriminatory impact."  *Id.* at *9 (cleaned up).

[8] On its own terms, *Students for Fair Admissions* has no bearing on this matter.  There, the Court considered a race-based admissions process and whether, within the context of higher education, "a university may make admissions decisions *that turn on* an applicant's race."  *See id.* at 208 (emphasis added).  The Court held that the admissions programs in the case were unconstitutional under the Fourteenth Amendment because they were race-based but failed the following tests: "University programs must comply with strict scrutiny, they may never use race as a stereotype or negative, and—at some

While *Students for Fair Admissions* considered the use of race in higher education (facts not present in this case), the First and Fourth Circuits decided cases involving facially race neutral admissions programs in lower education (like this case)—and both ruled against the plaintiffs.  Decided before *Students for Fair Admissions*, the Fourth Circuit's decision in *Coal. for TJ v. Fairfax County Sch. Bd.*, 68 F.4th 864, 871 (4th Cir. 2023), considered "whether the admissions policy . . . adopted by Virginia's Fairfax County School Board (the "Board") in 2020 for use at Thomas Jefferson High School for Science & Technology ("TJ") purposefully discriminates against Asian American students, in contravention of the Fourteenth Amendment's Equal Protection Clause."  The court held, over a dissent by Judge Rushing, that the policy did not so discriminate and so it remanded "for entry of summary judgment in favor of the Board." *Id.*

In adopting certain changes to its admissions policy, "the Board resolved that the admission process must use only race-neutral methods that do not seek to achieve any specific racial or ethnic mix, balance or targets."  *Id.* at 875 (cleaned up).  The court thus framed the appropriate test as follows: "Thus, to demonstrate that an evenhanded, facially race-neutral policy like that challenged here is constitutionally suspect, the plaintiff pursuing an Equal Protection challenge must show (1) that the policy exacts a disproportionate impact on a certain

---

point—they must end."  *Id.* at 213.  First, the programs failed strict scrutiny because the educational benefits identified by the universities, such as diversity and preparing students how to think in an ever-changing society, "cannot be subjected to meaningful judicial review."  *Id.* at 214.  Second, the Court concluded that the "race-based admissions systems that respondents employ also fail to comply with the twin commands of the Equal Protection Clause that race may never be used as a 'negative' and that it may not operate as a stereotype."  *Id.* at 218.  Finally, the Court found the admissions programs problematic because the use of race "has no end point."  *Id.* at 225.

racial group, and (2) that such impact is traceable to an 'invidious' discriminatory intent." *Id.* at 879.  The court cited the Third Circuit's *Lower Merion* case in support of the test.  *See id.*

The court ultimately ruled that the admissions changes were subject to rational basis review (and passed that review) because the challengers failed to show discriminatory impact or discriminatory intent.  *See id.*  Starting with disparate impact, the court concluded that the "district court thus erred in applying a strictly temporal method for assessing racially disparate impact."  *Id.* at 881.  "Put most simply, searching for a racially disproportionate impact necessitates a relative inquiry among racial groups, not a simple appraisal of one group's performance over time."  *Id.* (cleaned up).  The court criticized "the proposition that a particular racial or ethnic group's performance under a prior policy is the proper baseline for comparison in a disparate impact inquiry concerning a newly enacted policy."  *Id.* at 880 (cleaned up).  Doing so, the court continued, "would simply turn the previous status quo into an immutable quota, thereby opening a new policy that might impact a public institution's racial demographics — even if by wholly neutral means — to a constitutional attack."  *Id.* at 881 (cleaned up).  As applied to the admissions policy under review, the court ruled that the policy did not work a racially disproportionate impact on Asian American students because "an application of elementary arithmetic shows that Asian American students, as a class, experience no material disadvantage under the policy's functioning. In fact, they do better in securing admission to TJ than students from any other racial or ethnic group."  *Id.* at 882.  Because the challengers had failed to show disparate impact, the court stated that the Board was entitled to summary judgment.  *See id.*

The court held that summary judgment was warranted (even if disparate impact had been established) because the challengers failed to show discriminatory intent.  *See id.*  The court

-16-

adopted the motivating factor framework and confirmed that "reviewing courts are entitled to

look to, inter alia, the historical background of the challenged policy; the specific sequence of

events leading up to the policy's enactment; any departures from the normal procedural

sequence; and the legislative or administrative history pertaining to the policy." *Id.* at 883

(cleaned up).  At its core, "that a given law or policy may foreseeably have some adverse impact

on a particular racial or ethnic group is not sufficient to demonstrate invidious discriminatory

intent — the decisionmaker must set out with that very purpose in mind." *Id.* (cleaned up).  The

court found no evidence of explicit or implicit discriminatory intent.  *See id.* at 883–84.

Applying rational basis review, the court upheld the admissions changes.  *See id.* at 887.

Even after the Supreme Court handed down its decision, the First Circuit quickly

followed in the Fourth Circuit's footsteps.  In *Boston Parent Coal.*, 89 F.4th at 53, the Boston

School Committee explicitly considered how admissions changes for three selective public

schools would affect the racial composition of the student body and adopted race-neutral changes

that admitted students largely based on GPAs and zip codes.[9]  Like the Fourth Circuit, the First

Circuit (1) found that Plaintiffs had not established evidence of disparate impact or sufficient

discriminatory intent, (2) refused to apply strict scrutiny, and (3) rejected a challenge to the

admissions process under rational basis review.  *See id.* at 61–62.

The court concluded that there was no evidence of disparate impact because "even

assuming the Coalition's statistics show non-random demographic changes in the pool of Exam

School invitees between 2020–2021 and 2021–2022 as a result of the Plan's implementation,

---

[9] The First Circuit summarized the zip code element of the process as: "starting with the highest ranked applicants living in the zip code with the lowest median family income (for families with school age children), and continuing with applicants in each zip code in ascending order of the zip code's median family income, 10% of the remaining seats at each of the three Exam Schools were filled based on GPA and student preferences."  *Id.*

those changes simply show that as between equally valid, facially neutral selection criteria, the School Committee chose an alternative that created less disparate impact, not more." *Id.* at 58. The court soundly rejected the idea that a showing of disparate impact was not needed in a challenge to a "facially neutral selection process." *Id.* at 59.[10] Critically, the court recognized the important role that expert testimony can play in establishing discriminatory impact. *Id.* at 57 ("The Coalition's reliance on these raw percentages without the benefit of some more robust expert analysis serves poorly as proof that the observed changes were caused by the Plan rather than by chance."). And for a facially race-neutral process, the court suggested that proving disparate impact was more complicated than "a before-and-after comparison." *Id.* at 58.

The First Circuit also concluded that the *Students for Fair Admissions* decision did not control its analysis: "Thus, we find no reason to conclude that [*Students for Fair Admissions*] changed the law governing the constitutionality of facially neutral, valid secondary education admissions policies under equal protection principles. For such policies to merit strict scrutiny, the challenger still must demonstrate (1) that the policy exacts a disparate impact on a particular racial group and (2) that such impact is traceable to an invidious discriminatory intent." *Id.* at 61. The First Circuit confirmed that "there is nothing constitutionally impermissible about a school district including racial diversity as a consideration and goal in the enactment of a facially neutral plan," and that "treating students differently based on the zip codes in which they reside was not like treating them differently because of their skin color." *Id.* at 62 (cleaned up).

***

---

[10] The First Circuit's decision acknowledged the Supreme Court's *Students for Fair Admissions* decision and noted that "at some point, facially neutral criteria might be so highly correlated with an individual's race and have so little independent validity that their use might fairly be questioned as subterfuge for indirectly conducting a race-based selection process." *Id.* at 61. The court, however, did not find evidence of "subterfuge" in the Boston School Committee's admissions process.

Contrasting the Supreme Court's treatment of race-conscious admissions programs in higher education with the Courts of Appeals' treatment of race-neutral admissions programs in lower education, one could reasonably wonder whether the Supreme Court would be eager to weigh in on the lower-education decisions.  It did not take long to get an answer.  On February 20, 2024, the Supreme Court denied certiorari in the *Fairfax County* case, thereby leaving undisturbed the First and Fourth Circuits' decisions.  *See Coal. for TJ v. Fairfax County Sch. Bd.*, No. 23-170, 2024 WL 674659 (U.S. Feb. 20, 2024) (Alito, J., dissenting from denial).[11]

## IV.   Neither the Law Nor the Facts Support Plaintiffs' Claims.

The Circuit courts in *Lower Merion*, *Fairfax County*, and *Boston Parent Coal.* applied the same reasoning that this Court applied to deny Plaintiffs' Motion for Preliminary Injunction. Applying that reasoning at this stage confirms that Defendants' Motion for Summary Judgment should be granted.  First, this Court determined that the School District's high school admissions process was facially neutral.  There is no evidence to support a different conclusion.  To the contrary, the evidence confirms that the criteria for admission had not changed in any way that would benefit students of one race over another, offers of admission were made pursuant to a race-blind lottery for qualified students, and students in six zip codes – selected without regard to racial make-up – were provided preference in the lottery.

Second, this Court previously determined that Plaintiffs failed to produce evidence of any race discrimination or discriminatory intent in the School District's admissions process for

---

[11] While Defendants focus this Motion on liability, there appears to be a serious issue with the types of remedy sought by Plaintiffs.  In the parties' Rule 26(f) Report, Plaintiffs stated that they "are seeking a declaratory judgment and compensatory damages because the school district has violated their constitutional and statutory rights."  (ECF No. 61 at 2).  But "declaratory judgments are inappropriate solely to adjudicate past conduct."  *Meyer v. Delaware Valley Lift Truck, Inc.*, 392 F. Supp. 3d 483, 493 (E.D. Pa. 2019) (cleaned up).  And Plaintiffs have never actually articulated what types of damages they seek.

Carver, Central, Masterman, and Palumbo.  After discovery, Plaintiffs have not obtained any evidence to support a different conclusion.  Instead, the testimony and documentary evidence shows that the District took seriously its responsibility to focus on academic achievement. This focus is displayed not only through setting specific academic achievement goals, such as Indicator 4.1, but through providing key curriculum such as Algebra 1 and Foreign Languages in more schools, and monitoring progress in standardized test scores across multiple grade bands.

Third, this Court found that Plaintiffs failed to offer any evidence of discriminatory impact.  Enrollment data, which was not available for the preliminary injunction proceeding, does not support Plaintiffs' allegation that the process had a discriminatory impact on any group. At the outset, Plaintiffs cannot establish and have not even begun to identify the proper baseline to conduct any type of comparative analysis regarding racial or ethnic groups, any alleged changes to the schools' demographics, or whether any alleged change is statistically significant. Plaintiffs have engaged no expert.  At this point, the best they can do is rely on a before-and-after comparison that has been rejected in the Courts of Appeals, and even if they could make a comparison, they would rely on one year of data with no evidence to establish – or even suggest – that any alleged change resulted from the admission process and not any other factor – such as student application decisions.

Even if Plaintiffs were to rely on the enrollment data, the data directly contradicts Plaintiffs' argument that the changes to the 2022 Admissions Process were intended to "racially balance" the schools.  There was almost no change in the enrollment data at Carver.  And while the representation of Black/African American students increased at Palumbo (and the representation of Asian students decreased), the representation of Hispanic/Latinx students decreased at Masterman (and the representation of Asian students increased).  Without statistical

-20-

analysis or expert testimony, Plaintiffs cannot begin to put this data together to establish part of a constitutional violation.  *See Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Bos.*, 996 F.3d 37, 46 (1st Cir. 2021) ("Second, even as to its preferred comparators, plaintiff offers no evidence establishing that the numerical decrease in the overrepresentation of Whites and Asians under the Plan is statistically significant. A party claiming a disparate impact generally does not even get to first base without such evidence.").

Finally, Plaintiffs have developed no evidence undercutting Defendants' rational, non-discriminatory basis for implementing the admissions changes.  The changes were implemented to increase access so that all *qualified* students were considered for admission and to disrupt feeder patterns that left qualified students from some zip codes without access to schools to which they were qualified.  (DSF at ¶ 3-9, 14-23).  This Court has already held that "there are a variety of legitimate state interests that are rationally related to the policy decision to give qualified students in these six zip codes preference in the lottery selection system to Carver, Central, Masterman, and Palumbo, including, *inter alia*, the goal of ensuring that all *qualified* students, regardless of where they are located geographically within the City of Philadelphia, have equal access to the School District's elite criteria-based schools."  *Sargent*, 2022 WL 3155408, at *9 (emphasis in original).

## V.   <u>CONCLUSION</u>

The School District created a race-neutral process that relies on measurable data to determine admission through a centralized process with an automated lottery and a geographical preference related solely to rates of prior enrollment. This process has removed elements of prior processes that were susceptible to bias and subjective impressions, replacing them with a lottery for admission of students who meet the eligibility criteria for each school. Plaintiffs' allegations

and arguments have been based on unsupported assumptions, and discovery has confirmed that

there is no evidence – or law – to support Plaintiffs' claims.

For the foregoing reasons, Defendants respectfully request that this Court grant their

Motion for Summary Judgment.

Dated: June 6, 2024          Respectfully submitted,


         By: /s/ *William K. Kennedy*
         William K. Kennedy (I.D. No. 86571)
         MONTGOMERY MCCRACKEN WALKER &
         RHOADS LLP
         1735 Market Street, 21st Floor
         Philadelphia, Pennsylvania 19103
         wkennedy@mmwr.com

         Renee N. Smith (I.D. No. 65866)
         Jackson Lewis P.C.
         1601 Cherry Street, Suite 1350
         Philadelphia, PA 19102
         renee.smith@jacksonlewis.com


         *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of June 2024, I caused a true and correct copy of the foregoing Defendants' Motion for Summary Judgment to be served electronically on all counsel of record via the Court's ECF filing system.


Date:  <u>June 6, 2024</u>                    <u>/s/ *William K. Kennedy*            </u>
                                          William K. Kennedy